**KASOWITZ BENSON TORRES LLP**

*Attorneys for Cairn Capital
Investment Funds ICAV
for its sub fund Cairn Capstone
Special Opportunities Fund*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No.: 2:20-bk-15015-BR |
| TEMERITY TRUST MANAGEMENT, LLC, | Chapter 11 |
| Debtor. | **OPPOSITION TO DEBTOR'S MOTION FOR ENTRY OF ORDER APPROVING DISCLOSURE STATEMENT** |
| | Hearing Date: October 27, 2020 |
| | Time: 10:00 A.M. |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

I.   THE DEBTOR ................................................................................................................... 2

II.  THE PROPOSED PLAN AND DISCLOSURE STATEMENT ....................................... 3

III. THE CRIMINAL FORFEITURE ACTION INVOLVING THE PROPERTY ................ 4

IV.  CAIRN'S APPRAISAL OF THE PROPERTY ................................................................. 5

ARGUMENT ................................................................................................................................... 5

I.   THE DISCLOSURE STATEMENT DESCRIBES A PLAN THAT IS
     PATENTLY UNCONFIRMABLE .................................................................................... 5

II.  THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE
     INFORMATION ................................................................................................................ 8

CONCLUSION .............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acequia, Inc.*,
   787 F.2d 1352 (9th Cir. 1986) ................................................................................................6

*In re Am. Capital Equip., LLC*,
   688 F.3d 145 (3d Cir. 2012) .....................................................................................................6

*Ariz. v. Rodriguez (In re Rodriguez)*,
   Case No. 08-1028, 2008 WL 8448043 (B.A.P. 9th Cir. July 10, 2008) ...................................8

*In re Arnold*,
   471 B.R. 578 (Bankr. C.D. Cal. 2012) .....................................................................................5

*In re Art & Architecture Books of the 21st Century*,
   Case No. 2:13-BK-14135-RK, 2016 WL 1118743 (Bankr. C.D. Cal. Mar. 18, 2016) ..............6

*In re Beyond.com Corp.*,
   289 B.R. 138 (Bankr. N.D. Cal. 2003) .....................................................................................5

*In re Cal. Fid., Inc.*,
   198 B.R. 567 (B.A.P. 9th Cir. 1996) ........................................................................................8

*In re Civitella*,
   15 B.R. 206 (Bankr. E.D. Pa. 1981) .........................................................................................9

*In re Egan*,
   33 B.R. 672 (Bankr. N.D. Ill. 1983) .................................................................................9, 10

*In re Divine Pipe, L.L.C.*,
   554 B.R. 395 (Bankr. S.D. Tex. 2016) .....................................................................................9

*In re First Conn. Consulting Grp., Inc.*,
   579 B.R. 673 (Bankr. D. Conn. 2019) .....................................................................................6

*Jacobson v. AEG Capital Corp.*,
   50 F.3d 1493 (9th Cir. 1995) ....................................................................................................9

*In re Las Vegas Monorail Co.*,
   462 B.R. 795 (Bankr. D. Nev. 2011) ........................................................................................6

*In re Ligon*,
   50 B.R. 127 (Bankr. M.D. Tenn. 1985) ...................................................................................9

*In re Linda Vista Cinemas, L.L.C.*,
   442 B.R. 724 (Bankr. D. Ariz. 2010) .......................................................................................6

*In re Main St. AC, Inc.*,
    234 B.R. 771 (Bankr. N.D. Cal. 1999)...........................................................................................5

*In re Merrimack Valley Oil Co., Inc.*,
    32 B.R. 485 (Bankr. D. Mass. 1983).............................................................................................7

*Matter of Pizza of Haw., Inc.*,
    761 F.2d 1374 (9th Cir. 1985)..................................................................................................6, 7

*In re Reilly*,
    71 B.R. 132 (Bankr. D. Mont. 1987) .......................................................................................9, 10

*In re Rosenblum*,
    Case No. 18-17155, 2019 WL 5782589 (Bankr. D. Nev. July 15, 2019)...................................9

**Statutes**

11 U.S.C. § 1125(a) ...........................................................................................................................10

11 U.S.C. § 1125(a)(1) .........................................................................................................................9

11 U.S.C. § 1125(b) .............................................................................................................................8

11 U.S.C. § 1129(a)(11) .......................................................................................................................6

Cairn Capital Investment Funds ICAV, for its sub fund Cairn Capstone Special Opportunities Fund ("Cairn"),[1] a secured creditor of the Debtor, hereby respectfully submits this opposition (the "Opposition") to the Debtor's *Motion for Entry of Order Approving the Disclosure Statement Describing Second Amended Plan of Reorganization Dated September 15, 2020* (the "Motion" and "Disclosure Statement," respectively) [Docket Nos. 59, 61]:

## PRELIMINARY STATEMENT

The plan proposed by the Debtor is patently unconfirmable because it hinges on an illusory exit financing that the Debtor has failed to obtain. This failure is hardly a surprise. No rational third party can be expected to provide financing to a holding company with **no business, no cash, no revenue** and no valuable assets other than a residential property – the Beverly Hills house located at 9135 Hazen Drive – in which the Debtor's owner lives rent-free with her family (the "Property"). Nor can a rational third party be expected to pay anything close to market value for the Property, which is encumbered by a publicly disclosed criminal forfeiture claim asserted by the Government that is subject only to the rights of a bona fide purchaser *without notice*. That the Debtor has been unable to sell the Property or refinance the claims encumbering it since this bankruptcy case commenced over four months ago serves as further proof that the Debtor's plan is doomed to fail. The Court should accordingly deny approval of the Disclosure Statement because it describes a plan that cannot succeed and thus fails the feasibility requirement under Section 1129(a)(11) of the Bankruptcy Code.

The Disclosure Statement fails for the additional reason that it does not provide the Debtor's stakeholders with adequate information, as required under Section 1125(a) of the Bankruptcy Code, to make an informed judgment about the plan. The Disclosure Statement provides no information – because there is none – about the exit financing that the Debtor "expects" to obtain, or about the identity of the lender that will allegedly provide this financing, without which the Debtor cannot make any distributions under its proposed plan. Nor does the Disclosure Statement contain any information concerning the criminal forfeiture claim that

---

[1] All references in this Opposition to Cairn shall be deemed to include, as the context may require, its investment manager, Cairn Capital Limited.

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
LOS ANGELES

encumbers the Property and significantly diminishes its value, hindering the Debtor's ability to sell it.  Furthermore, the Disclosure Statement does not disclose when a sale of the Property would occur and on what terms.  That is the antithesis of "adequate information."  The Court should deny the Motion for this reason alone.

The Court should not allow the Debtor to solicit votes on a plan that is doomed to fail, and based on a disclosure statement that falls woefully short of the disclosure requirements of the Bankruptcy Code.  Accordingly, and as further explained below, the Court should not approve the Disclosure Statement.

## BACKGROUND[2]

### I. THE DEBTOR

The debtor in this chapter 11 case (the "Chapter 11 Case"), Temerity Trust Management, LLC (the "Debtor"), was formed in 2015 and is currently owned by Hanan Kadadu ("Kadadu"), who is the sole member of the Debtor.  *See* Disclosure Statement at 5.

The Debtor is not operating any business and has no funds.  *See* Statement of Financial Affairs [Docket No. 17 at 18] (listing gross revenue from business as "none"); Schedule A/B: Assets – Real and Personal Property [Docket No. 17 at 9] (cash, cash equivalents and financial assets valued at $0).  The Debtor has no accounts receivable, inventory of any kind, equipment, intangible assets or intellectual property.  *See id.*; *see also* Disclosure Statement at 35 (cash on hand and accounts receivable valued at $0).

The only valuable asset owned by the Debtor is the Property, in which William Sadleir ("Sadleir") and his spouse Kadadu live rent-free.  *See* Disclosure Statement 35-36.  As described in further detail in Cairn's Lift-Stay Motion, the Property serves as collateral to secure Cairn's claim against the Debtor.

---

[2] For a more detailed description of the circumstances surrounding this Chapter 11 case, Cairn's secured claim against the Debtor and the collateral securing Cairn's claim, Cairn respectfully refers the Court to Cairn's *Motion for Order Granting Relief From Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [Docket No. 63] and the declarations filed concurrently therewith ("Cairn's Lift-Stay Motion"), which the Court will hear on October 27, 2020.

## II. THE PROPOSED PLAN AND DISCLOSURE STATEMENT

On September 15, 2020, the Debtor filed the Motion seeking approval of the Disclosure Statement describing its proposed *Second Amended Plan of Reorganization Dated September 15, 2020* [Docket No. 60] (the "Proposed Plan"). The Proposed Plan designates six classes of creditors and equity interest holders, and proposes the following treatment therefor:

- **Class 1 (Los Angeles County Treasurer and Tax Collector).** The Proposed Plan deems as allowed only $183,696.49 out of the $370,694.05 claim that the tax authority alleged in its proof of claim. The claim would be paid in two installments: the first on the effective date of the Proposed Plan (the "Effective Date"), and the second one year after the Effective Date, with 4% interest. *See* Proposed Plan at 4.

- **Class 2 (Cairn).** The Proposed Plan lists Cairn's claim at $14,341,996 and as "disputed and contingent," and provides that its allowed amount would be determined by the Court.[3] Cairn's claim would be paid in installments: (i) $10 million on the Effective Date; and (ii) the balance in quarterly payments over a two-year period with "market rate" interest. *See* Proposed Plan at 4-5.

- **Class 3 (BlackRock Multi-Sector Income Trust ("BlackRock")).** Under the Proposed Plan, BlackRock, whose claim is scheduled at $4 million and as "disputed and estimated," would retain its lien on the Debtor's interests in Aviron Group, LLC, and would receive no payment. *See* Proposed Plan at 6.

- **Class 4 (Priority Unsecured Claims).** The Proposed Plan lists this class as "not applicable." *See* Proposed Plan at 6-7.

- **Class 5 (General Unsecured Claims).** The Proposed Plan estimates the aggregate allowed amount of unsecured claims at $94,482, and provides that they would be paid in two installments: one on the Effective Date, and the second one year after the Effective Date, without interest. *See* Proposed Plan at 7.

---

[3] As explained in Cairn's Lift-Stay Motion, Cairn's claim against the Debtor is in an amount not less than $15,381,127.

- **Class 6 (Equity Interest Holders).** Kadadu, the sole owner of the Debtor, would retain her equity interests in the Debtor. *See* Proposed Plan at 7.

Because the Debtor has **no cash and no accounts receivable** (Disclosure Statement at 35), the Debtor cannot make the foregoing payments without a new source of financing. The Debtor states that it "expects" to obtain a $12 million loan from "a financier to be subsequently identified" (the "Exit Loan" and "Exit Lender," respectively). *See* Disclosure Statement at 21, 37. The proceeds from the Exit Loan would be used to fund the plan distributions due on the Effective Date, the estate's administrative expenses and "working capital to the Reorganized Debtor." *See id.* at 21.

The post-Effective payments under the Proposed Plan – which include approximately $5 million in respect of Cairn's claim – "will be funded from the business operations of the Reorganized Debtor's existing and new subsidiaries and from refinancing." *See id.*

The Proposed Plan further provides that if the Debtor fails to secure the Exit Loan, "[a]t the sole option of the Debtor, the Debtor may sell the [Property] free and clear of any interests in the [Property] under 11 U.S.C. §§ 363 or 1123" and fund the plan distributions with the sale proceeds. *See* Proposed Plan at 4-5.

### III.    THE CRIMINAL FORFEITURE ACTION INVOLVING THE PROPERTY

As described in further detail in Cairn's Lift-Stay Motion, the U.S. Attorney in the Southern District of New York filed a criminal complaint against Sadleir on May 18, 2020 (the "Criminal Complaint" and "Criminal Case"), which includes three counts: (i) wire fraud – advertising scheme; (ii) wire fraud – UCC scheme; and (iii) aggravated identity theft – UCC scheme. *See* Docket No. 63-2 at 3-4. As described in the Criminal Complaint, Sadleir allegedly participated in two long-running fraudulent schemes relating to an approximately $75 million investment made by BlackRock in certain entities directly or indirectly owned by the Debtor and managed by Sadleir. *See id.* at 6-7.

On June 23, 2020, a grand jury returned an indictment (the "Indictment") against Sadleir, which included the foregoing counts and a forfeiture claim (the "Criminal Forfeiture Claim"), which seeks forfeiture "to the United States . . . [of] any and all property, real and personal, that

constitutes or is derived from proceeds traceable to the commission of said offenses, **including but not limited to . . . the real property located at 9135 Hazen Drive, Beverly Hills, California**[.]" (*i.e.*, the Property).  *See id.* at 51-52.

## IV.    CAIRN'S APPRAISAL OF THE PROPERTY

Cairn retained Robert Dietrich of Kidder Matthews Valuation & Advisory Services to provide an expert opinion regarding the Property's value (the "Appraisal").  *See* Docket No. 63-3.  As explained in the Appraisal, because the Criminal Forfeiture Claim (and the Criminal Case at large) is a matter of public record, any potential buyer of the Property would learn of its existence as part of their due diligence into the Property.  *See id.* at 9.  The marketability of the Property is therefore significantly impaired by the existence of the Criminal Forfeiture Claim, which puts any potential buyer at risk of having to surrender the Property to the federal authorities if they prevail in the Criminal Case.  *See id.* at 19.  In light of the foregoing, and as further explained in the Appraisal, the market value of the Property is **$290,000**.[4]  *See id.* at 8.

## ARGUMENT

### I.    THE DISCLOSURE STATEMENT DESCRIBES A PLAN THAT IS PATENTLY UNCONFIRMABLE

It is "well accepted that a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed."  *In re Main St. AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999); *see also In re Arnold*, 471 B.R. 578, 586 (Bankr. C.D. Cal. 2012) ("[W]here a plan is on its face nonconfirmable, as a matter of law, it is appropriate for the court to deny approval of the disclosure statement describing the nonconfirmable plan.") (alteration in original); *In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) ("Because the underlying plan is patently unconfirmable, the disclosure statement may not be approved.").

Section 1129(a)(11) of the Bankruptcy Code requires the court to determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further

---

[4]    If the Property were unencumbered by the Forfeiture Claim, its value would be $ 12,750,000.  *See* Docket No. 63-3 at 8.

financial reorganization, of the debtor." 11 U.S.C. § 1129(a)(11). Feasibility requires a showing that the plan has a "reasonable probability of success." *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986); *see also Matter of Pizza of Haw., Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) ("The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation."); *In re Linda Vista Cinemas, L.L.C.*, 442 B.R. 724, 737-38 (Bankr. D. Ariz. 2010) ("Every debtor is required to present 'ample evidence to demonstrate that the Plan has a reasonable probability of success.'") (quoting *Acequia*, 787 F.2d at 1364). The feasibility requirement has two distinct aspects: (1) ability to make payments due on the plan's effective date, and (2) ability to make payments due over the life of the plan. *See In re Art & Architecture Books of the 21st Century*, Case No. 2:13-BK-14135-RK, 2016 WL 1118743, at *20 (Bankr. C.D. Cal. Mar. 18, 2016).

Where feasibility "depends on future refinancing, [the court must not confirm a plan] unless there is an adequate evidentiary showing that such refinancing is likely to occur." *In re Linda Vista Cinemas*, 442 B.R. at 738; *see also In re Las Vegas Monorail Co.*, 462 B.R. 795, 800 (Bankr. D. Nev. 2011) ("[C]ourts have refused to confirm plans whose feasibility turned on future sales of property, or future refinancings, absent an adequate showing that such sales or refinancings would be likely to occur.").

Furthermore, where a plan is highly speculative and its "feasibility issue cannot be cured . . . the feasibility issue renders the Plan to be **patently** unconfirmable pursuant to § 1129(a)(11)" and the court must not approve a disclosure statement describing such plan. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) (emphasis added); *see also In re First Conn. Consulting Grp., Inc.*, 579 B.R. 673, 686 (Bankr. D. Conn. 2018) ("Because Licata's plan hinges upon highly speculative (and undisclosed) litigation recoveries, it is also patently unconfirmable.").

Here, the Proposed Plan is patently unconfirmable because neither of the purported alternatives the Debtor has proposed for funding the distributions thereunder – the Exit Loan and a sale of the Property – have any "reasonable probability of success." *See In re Acequia*,

787 F.2d at 1364.  More than four months into the Chapter 11 Case – and almost a month since the Debtor filed its Proposed Plan – the Debtor has not even identified who the purported Exit Lender might be, let alone secured a definitive commitment for the Exit Loan.  *See In re Merrimack Valley Oil Co., Inc.*, 32 B.R. 485, 488 (Bankr. D. Mass. 1983) ("[T]he lack of any present commitment precludes reasonable reliance on financing as a method of funding the plan.").  The Debtor states that it "expects to firm up its exit financing to ensure that it can make Effective Date payments."  *See* Disclosure Statement at 37.  There is nothing in the record, however, demonstrating that this "expectation" is anything more than a pipe dream or a "visionary scheme," which fall utterly short of the Bankruptcy Code's feasibility requirement.  *See Pizza of Haw.*, 761 F.2d at 1382.  Nor does the Debtor explain (because it cannot) why any third party would provide financing to a holding company that has no cash and no business that would ever generate cash.  *See* Disclosure Statement at 35.

The only alternative to this illusory Exit Loan, pursuant to the Proposed Plan, would be the sale or refinancing of the Property.  The Disclosure Statement states, without any evidentiary support, that the Property's value is at least $17.5 million, completely ignoring the Criminal Forfeiture Claim encumbering the Property.  As the Appraisal prepared by Cairn's expert establishes, the market value of the Property is $290,000:  a fraction of the distributions envisioned under the Proposed Plan.  The reason for this is clear:  because the Property is subject to forfeiture by the U.S. Department of Justice, no rational buyer would pay anything close to fair market value for it.  Because a federal criminal forfeiture is subject only to the rights of a bona fide purchaser for value without notice, no purchaser or lender would take the risk that its interest in the Property could be forfeited to the Government now that the Criminal Forfeiture Claim has been publicly disclosed.  It is therefore hardly surprising that, over four months into the Chapter 11 Case, the Debtor has been unable to sell the Property *for any price* – let alone its alleged value of $17.5 million – or refinance the claims encumbering it.

Moreover, because Section 362(b)(1) of the Bankruptcy Code allows the "commencement or continuation of a criminal action or proceeding against the debtor" notwithstanding the automatic stay, the Debtor cannot thwart the Government's right to pursue its forfeiture claim on

the Property by way of a sale under Sections 363 or 1123 of the Bankruptcy Code, as provided under the Proposed Plan. *Ariz. v. Rodriguez (In re Rodriguez)*, Case No. 08-1028, 2008 WL 8448043, at *4 (B.A.P. 9th Cir. July 10, 2008) ("Criminal forfeiture actions are excepted from the automatic stay under the plain language of § 362(b)(1) which specifically excepts criminal proceedings 'against the debtor.'"). Using the Property to fund plan distributions without first satisfying the Criminal Forfeiture Claim would therefore be impossible.

Nor can the Debtor demonstrate that it has the ability to make the payments required under the Proposed Plan *after* the Effective Date. According to the Debtor, the only purported source of income it can use to make those distributions (other than selling or refinancing the Property) is "the ongoing and anticipated future revenue to be generated by the *Serenity* film[.]" *See* Disclosure Statement at 37. The Debtor, however, has no rights to any future revenue stream from *Serenity* or any other film. *See* Disclosure Statement at 35-36 (the only valuable asset the Debtor owns is the Property; cash on hand and accounts receivable valued at $0). This is yet another illusory source of funding.

In short, the Proposed Plan is patently unconfirmable because it has no reasonable probability of success. The Court should deny approval of the Disclosure Statement for this reason alone.

## II. THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION

As a prerequisite to soliciting the acceptance or rejection of a Chapter 11 plan by creditors, Section 1125(b) of the Bankruptcy Code requires a debtor to provide holders of claims and interests with "adequate information" regarding the plan and disclosure statement. 11 U.S.C. § 1125(b). *See In re Cal. Fid., Inc.*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996) (internal citation omitted) ("At a minimum, § 1125(b) seeks to guarantee that a creditor receives adequate information about the plan before the creditor is asked for a vote."). Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the

>condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]

11 U.S.C. § 1125(a)(1).

At a minimum, a disclosure statement must therefore set forth enough information to permit creditors to make an informed decision about a proposed plan. *See Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1501 (9th Cir. 1995) ("Reorganization plans require adequate disclosure to interested parties"); *see also In re Rosenblum*, Case No. 18-17155, 2019 WL 5782589, at *3 (Bankr. D. Nev. July 15, 2019) (the disclosure statement should include "information relevant to the risks posed to creditors under the debtor's plan."); *In re Ligon*, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985) (a disclosure statement must contain "all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan"). In evaluating the adequacy of a disclosure statement, courts consider numerous factors, including: (1) "a description of the available assets and their value"; (2) "the source of information stated in the disclosure statement"; and (3) "financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan." *In re Reilly*, 71 B.R. 132, 134 (Bankr. D. Mont. 1987).

Where a disclosure statement "squarely pins the success of Debtor's bankruptcy" upon a certain source of financing, the debtor must "disclose sufficiently adequate information about [that source of financing] in the Disclosure Statement so that creditors can 'make an informed judgment about the plan.'" *In re Divine Pipe, L.L.C.*, 554 B.R. 395, 405 (Bankr. S.D. Tex. 2016) (citation omitted). Furthermore, statements in the disclosure statement concerning the funding of plan distributions must have a basis in fact. "[M]ere allegations or opinions, unsupported by factual information, do not meet the required standard." *In re Civitella*, 15 B.R. 206, 208 (Bankr. E.D. Pa. 1981); *see also In re Egan*, 33 B.R. 672, 675 (Bankr. N.D. Ill. 1983) ("without factual support, statements of opinion or belief are entirely inappropriate in Disclosure Statements").

Here, the Debtor has utterly failed to provide adequate information to its creditors for two independent reasons. *First*, the Disclosure Statement provides ***no information*** – because there is none – concerning the linchpins of the Proposed Plan: the Exit Loan and the Exit Lender. Cairn

and the Debtor's other stakeholders cannot "make an informed judgment about the plan" without knowing any details concerning the Debtor's source of funding for distributions under the Proposed Plan, and who will provide that funding. *See* 11 U.S.C. § 1125(a). Nor is the Debtor's "expectation" that it will be able to "firm up its exit financing to ensure that it can make Effective Date payments" (Disclosure Statement at 37) anything other than a mere "statement[] of opinion or belief" that is "entirely inappropriate in Disclosure Statements." *See In re Egan*, 33 B.R. at 675.

*Second*, the Disclosure Statement fails to disclose the existence of the Criminal Forfeiture Claim encumbering the Property. Nor does it contain any discussion as to the impact of the Criminal Forfeiture Claim on the fair market value of the Property and the Debtor's ability to sell the Property, both of which are crucial to the success of the Proposed Plan in the event the Debtor fails to obtain the Exit Loan (as it has for over four months). The Disclosure Statement is similarly devoid of any details concerning the timing of any potential sale of the Property – including whether it would occur pre- or post-Effective Date – and the terms on which it would occur. The Court should therefore deny approval of the Disclosure Statement, which fails to disclose highly pertinent information concerning the Debtor's "available assets and their value," as well as other information "relevant to the creditors' decision to accept or reject the Chapter 11 plan." *See In re Reilly*, 71 B.R. at 134.

## **CONCLUSION**

Accordingly, Cairn requests that the Court (i) enter an order denying approval of the Disclosure Statement, and (ii) grant such other and further relief as the Court deems necessary and appropriate.

| | |
|---|---|
| 1 | Dated: October 13, 2020 |
| 2 | |
| 3 | **KASOWITZ BENSON TORRES LLP** |
| 4 | |
| 5 | /s/ *Andrew R.J. Muir*<br>Andrew R.J. Muir<br>101 California Street, Suite 3000 |
| 6 | San Francisco, California  94111<br>Telephone:  (415) 421-6140 |
| 7 | Facsimile:    (415) 398-5030<br>Email:  amuir@kasowitz.com |
| 8 | Andrew K. Glenn (admitted *pro hac vice*) |
| 9 | Shai Schmidt (admitted *pro hac vice*)<br>1633 Broadway |
| 10 | New York, New York 10019<br>Telephone:  (212) 506-1700 |
| 11 | Facsimile:    (212) 506-1800<br>Email:  aglenn@kasowitz.com |
| 12 |           sschmidt@kasowitz.com |
| 13 | |
| 14 | *Attorneys for Cairn Capital Investment Funds ICAV, for its sub fund Cairn Capstone Special Opportunities Fund* |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
101 California Street, Suite 3000, San Francisco, CA 94111

A true and correct copy of the foregoing document entitled (*specify*): Opposition to Debtor's Motion for Entry of Order Approving Disclosure Statement
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/13/2020_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

David B Golubchik – dbg@lnbyb.com; Kurt Ramlo – kr@lnbyb.com;
Ron Maroko – ron.maroko@usdoj.gov; United States Trustee (L.A.) – ustpregion16.la.ecf@usdoj.gov
Jeremy V Richards – jrichards@pszjlaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/13/2020 | Andrew R.J. Muir | /s/ Andrew R.J. Muir |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**