David B. Golubchik (State Bar No. 185520)
Kurt Ramlo (State Bar No. 166856)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: KR@LNBYG.COM

Attorneys for Temerity Trust Management, LLC,
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Los Angeles Division

| | |
|---|---|
| In re:<br><br>TEMERITY TRUST MANAGEMENT, LLC, aka Temerity Management, LLC,<br><br>      Debtor and Debtor in Possession. | Case No. 2:20-bk-15015-BR<br><br>Chapter 11<br><br>**Notice of Motion and Motion for Order:**<br><br>**(1) Approving Compromise with Cairn Capital;**<br>**(2) Approving Compromise with United States of America and Cairn Capital;**<br>**(3) Approving Private Sale of Real Property;**<br>**(4) Approving Backup Marketing, Bidding, and Sale Procedures;**<br>**(5) Waiving 14-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and**<br>**(6) Providing Related Relief**<br><br>Date:   February 15, 2022<br>Time:  2:00 p.m.<br>Place:  Courtroom 1668<br>        255 East Temple Street<br>Los Angeles, California 90012 |

**TO ALL PARTIES IN INTEREST AND THEIR ATTORNEYS OR RECORD:**

**PLEASE TAKE NOTICE** that, on February 15, 2022, at 2:00 p.m., in Courtroom 1668

located at 255 E. Temple Street, Los Angeles, CA 90012, the Court will hear the motion (the

"**Motion**") of Temerity Trust Management, LLC ("**Debtor**"), the debtor and debtor in possession

1    in the above-captioned chapter 11 bankruptcy case, for orders (the "**Settlement and Sale**

2    **Order**"):

3            (1)     Approving that certain *Settlement Agreement and General Release* (the

4    "**Settlement Agreement**," attached as **Exhibit 1[1]**); between the Debtor, Hanan Kadadu,

5    also known as Hannah Kadadu Sadleir (the Debtor's Manager), William K. Sadleir (a

6    former manager of the Debtor), and Cairn Capital Investment Funds, ICAV, for its sub-

7    fund Cairn Capstone Special Opportunities Fund ("**Cairn Capital**," a secured creditor of

8    the Debtor), which provides in part for the allowance and payment of the secured claim

9    of Cairn Capital ("**Cairn Capital Claim**") from the proceeds of the sale of Debtor's

10   residential real property located at 9153 Hazen Drive, Beverly Hills, California  90210

11   (the "**Beverly Hills Property**")[2];

12           (2)     Approving the Debtor's entry into a compromise in the form of a proposed

13   *Consent Order of Interlocutory Sale of Real Property* (the "**SDNY Consent Order**,"

14   attached as **Exhibit 2**) for Case No. 20 Cr. 320 (PAE) in the United States District Court

15   for the Southern District of New York, consented to by the Debtor, Sadleir, Cairn Capital,

16   Blackstone, and the United States Department of Justice, which provides in part that the

17   Debtor can sell the Beverly Hills Property in accordance with the terms of the SDNY

18   Consent Order;

19           (3)     (a) approving the sale of the Beverly Hills Property to 9153 Hazen Drive,

20   LLC (the "**Proposed Buyer**") for a purchase price of $14,150,000 (the "**Purchase**

21   **Price**") pursuant to the *California Residential Purchase Agreement and Joint Escrow*

22   *Instructions* (the "**Purchase Agreement**"), a true and correct copy of which is attached as

23

24

25   _____

[1]  The Debtor is filing a copy of the Settlement Agreement that does not include its Exhibit 1.
26   That exhibit contains sensitive information that could adversely affect the marketing, bidding,
and sale of the Debtor's residential real property if the proposed sale described below does not
27   close for any reason.

[2]  All references in this Motion to Cairn Capital shall be deemed to include, as the context may
28   require, its investment manager, Cairn Capital Limited.

1    **Exhibit 3**[3], without overbidding and not subject to higher and better bids; (b) approving

2    payments from the sale proceeds of (i) outstanding real property taxes, (ii) reasonable and

3    documented costs of escrow and sale, including real estate sales commissions (including

4    the Debtor's real estate broker, Douglas Elliman of California, Inc. ("**Douglas Elliman**"

5    or the "**Broker**"), subject to separate approval of its employment), and (iii) the Cairn

6    Capital Claim; and (c) finding that the Proposed Buyer is a good-faith purchaser entitled

7    to all of the protections afforded by Section 363(m) of the Bankruptcy Code (the

8    "**Proposed Sale**");

9          (4)    Approving backup marketing, bidding, and sale procedures for the sale of

10    the Beverly Hills Property ("**Backup Bidding Procedures**");

11          (5)    Waiving the 14-day stay period set forth in Bankruptcy Rule 6004(h); and

12          (6)    Providing related relief.

13    A copy of the proposed order approving the Debtor's entry into the Settlement Agreement and

14    the SDNY Consent Order and approving the Backup Bidding Procedures is attached as

15    **Exhibit 4**.  A copy of the proposed order approving the Proposed Sale is attached as **Exhibit 5**.

16    This Motion is made under 11 U.S.C. §§ 105(a), 363(b), (f), and (m) of the Bankruptcy

17    Code, 11 U.S.C. §§ 101-1532, and Rules 2002, 6004, and 9019 of the Federal Rules of

18    Bankruptcy Procedure.

19    **PLEASE TAKE FURTHER NOTICE** that in support of the Motion, the Debtor will

20    rely on these moving papers, including the attached memorandum of points and authorities and

21    the declarations of Hanan Kadadu and Josh Altman, the pleadings and orders already on file in

22    this bankruptcy case, and such other and further evidence and argument as may be made.

23

24

25

26

27

28

---

[3]  The "Buyer" under the Purchase Agreement are the (a) owner(s) of the Proposed Buyer and (b) their "designee."  The owner(s) have designated the Proposed Buyer as the entity who will take title to the Beverly Hills Property at the closing of the purchase under the Purchase Agreement.  The Debtor has redacted the identity(ies) of the owner(s) of the Proposed Buyer from the Purchase Agreement attached to this Motion.  As is common with buyers of residences such as the Beverly Hills Property, the owner(s) of the Proposed Buyer have asked the Debtor, its professionals, and lender (Cairn Capital) to sign non-disclosure agreements with respect to their identity(ies).  If the Court determines that it needs to review the identity(ies) of the owner(s) to rule on the Motion, the Debtor will seek permission to present that information for an *in camera* review by the Court.

1      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

2    1(f), any opposition to the Motion must be filed with the Clerk of the United States Bankruptcy

3    Court and served upon the United States Trustee as well as counsel for the Debtor at the address

4    located in the upper left-hand corner of the first page of this Notice by no later than 14 days

5    before the hearing on the Motion.

6    Dated:  January _21_, 2022    LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

7

8                            By:____*/s/ Kurt Ramlo*_____
                                      David B. Golubchik
                                      Kurt Ramlo

9                            Attorneys for Temerity Trust Management, LLC, Debtor and
                            Debtor in Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### BACKGROUND

**A.    The Debtor**

Hanan Kadadu, also known as Hannah K. Sadleir, is the sole manager and the sole member of Temerity Trust Management, LLC (the "**Debtor**"), the debtor and debtor in possession.  The day after the filing of this Chapter 11 case on June 1, 2020 (the "**Petition Date**"), Kadadu appointed herself as sole manager and she remains the sole manager today.

The Debtor is the holding company for Kadadu's ownership interests in the business generally known as Aviron Pictures.  The Debtor purchased the residence at 9153 Hazen Drive, Beverly Hills, California  90210 (the "**Beverly Hills Property**") on October 18, 2017 for $14 million, as an investment, to finance business activities, and to conduct business including business development, networking, and promotion.  The Debtor moved its office location to the property on December 2, 2017, when Kadadu and her family also moved into the Beverly Hills Property.

The Debtor used the Beverly Hills Property to finance Aviron 1703, LLC's making of the film *Serenity*.  Aviron 1703, LLC is the borrower under a loan extended by Cairn Capital Investment Funds, ICAV, for its sub-fund Cairn Capstone Special Opportunities Fund ("**Cairn Capital**"),[4] for up to $22,400,000 in aggregate principal balance of loan obligations for purposes of financing of certain distribution activities in respect of *Serenity* and certain other limited uses in connection therewith  (the "**Loan**").  The Debtor guaranteed the loan and granted Cairn Capital a deed of trust on the Beverly Hills Property to secure the Debtor's obligations under the guarantee.

The Loan is secured among other things by proceeds from the distribution of *Serenity*, which the Debtor believes have resulted in at least $13,479,542 in collections and payments on the Loan.  The Debtor believes that the film has grossed $14,454,622 at domestic and international theaters and more than $9,000,000 in the home performance market where it

---

[4]  All references in this Memorandum to Cairn Capital shall be deemed to include, as the context may require, its investment manager, Cairn Capital Limited.

4

1   continues to generate revenue.

2       On February 14, 2019, Cairn Capital sent Aviron 1703, LLC a Notice of Defaults and

3   Reservation of Rights, identifying a number of alleged non-monetary defaults under the Credit

4   Agreement, including, among others, at least one default Cairn Capital believed was not capable

5   of cure.  The Debtor disputes that any default occurred on or around February 14, 2019.  The

6   scheduled maturity date of the Loan was December 15, 2019.  In light of what Cairn Capital

7   believed was the Debtor's continuing default under its guaranty of the Loan, Cairn Capital

8   initiated a non-judicial foreclosure sale, with a sale of the Property by a trustee scheduled for

9   June 2, 2020.

10  **B.    Postpetition Disputes with Cairn Capital, the Restraining Order, and Settlement**

11      On June 19, 2020, Cairn Capital filed a motion for the appointment of a trustee or

12  alternatively for relief from stay to foreclose, which was heard on July 21, 2020 and denied

13  without prejudice by order entered August 11, 2020.

14      The Debtor filed a chapter 11 plan on July 21, 2020, an amended chapter 11 plan and

15  disclosure statement on August 11, 2020, and a second amended plan and disclosure statement

16  on September 15, 2020.  On September 25, 2020, Cairn Capital renewed its motion for relief

17  from stay.  Cairn Capital contended that there was cause of stay relief because, among other

18  things, the Debtor had failed to provide adequate protection of Cairn Capitals' interest in the

19  collateral owned by the Debtor and that this Chapter 11 case had been filed in bad faith.  Cairn

20  Capital also alleges that there is a lack of equity in the collateral and that the collateral is not

21  necessary to an effective reorganization.  The Debtor disputed these allegations, contending that

22  Cairn Capital had wrongfully declared defaults under the Loan and that the value of the collateral

23  exceeds the disputed balance of the loan.  Even if Cairn Capital obtained relief from stay, the

24  Debtor could seek an injunction against any foreclosure sale based on the wrongful notice of

25  default and actions that prevented the Debtor and other credit parties to the Loan from servicing

26  and refinancing the debt.  Cairn Capital strenuously disputes these arguments.

27      The Court conducted hearings on the Debtor's disclosure statement and Cairn Capital's

28  stay-relief motion on October 27, 2020, in which the Court scheduled an evidentiary hearing on

1  the stay-relief motion and a status conference on the disclosure statement.

2          About the same time, in November 2020, the United States Department of Justice applied

3  ex parte and obtained a restraining order against any transfer of the Beverly Hills Property by the

4  Debtor, in *United States v. William Sadleir*, Case No. 20 Cr. 320 (PAE) (S.D.N.Y.) (the "**Asset**

5  **Forfeiture Action**").  Before then, the request for relief in the Asset Forfeiture Action was

6  limited to seeking to forfeit any interests in the Beverly Hills Property held by William Sadleir,

7  who held no such interest.  The Debtor disputes that the Beverly Hills Property is subject to

8  forfeiture.

9          During the following year, the stay-relief evidentiary hearing was converted to a status

10  conference and the Debtor and Cairn Capital entered into a series of stipulated requests for

11  continuances of the status conferences on the stay-relief motion and the disclosure statement to

12  permit settlement discussions between the parties and with third parties, including the

13  Department of Justice.

14          The discussions with Cairn Capital resulted in the settlement with Cairn Capital under

15  which the Beverly Hills Property would be marketed and listed for sale to fund payments to

16  Cairn Capital and the Debtor's other creditors.  The *Settlement Agreement and General Release*

17  (attached as **Exhibit 1**[5]; the "**Settlement Agreement**") between the Debtor, Kadadu, Sadleir, and

18  Cairn Capital provides for the following, among other things:[6]

19                  1.      The sale of the Beverly Hills Property, with the proceeds applied (a) first,

20          to pay outstanding real property taxes, (b) second, to pay customary and usual real estate

21          costs of sale, (c) third, to pay the Cairn Capital loan, and (d) fourth, to the extent funds

22          remain, to constitute a substitute res in the Asset Forfeiture Action.

23                  2.      Cairn Capital will pay, from the sale proceeds of the Beverly Hills

24          Property, up to $400,000 to fund payment of administrative expenses and creditor claims

25

26  _____

27  [5]  The Debtor is filing a copy of the Settlement Agreement that does not include its Exhibit 1.
   That exhibit contains sensitive information that could adversely affect the marketing, bidding,
   and sale of the Debtor's residential real property if the proposed sale described below does not

28  close for any reason.

1  (excluding claims of insiders) for the Debtor's Chapter 11 case, provided that the Beverly

2  Hills Property is sold or if Cairn Capital acquires the property through a credit bid in

3  which certain conditions set forth in an exhibit to be filed under seal are satisfied.  If

4  those conditions are not satisfied, then Cairn Capital will fund up to $150,000 in Chapter

5  11 administrative expense claims (other than those held by any insider).

6         3.      If certain conditions are met, Cairn Capital will either share the proceeds

7  of the *Serenity* film with the Debtor or allow the Debtor to acquire all of the proceeds, as

8  follows:

9              a.      If a sale of the Beverly Hills Property closes for a price at or above

10  $14,125,000 (the "**Reserve Price**") on or before 150 days after the sale period

11  begins, 100% of the film revenue will go to the Debtor or its designee and

12  (i) Cairn Capital will no longer have any right to the film revenue, (ii) Cairn

13  Capital will assign its claim and security interest in the film revenue to the Debtor

14  or its designee, and (iii) the Debtor or its designee will be subrogated to Cairn

15  Capital's rights and interests under its claim and security interest in the film

16  revenue.

17              b.      If a sale closes at or above the Reserve Price 151 to 211 days after

18  the sale period begins, then 75% of the film revenue will go to the Debtor or its

19  designee and 25% to Cairn Capital until Cairn Capital receives the lesser of

20  (i) $250,000 and (ii) 98% of the Cairn Claim from all sources (the "**Minimum**

21  **Amount**").

22              c.      If a sale closes below the Reserve Price within 210 days after the

23  sale period begins, 25% to the Debtor or its designee and 75% to Cairn Capital

24  until it receives the Minimum Amount.

25              d.      100% to Cairn Capital otherwise, including if Cairn Capital

26  acquires the Beverly Hills Property through a credit bid.

27

28  [6] To the extent there is an inconsistency between the Settlement Agreement and this Motion, the former prevails.

4.     In consideration of Kadadu and Sadleir's execution of the Settlement Agreement and their consent to the Bidding Procedures Order, Cairn Capital will pay up to $15,000 in moving expenses to Kadadu.

5.     Cairn Capital will not oppose any motion of the Debtor to dismiss this Chapter 11 case that expressly confirms and preserves the validity, enforceability, and effect of the Settlement Agreement, the SDNY Consent Order (as defined below), and any order approving the sale of the Beverly Hills Property in accordance with those documents.

6.     The parties will exchange mutual releases.

7.     The parties consent to the Bidding Procedures Order.

This Motion also seeks approval of the Debtor's entry into a compromise in the form of a proposed *Consent Order of Interlocutory Sale of Real Property* (the "**SDNY Consent Order**," attached as **Exhibit 2**) for Case No. 20 Cr. 320 (PAE) in the United States District Court for the Southern District of New York, consented to by the Debtor, Sadleir, Cairn Capital, and the United States Department of Justice.  The SDNY Consent Order will provide for:[7]

1.     Authority from the Court presiding over the Asset Forfeiture Action for the Debtor's sale of the Beverly Hills Property including through any credit bid by Cairn Capital otherwise allowed by the Bidding Procedures Order.

2.     Cooperation from the Department of Justice by providing assurances to this Court and other parties that the Beverly Hills Property may be sold, free and clear of any forfeiture claim, and by terminating a lis pendens recorded against the property.

3.     Marketing of the property by the Altman Brothers or comparable licensed real estate agency specializing in high-end Beverly Hills real estate, subject to this Court's approval and approval by Cairn Capital.

4.     A sale period and minimum bid to be set by this Court unless a private sale is appropriate.

---

[7] To the extent there is any inconsistency between the SDNY Consent Order and this Motion, the former prevails.

1         5.  A bid deposit into escrow of at least 5% of the bid amount.

2         6.  An auction if two or more qualifying bids are received or a private sale if a

3      qualifying bid with terms satisfactory to both the Debtor and Cairn Capital in their sole

4      discretion, subject to this Court's approval.

5        A proposed order approving the Debtor's entry into Settlement Agreement and the SDNY

6      Consent Order (as well as backup bidding procedures discussed below) is attached as **Exhibit 4**.

7      **C.**  **The Proposed Sale of the Beverly Hills Property**

8        During the past year, the Debtor has received three offers for Beverly Hills Property.

9      Beginning in 2020, the Debtor and Cairn Capital began identifying and interviewing potential

10     realtors qualified to market and sell residential property like the Beverly Hills Property.  The

11     natural consequence of those activities was the realtor community learning that the Beverly Hills

12     Property would likely be available for sale at some point.  Various realtors contacted the Debtor

13     to request an opportunity to show the property to potential buyers, notwithstanding that the

14     property was not yet available for sale and that the Debtor had not yet retained a real estate agent

15     or broker to represent it.  The Debtor allowed the showings to occur and 24 interested buyers

16     viewed the property during the past year.  Notwithstanding that the buyers knew that the property

17     was not yet for sale, the Debtor received three purchase offers.  One potential buyer has emerged

18     after offering what the Debtor, its broker (Douglas Elliman of California, Inc. ("**Douglas**

19     **Elliman**" or the "**Broker**")), and Cairn Capital believe is a preemptively high bid of $14,150,000

20     to be paid in cash at closing, as set forth in the attached purchase agreement annexed as

21     **Exhibit 3[8]** (the "**Purchase Agreement**").  The proposed sale under the Purchase Agreement is

22     without overbidding and not subject to higher and better bids.

23     ---

24     [8]  The "Buyer" under the Purchase Agreement are the (a) owner(s) of the Proposed Buyer and
(b) their "designee."  The owner(s) have designated the Proposed Buyer as the entity who will

25     take title to the Beverly Hills Property at the closing of the purchase under the Purchase
Agreement.  The Debtor has redacted the identity(ies) of the owner(s) of the Proposed Buyer
from the Purchase Agreement attached to this Motion.  As is common with buyers of residences

26     such as the Beverly Hills Property, the owner(s) of the Proposed Buyer have asked the Debtor,
its professionals, and lender (Cairn Capital) to sign non-disclosure agreements with respect to

27     their identity(ies).  If the Court determines that it needs to review the identity(ies) of the owner(s)
to rule on the Motion, the Debtor will seek permission to present that information for an *in*

28     *camera* review by the Court.

1     The proposed buyer is 9135 Hazen Drive LLC (the "**Proposed Buyer**").  The Debtor has

2   investigated the financial wherewithal of the Proposed Buyer and its owner(s) and have

3   determined that they have the ability to close the purchase.  The Debtor and its Broker believe

4   that the Sale Price provides fair value for the Beverly Hills Property.  The Proposed Buyer is not

5   an insider of the Debtor or associated with any insider of the Debtor.  The Debtor negotiated the

6   Proposed Sale at arm's length with the assistance of the Broker and the advice and consent of

7   Cairn Capital.  The negotiation and execution of the Purchase Agreement were conducted in

8   good faith, without any fraud or collusion.  The Debtor also believes that the Proposed Buyer has

9   acted in good faith throughout this process.  The Debtor is not aware of any fraud or collusion by

10  the Proposed Buyer or any attempt by the Proposed Buyer to take unfair advantage of any other

11  bidders.  The Proposed Sale provides no consideration to an insider of the Debtor other than a

12  modest reimbursement of up to $15,000 for moving expenses of the Sadleir family (and other

13  than the Cairn Capital personal property collateral that will be released to the Debtor or a

14  designee of the Debtor under the Settlement Agreement and which may be sufficient to provide

15  some distribution on account of Kadadu's membership interest in the Debtor, after payment of

16  allowed claims in full).  Accordingly, the Debtor also seeks a finding that the Proposed Buyer is

17  a good-faith purchaser entitled to all of the protections afforded by Section 363(m) of the

18  Bankruptcy Code.

19    In accordance with the Purchase Agreement, the Settlement Agreement, and the SDNY

20  Consent Order, the Debtor seeks (a) approval of the Debtor's entry to the Purchase Agreement,

21  (b) approval of payments from the sale proceeds of (i) outstanding real property taxes,

22  (ii) reasonable and documented costs of escrow and sale, including real estate sales commissions

23  (including the Debtor's Broker, subject to separate approval of its employment), and (iii) the

24  Cairn Capital Claim, and (c) a finding that the Proposed Buyer is a good-faith purchaser under

25  11 U.S.C. § 363(m) (the "**Proposed Sale**").

26    A proposed order approving the Proposed Sale is attached as **Exhibit 5**.

27

28

## POINTS AND AUTHORITIES

**A.    The Motion demonstrates that the settlements should be approved.**

> **1.    The Bankruptcy Rules allow the Court to approve compromises of controversies.**

Rule 9019(a) states that "the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The decision of whether a compromise should be accepted or rejected lies within the sound discretion of the court. *In re Carson*, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987); *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr. D.R.I. 1986); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985); *Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bankr. D. Me. 1983). For the reasons set forth below, the Court should approve the Settlement Agreement and the SDNY Consent Order.

Sound discretion is judicial power exercised fairly and equitably. As the Supreme Court noted, the term "discretion" denotes the absence of a hard and fast rule:

> When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reasonableness and conscience of the judge to a just result.

*Langnes v. Green*, 282 U.S. 531, 541 (1931). Correspondingly, the Ninth Circuit has recognized that "the bankruptcy court has great latitude in approving settlements." *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988).

> **2.    Case law supports approval of the Agreement.**

It is well established that, as a matter of public policy, settlements are favored over continued litigation. *See, e.g.*, *In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986); In re Blair, 538 F.2d 849, 851 (9th Cir. 1976); *In re Heissenger Resources, Ltd.*, 67 B.R. 378, 382 (C.D. Ill. 1986). The focus of inquiry in reviewing and approving compromises is whether the settlement is reasonable under the particular circumstances of the case. *See In re General Store of Beverly Hills*, 11 B.R. 539, 541 (B.A.P. 9th Cir. 1981). It is not the bankruptcy judge's responsibility to decide the numerous questions of law and fact with respect to the merits of the

1   litigation, but rather to "canvas the issues and see whether the settlement falls below the lowest

2   point of the range of reasonableness." *Heissenger Resources*, 67 B.R. at 383.

3        Among the factors to be considered in determining whether a settlement is fair, equitable,

4   and reasonable are the following:

5              (a)    the probability of success in the litigation;

6              (b)    any impediments to collection;

7              (c)    the complexity, expense, inconvenience, and delay of litigation; and

8              (d)    the interest of creditors with deference to their reasonable opinions.

9   *See A & C Properties*, 784 F.2d at 1381.

10       From an analysis of the foregoing factors in this case, the Court should conclude that the

11  terms of the Settlement Agreement and the SDNY Consent Order are fair and equitable and well

12  within the range of reasonableness.

13              a.    *The probability of success in each forum is uncertain.*

14       The Debtor believes that it would prevail either in the stay-relief motion or in a non-

15  bankruptcy court.  Cairn Capital, however, contends and believes that it would prevail.  Both

16  parties recognize that litigation regarding the foregoing disputes, including whether Aviron

17  1703, LLC defaulted on the Loan and whether the Debtor defaulted on its guaranty, can be

18  factually and legally intensive and thus expensive for both parties.  Through the Settlement

19  Agreement, the Debtor is able to avoid these uncertainties and litigation expenses, for the benefit

20  of all its creditors.  The Debtor is hopeful that a sale of the Beverly Hills Property will meet the

21  thresholds in the Settlement Agreement, thus ensuring that it receives funds to pay all non-

22  insider claims.  Even if those thresholds were not met, the Settlement Agreement guarantees a

23  significant payment for application to administrative expenses of the Chapter 11 case.

24  Therefore, the Debtor believes that the Settlement Agreement is in the best interest of the estate.

25       The SDNY Consent Order is necessary for implementation of the Settlement Agreement.

26  The SDNY Consent Order provides for reasonable requirements with respect to the marketing,

27  sale procedures, and sale of the Beverly Hills Property, properly subject to this Court's approval

28

1    in all necessary respects.  The Debtor believes that the SDNY Consent Order is also in the best

2    interest of the estate.

3              b.      *There are no known impediments to collection.*

4         Collection would likely not be an issue, as any claim of the Debtor against Cairn Capital

5    could be satisfied by a reduction of the Loan obligation held by Cairn Capital.

6              c.      *The complexity of issues and proceeding with the disclosure statement*

7                      *and stay-relief motion would result in significant fees and expense and*

8                      *litigation risk for the estate, and any benefits would be delayed in*

9                      *comparison to the two settlements.*

10        The stay-relief motion would require an evidentiary hearing before the Court on the issue

11   of valuation.  While valuing an asset like the Beverly Hills Property may not be complex, the

12   impact of the forfeiture order on valuation creates significant uncertainty and complexity for the

13   estate and its creditors.  If, as Cairn Capital argued, the Beverly Hills Property is completely

14   unmarketable while the forfeiture order remains in place, the Debtor would have significant

15   challenges in opposing stay relief.  If stay relief were granted, the issues that the Debtor would

16   raise in a non-bankruptcy court about the wrongful declaration of default would be factually

17   complex and the standards for enjoining a foreclosure sale can be legally complex.  A negative

18   outcome could leave creditors, including administrative creditors, with no recovery.  Even a

19   positive outcome could take years.  The Settlement Agreement and SDNY Consent Order avoid

20   this complexity and delay, and provide a good chance of success now for the estate and its

21   creditors.

22             d.      *The compromises benefit the estate's creditors.*

23        The Settlement Agreement and the SDNY Consent Order provide a very good chance of

24   payment of non-insider creditors (other than Cairn) in full.  Based on that and the benefits

25   discussed above, the Debtor submits that the Settlement Agreement and the SDNY Consent

26   Order are fair, reasonable, and in the best interest of the estate and its creditors, and should

27   therefore be approved by the Court.

28

**B.      The Proposed Sale should be approved.**

      *1.      The Bankruptcy Code permits the private sale of estate assets without overbidding.*

      Section 363 of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Although many bankruptcy asset sales are conducted through public auctions with overbidding, that is not required.  There is no doubt that, under appropriate circumstances, courts can approve a debtor's sale of assets pursuant to a private sale without overbidding.  For example, the Bankruptcy Rules provide as follows: "Conduct of Sale Not in the Ordinary Course of Business. (1) Public or ***Private Sale.***  All sales not in the ordinary course of business may be ***by private sale*** or by public auction." Fed. R. Bankr. P. 6004(f)(1) (emphasis added); *see also* Fed. R. Bankr. P. 2002(c) (providing that a notice of a proposed sale must include, *inter alia*, "the terms and conditions of any ***private sale***") (emphasis added).  Similarly, the Local Bankruptcy Rules provide that, "[i]f the proposed sale ***is not subject to overbid***, the declaration [in support of the sale] must include a certification that the movant has not been contacted by any potential overbidder and that, in the movant's business judgment, there are no viable alternative purchasers." LBR 6004-1(c)(2)(B) (emphasis added); *see also* LBR 6004-1(c)(3) (providing that, where a sale motion is set for hearing, the notice must advise parties "[whether the proposed sale is subject to higher and better bids"]).

      Case law also recognizes authority for debtors in possession (and trustees) to sell assets in private sales without overbidding.  *See Suter v. Goedert*, 396 B.R. 535, 549 (D. Nev. 2008) ("If the sale is not in the ordinary course of business, the trustee may sell the asset privately or by public auction."); *In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985) (holding that Section 363 "clearly indicates that the manner of sale is within the discretion of the Trustee or [debtor in possession]").  In *In re Bakalis*, 220 B.R. 525 (Bankr. E.D.N.Y. 1998), there were two bidders for assets and the question before the court was which offer was the highest and best offer.  Although that case did not deal with a private sale, in ruling on the issue, the court recognized authority for debtors to conduct private sales without overbidding.  As stated by the

court, "[u]nlike judicial sales under the former Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee [or debtor in possession], 'who has ample discretion to administer the estate, including authority to conduct public or *private sales* of estate property.'" *Id.* at 531 (emphasis added) (*citing and quoting In re WPRV–TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992), *aff'd in part, rev'd in part*, 983 F.2d 336 (1st Cir. 1993)).

In *Penn Mut. Life Ins. Co. v. Woodscape Ltd., P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991), an issue arose in connection with motions for relief from stay as to whether the debtor's proposed plan was viable such that the debtor had a reasonable possibility of successful reorganization.  To determine whether the plan was viable, the court had to determine whether the plan could include terms for a private sale of the right to future participation in the debtor's business.  In ruling on that issue, the court held that *[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction*." *Id.* at 174 (emphasis added).

In *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*; 132 B.R. 827 (Bankr. M.D.N.C. 1991), *aff'd in part and remanded on other grounds*, 5 F.3d 750 (4th Cir. 1993), the debtor and a lender sued the Chapter 7 trustee for alleged damages resulting from delay in conducting a private sale of real property, and the issue was whether the Chapter 7 trustee had immunity from such claims.  Although that case did not deal directly with whether to allow a private sale, the court recognized authority for debtors to conduct private sales without overbidding.  As stated by the court, "[m]ost estate assets are liquidated by either *private sale* or public auction. . . . [T]he the Bankruptcy Code expresses no preference between *private* and public sales . . . .").  *Id.* at 836 (emphasis added).

In *In re Nepsco, Inc.*, 36 B.R. 25 (Bankr. D. Me. 1983), the court was considering a 9019 motion that included a sale that was not subject to overbid.  A party objected to the compromise/sale because it was going to make a higher bid.  The court held that the objecting party, which was not a creditor and a stranger to the estate, did not have standing to object to a

1    sale and that, even it did, the objecting party failed to establish that its offer was better for the

2    estate.  In its ruling, the court held that

3              [C]urrent Bankruptcy Rule [6004(f)(1)] provides that all sales not
              in the ordinary course of business may be private or by public
4              auction.  If the sale is private, all creditors receive notice of the
              terms and conditions of the sale and the time fixed for filing
5              objections.  []  If no objections are filed, the trustee may proceed
              with the sale without either a hearing or a court order.  []  Clearly,
6              the thrust of this statutory scheme is to provide maximum
              flexibility to the trustee, subject to the oversight of those for whose
7              benefit he acts, *i.e.*, the creditors of the estate.  This scheme also
              promotes Congress' intent of keeping bankruptcy judges out of the
8              administrative aspect of bankruptcy cases . . . .

9    *Id.* at 26-27.

10         In *In re Ancor Exploration Company,* 30 B.R. 802 (N.D. Okla. 1983), the bankruptcy

11   court approved a private sale of substantially all of the joint debtors' assets.  On appeal, the

12   district court framed the issue as whether a trustee, with bankruptcy court approval, can sell

13   substantially all of a debtor's assets in a private sale over the objection of an interested party

14   without complying with the plan and disclosure statement requirements.  In ruling on the issue,

15   the court held that "the bankruptcy court should have wide latitude in approving even a ***private***

16   ***sale*** of all or substantially all of the estate assets not in the ordinary course of business under

17   §363(b).  However, each such proposed sale must be examined from its own facts to determine

18   whether approval is justified."  *Id.* at 808.

19         The court went on to hold that the following factors should be considered in determining

20   whether to approve any sale, whether public or private: (1) "whether there are compelling facts

21   and circumstances which support approval of the sale," (2) "[i]f the trustee [or debtor in

22   possession] has not solicited other prospective purchasers …, whether there are facts that justify

23   the trustee not doing so," and (3) "[w]hether the sale … is in the best interests of the debtor estate

24   when the consideration paid and all other relevant factors are taken into account."  *Id.*  The

25   *Hutchinson* court also stated that:

26              [T]rustees generally prefer to use public sales whenever possible
              because public sales enable a trustee to liquidate estate assets
27              quickly and with a high degree of visibility.  However, ***if the estate***
              ***property is unusual in nature*** **or has a substantial fair market**

28

16

**value**, *a trustee may determine that a private sale is in the best interest of the estate.*

*Id.* at 836 (emphasis added).

As set forth below, the Proposed Sale satisfies these factors.

### 2.    *The private sale of the Beverly Hills Property is in the best interests of the estate and its creditors.*

The general requirements for the approval of any sale of estate assets are consistent and sometimes coextensive with the foregoing requirements applicable to private sales.  To approve a sale of estate property other than in the ordinary course of business, the court must find "some articulated business justification."  *See, e.g., In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) citing *In re Schipper (Fulton State Bank v. Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Comm. of Equity SEC Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *Lionel Corp.* and requiring good faith); *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business judgment" test in the *Abbotts Dairies* decision).

In the Ninth Circuit, "cause" exists for authorizing a sale of estate assets if it is in the best interest of the estate, and a business justification exists for authorizing the sale.  *In re Huntington, Ltd.*, 654 F.2d 578 (9th Cir. 1981); *In re Walter*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988).  The Ninth Circuit has also held that Section 363 allows the sale of substantially all assets of a debtor's bankruptcy estate after notice and a hearing.  *In re Qintex Entertainment, Inc.*, 950 F.2d 1492 (9th Cir. 1991).

In determining whether a sale satisfies the business judgment standard, courts have held that: (1) there be a sound business reason for the sale; (2) accurate and reasonable notice of the sale be given to interested persons; (3) the sale yield an adequate price (*i.e.*, one that is fair and reasonable); and (4) the parties to the sale have acted in good faith.  *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *see also, In re Walter*, 83 B.R. at 19-20.

17

1    Here, the Proposed Sale of the Beverly Hills Property including the payments out of

2    escrow from the sale proceeds is in the best interests of the estate and its creditors.  The

3    business justification is that the Proposed Sale would enable the Debtor to pay its non-sider

4    creditors (other than Cairn Capital) in full (with the consent of its one insider creditor), which it

5    could not do without the Proposed Sale (and the Settlement Agreement).  Notice of the Proposed

6    Sale has been given to all creditors and all parties in interest.  As determined by the Altman

7    Brothers, the Purchase Price represents the highest price that the Debtor could expect to achieve

8    in current market conditions, and further marketing is unlikely to yield a meaningfully higher

9    price.

10    The Debtor's residence is not a typical residential property and it has a substantial fair

11    market value.  *See Hutchison*, 132 B.R. at 836.  Buyers of residential real property of this type do

12    not wish to engage in public auctions and are willing to pay prices sufficient to avoid public

13    auctions.  Further, private sales of residential real estate typically bring a higher price than a

14    public auction.  *Id.* ("**private sales of real property almost always bring a better price than**

15    **public auctions** and, accordingly, trustees often attempt to sell real property by private sale

16    rather than by public auction" (emphasis added).  Although the Debtor has not formally

17    marketed the property, the realtor community has known of the potential availability of the

18    property for more than a year and real estate agents and brokers for potential buyers have advised

19    their clients about the property and they have showed 24 of their clients the property during the

20    past year, resulting in three purchase offers.  The Proposed Sale is the highest of the three offers

21    and has the highest probability of closing with the fewest conditions.  Temerity and Cairn have

22    each concluded that the Proposed Sale represents the highest and best value under the

23    circumstances (including the SDNY Consent Order and the Settlement Agreement).

24    The Debtor, the Sadleir family, and the Proposed Buyer have disclosed the separate

25    transaction by which the Proposed Buyer intends to acquire some of the personal property of the

26    Sadleir family (which is not estate property) and to lease the property to the family for up to 30

27    days after closing for $20,000, as further discussed below.  The Debtor and the Proposed Buyer

28    have engaged in arm's-length negotiations and have negotiated the Proposed Sale in good faith.

18

1      The Debtor, in the exercise of its business judgment and with Cairn Capital's consent,

2   therefore believes that consummating a sale transaction without conducting a public sale process

3   to the Proposed Buyer is in the best interest of the estate.  After discussions with the Broker,

4   Cairn Capital agrees with the Debtor that – in light of the expressions of interest and purchase

5   offers received by the Debtor thus far – it is highly unlikely that the Debtor can secure a bid for

6   the Beverly Hills Property that would pay the Cairn Claim (as defined in the Settlement

7   Agreement) in full.  More importantly, the structure of the Settlement Agreement would not

8   provide any additional value to the Debtor or its estate, as the Proposed Sale triggers all of the

9   potential benefits set forth in the Settlement Agreement.  As such, the Debtor's creditors would

10   not benefit from pursuing a public sale process even assuming such a process *might* obtain a

11   higher price.  In light of the foregoing, Cairn Capital has informed the Debtor that it wishes for

12   the Debtor to consummate the Proposed Buyer's bid in accordance with the Settlement

13   Agreement, as soon as possible and subject to the Court's approval.  As for the reasons set forth

14   above, the Court should approve the Proposed Sale.

15   **C.      The Proposed Buyer is entitled to the protections accorded a good-faith buyer.**

16      Section 363(m) provides that the:

17              reversal or modification on appeal of an authorization under
                subsection (b) or (c) of this section of a sale or lease of property
18              does not affect the validity of a sale or lease under such
                authorization to an entity that purchased or leased such property in
19              good faith, whether or not such entity knew of the pendency of the
                appeal, unless such authorization and such sale or lease were
20              stayed pending appeal.

21      "Good faith" encompasses fair value, and further speaks to the integrity of the

22   transaction.  *In re Wilde Horse Enterprises*, 136 B.R. at 842.  With respect to the debtor's

23   conduct in conjunction with the sale, the good faith requirement "focuses principally on the

24   element of special treatment of the Debtor's insiders in the sale transaction."  *See In re Industrial

25   Valley Refrig. & Air Cond. Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).  With respect

26   to the buyer's conduct, the court should consider whether there is any evidence of "fraud,

27   collusion between the purchaser and other bidders or the [debtor], or an attempt to take grossly

28   unfair advantage of other bidders."  *In re Abbotts Dairies*, 788 F.2d at 147, *In re Rock Indus.*

1   *Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978); *In re Wilde Horse Enterprises, Inc.*, 136 B.R.

2   at 842; *In re Alpha Industries, Inc.*, 84 B.R. 703, 706 (Bankr. D. Mont. 1988).  In short, "[l]ack

3   of good faith is generally determined by fraudulent conduct during the sale proceedings."  *In re*

4   *Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988), citing *In re Exennium, Inc.*, 715 F.2d

5   1401, 1404-05 (9th Cir. 1983); *see also In re M Capital Corp.*, 290 B.R. 743 (B.A.P. 9th Cir.

6   2003).

7          In *In re Filtercorp, Inc.*, 163 F.3d 570 (9th Cir. 1998), the Ninth Circuit set forth the

8   following test for determining whether a buyer is a good faith purchaser:

9          A good faith buyer "is one who buys 'in good faith' and 'for
           value.'"  [citations omitted.]  [L]ack of good faith is [typically]
10         shown by 'fraud, collusion between the purchaser and other
           bidders or the trustee, or an attempt to take grossly unfair
11         advantage of other bidders.'"

12  *Filtercorp*, 163 F.3d at 577.

13         The Debtor also believes that the Proposed Buyer has acted in good faith throughout this

14  process.  The Debtor is not aware of any fraud or collusion by the Proposed Buyer or any attempt

15  by the Proposed Buyer to take unfair advantage of any other bidders.  The Proposed Buyer is not

16  an insider of the Debtor and has no connection with any insider of the Debtor.  The Purchase

17  Agreement was negotiated by the Debtor and the Proposed Buyer, both of whom are represented

18  by independent real estate brokers/agents (and the Debtor was also represented by its bankruptcy

19  counsel), in good faith and at arm's length.  Moreover, the Debtor has kept Cairn Capital

20  apprised of all material developments.

21         Based on the foregoing, the Debtor submits that the Court should find that the Proposed

22  Buyer constitutes a good-faith purchaser entitled to all of the protections afforded by

23  Section 363(m) of the Bankruptcy Code.

24  **D.     The backup Bidding Procedures should be approved.**

25         The Debtor with the concurrence of Cairn Capital nevertheless seeks approval of

26  proposed bidding procedures (the "**Bidding Procedures**"), just in case the Proposed Sale does

27  not close for any reason.  The Bidding Procedures are set forth in the proposed Bidding

28  Procedures Order attached as **Exhibit 3**, and are not repeated here.  Neither the Bankruptcy Code

1   nor the Bankruptcy Rules contain specific provisions with respect to the procedures to be

2   employed by a debtor in possession when conducting a public or private sale.  Nonetheless, as

3   one court has stated, "[i]t is a well-established principle of bankruptcy law that the objective of

4   bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or

5   greatest overall benefit possible for the estate." *In re Atlanta Packaging Products, Inc.*, 99 B.R.

6   124, 131 (Bankr. N.D. Ga. 1988).  To that end, courts uniformly recognize that procedures

7   intended to enhance competitive bidding are consistent with the goal of maximizing the value

8   received by the estate and therefore are appropriate in the context of bankruptcy sales.  *See, e.g.,*

9   *In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court imposed rules

10   for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and

11   [should] provide for a fair and efficient resolution of bankrupt estates").

12        The Debtor believes that the proposed bidding and overbid procedures in the Bidding

13   Procedures Order will maximize the price ultimately obtained for the Beverly Hills Property

14   while still protecting the estate from parties who may wish to bid but who are ultimately unable

15   to consummate a purchase.  The Bidding Procedures serve numerous legitimate purposes.

16   Among other things, the bidding procedures will (1) foster competitive bidding among any

17   serious potential purchasers, (2) eliminate from consideration purchasers who would waste the

18   estate's time because they would not have the financial ability to consummate a purchase of the

19   Beverly Hills Property, and (3) ensure that the highest possible price is obtained for the Beverly

20   Hills Property.  In addition to the foregoing, the proposed bidding procedures meet all of the

21   requirements for their approval pursuant to LBR 6004-1(b).  Based on the foregoing, the Debtor

22   submits that the proposed bidding procedures are reasonable and in the best interests of the estate

23   and, therefore, should be approved.

24   **E.**    **The Proposed Buyer has agreed to buy non-estate personal property belonging to**

25        **the Sadleir family.**

26        Cairn Capital's collateral at the Beverly Hills Property includes, among other things, all

27   real property, including fixtures.  The current occupants, the Sadleir family, have valuable

28   personal property located at the premises that is integrated into the style of the home.  The

1    Proposed Buyer has entered into an agreement to purchase certain personal property for a price

2    of $770,000 and to permit the Sadleir family to lease the Beverly Hills Property for up to 30 days

3    after the closing of the sale for $20,000.

4              If the sale to the Proposed Buyer does not close for any reason, the Sadleir family expects

5    that other potential buyers will also inquire about purchasing the Sadleir's personal property, to

6    maintain the look of the residence, as some have done during the past year.  These potential

7    buyers have been interested in a "turnkey home" that requires no painting, construction,

8    renovating, or furnishings.  If the sale to the Proposed Buyer does not closed for any reason, the

9    Sadleir family intends to concurrently market and entertain offers for their personal property.

10   The family will disclose the details of any agreement to purchase their personal to Cairn Capital,

11   the Department of Justice, and this Court.

12   **F.      The Debtor requests the Court to waive the 14-day waiting period set forth in**

13         **Bankruptcy Rules 6004(h).**

14             Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale or lease of

15   property . . . is stayed until the expiration of 14 days after entry of the order, unless the court

16   orders otherwise."

17             For all of the reasons set forth above, the Debtor believes that closing on the Proposed

18   Sale no later than 5 days after this Court approves the sale, as set forth in the Purchase

19   Agreement, is in the best interests of the Debtor's estate and its creditors.  Closing the Debtor's

20   sale of the Beverly Hills Property to the Proposed Buyer as soon as the Proposed Buyer is able to

21   close reduces the risk to this estate of the Debtor continuing in a bankruptcy case and bearing all

22   of the uncertainties associated therewith.  In order to facilitate the most expeditious sale closing

23   possible, the Debtor requests that the Settlement and Sale Order be effective immediately upon

24   entry by providing that the 14-day waiting period of Bankruptcy Rule 6004(h) is waived.

25                                    **CONCLUSION**

26             The Debtor respectfully requests that the Court grant the Motion, approve the Debtor's

27   entry into the Settlement Agreement and the SDNY Consent Order, approve the Proposed Sale

28   including approving the related payments from the sale proceeds and finding that the Proposed

1    Buyer is a good-faith purchaser, approve the backup Bidding Procedures, waive the 14-day

2    waiting period of Bankruptcy rule 6004(h), and grant such further relief as is necessary and just.

3    Dated:  January  21 , 2022        LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

4

5                                    By:____/s/ Kurt Ramlo_____
                                          David B. Golubchik
6                                          Kurt Ramlo
                                     Attorneys for Temerity Trust Management, LLC, Debtor and
7                                    Debtor in Possession

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF JOSH ALTMAN

2      I, Josh Altman, hereby declare as follows:

3      1.      I am over 18 years of age.  Except where otherwise stated, I have personal

4 knowledge of the facts set forth below and, if called to testify, I would and could competently

5 testify thereto.  I make this declaration in support of the *Motion for Order (1) Approving*

6 *Compromise with Cairn Capital; (2) Approving Compromise with United States of America and*

7 *Cairn Capital; (3) Approving Private Sale of Real Property; (4) Approving Backup Marketing,*

8 *Bidding, and Sale Procedures; (5) Waiving 14-Day Stay Period Set Forth in Bankruptcy Rule*

9 *6004(h); and (6) Providing Related Relief.*

10      2.      I have been in the Luxury Real Estate market in Los Angeles for nearly two

11 decades and sold over $4 billion of residential real estate.  Backed by the global brokerage firm

12 of Douglas Elliman Realty, LLC, the largest subsidiary of Douglas Elliman Inc., a publicly

13 traded corporation (NYSE: DOUG), my brother and I are members at our firm The Altman

14 Brothers that is contractually affiliated with Douglas Elliman of California, Inc. ("**Douglas**

15 **Elliman**").  For the past 10 consecutive years, The Altman Brothers have ranked within the Top

16 10 Teams in the country.  In 2020 alone, I sold $587 million in residential sales. The $10-$20

17 million price range in Beverly Hills is our bread and butter.

18      3.      I am familiar with 9135 Hazen Drive (the "**Beverly Hills Property**") from the

19 previous owners.  I have also recently toured the property on multiple occasions.  It is a beautiful

20 turnkey home.

21      4.      Approximately a year ago, the Debtor identified and expressed an intention to use

22 my firm as the Debtor's seller broker/agent once a formal sales process was ready to begin.

23      5.      I am aware that the following events described the remainder of this paragraph

24 occurred before my firm was formally retained, as reported to me by the Temerity Trust

25 Management, LLC (the "**Debtor**"):  During the past year, the Debtor has received three offers

26 for Beverly Hills Property.  Beginning in 2020, the Debtor and its lender (Cairn Capital

27 Investment Funds, ICAV, for its sub-fund Cairn Capstone Special Opportunities Fund ("**Cairn**

28 **Capital**")) began identifying and interviewing potential brokers and real estate agents that were

1  qualified to market and sell residential property like the Beverly Hills Property.  The natural

2  consequence of those activities was the real estate broker/agent community learned that the

3  Beverly Hills Property would likely be available for sale at any time.  Various brokers/agents

4  contacted the Debtor to request an opportunity to show the property to potential buyers.  The

5  Debtor allowed the showings to occur and 24 interested buyers viewed the property during the

6  past year.  The Debtor received three purchase offers.

7       6.     In November 2020, the Debtor began negotiations to formally retain my firm and

8  my firm and I became more actively involved in ramping up to assist the Debtor marketing,

9  negotiation, and selling the Beverly Hills Property.

10      7.     One potential buyer emerged during the past year, during the events described in

11  paragraph 5 above.  The owner(s) of 9135 Hazen Drive LLC ("**Proposed Buyer**") made an offer

12  that resulted in the *California Residential Purchase Agreement and Joint Escrow Instructions*

13  (the "**Purchase Agreement**").  My firm assisted the Debtor in negotiating the Purchase

14  Agreement, which resulted in what I and my firm believe to preemptively high bid of

15  $14,150,000 (the "**Purchase Price**"), to be paid in cash at closing, as set forth in the Purchase

16  Agreement.

17      8.     Based on information provided by the Debtor, my tours of the Beverly Hills

18  Property, and my knowledge, experience, and expertise, I believe that the Purchase Agreement is

19  in the best interests of the Debtor's estate and creditors.  The Purchase Price represents the

20  highest price that the Debtor could expect to achieve in current market conditions, and further

21  marketing is unlikely to yield a meaningfully higher price.

22      9.     The Beverly Hills Property is not a typical residential property and it has a

23  substantial fair market value.  Buyers of residential real property of this type do not wish to

24  engage in public auctions and are willing to pay prices sufficient to avoid public auctions.

25  Further, private sales of residential real estate typically bring a higher price than a public auction.

26  In my expert opinion, conducting a public auction or sale process is unlikely to yield a

27  meaningfully higher price.

28

DocuSign Envelope ID: 830092A07635-4E57-8738-0DE8453C4D35

10.     The negotiation and execution of the Purchase Agreement were conducted in good faith, without any fraud or collusion. I believe that the Proposed Buyer has acted in good faith throughout this process. I am not aware of any fraud or collusion by the Proposed Buyer or any attempt by the Proposed Buyer to take unfair advantage of any other bidders. My firm and I have not been offered any consideration other than what is set forth in a Listing Agreement to be presented to this Court separately for approval.

11.     My firm and I have not agreed to share our compensation with any other person or entity. (As is customary in the real estate industry, the real estate broker/agent for the Proposed Buyer will be paid a commission with respect to the Proposed Sale, and as set forth in the Listing Agreement, George Kahwaji of Rodeo Realty, who was involved in bringing the Debtor and the Proposed Buyer to the attention of each other, will be receiving a percentage referral fee from the proceeds of the Proposed Sale.)

12.     The Proposed Buyer has negotiated to require the Debtor to close the sale within five business days after the latest of approval of the Proposed Sale by this Court, by the United States District Court of the Southern District of New York, and the title company selected to provide title insurance in accordance with the Purchase Agreement. I have been advised that bankruptcy sales are by default subject to a 14-day stay of the order approving such sales. This Court can help ensure that the Debtor is able to timely close the Proposed Sale, and avoid any risk of cancellation or other assertion of remedies by the Proposed buyer, if the Court orders that the approval of the Proposed Sale is not subject to any 14-day stay.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on January _21_, 2022, in Beverly Hills, California.

_____
JOSH ALTMAN

## DECLARATION OF HANAN KADADU

I, Hanan Kadadu, also known as Hannah K. Sadleir, declare:

**1.**    I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.  I make this declaration in support of the *Motion for Order (1) Approving Compromise with Cairn Capital; (2) Approving Compromise with United States of America and Cairn Capital; (3) Approving Private Sale of Real Property; (4) Approving Backup Marketing, Bidding, and Sale Procedures; (5) Waiving 14-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (6) Providing Related Relief*.

**2.**    I am the sole manager and the sole member of Temerity Trust Management, LLC (the "**Debtor**"), the debtor and debtor in possession.  I have been the sole member continuously since the organization of the Debtor on October 14, 2015.  I was the original manager of the Debtor until March 22, 2017, when I stepped down a few months after starting a family.  In my capacity as the Debtor's sole member, I appointed my husband, William K. Sadleir, as the sole manager in my stead.  Immediately after I authorized the filing of this Chapter 11 case in my capacity as sole member on June 1, 2020 (the "**Petition Date**"), I asked for and accepted the resignation of my husband as manager.  On June 2, 2020, I appointed myself as sole manager and I remain the sole manager today.

**3.**    The Debtor is the holding company for my ownership interests in the business generally known as Aviron Pictures.  The Debtor purchased the residence at 9153 Hazen Drive, Beverly Hills, California  90210 (the "**Beverly Hills Property**") on October 18, 2017 for $14 million, as an investment, to finance business activities, and to conduct business including business development, networking, and promotion.  The Debtor moved its office location to the property on December 2, 2017, when my family and I also moved into the Beverly Hills Property.

**4.**    The Debtor used the Beverly Hills Property to finance Aviron 1703, LLC's making of the film *Serenity*.  Aviron 1703, LLC is the borrower under a loan extended by Cairn Capital Investment Funds, ICAV, for its sub-fund Cairn Capstone Special Opportunities Fund

("**Cairn Capital**"), for up to $22,400,000 in aggregate principal balance of loan obligations for purposes of financing of certain distribution activities in respect of *Serenity* and certain other limited uses in connection therewith  (the "**Loan**").  The Debtor guaranteed the loan and granted Cairn Capital a deed of trust on the Beverly Hills Property to secure the Debtor's obligations under the guarantee.

5.    The Loan is secured among other things by proceeds from the distribution of *Serenity*, which the Debtor believes have resulted in at least $13,479,542 in collections and payments on the Loan.  The Debtor believes that the film has grossed $14,454,622 at domestic and international theaters and more than $9,000,000 in the home performance market where it continues to generate revenue.

6.    On February 14, 2019, Cairn Capital sent Aviron 1703, LLC a Notice of Defaults and Reservation of Rights, identifying a number of alleged non-monetary defaults under the Credit Agreement, including, among others, at least one default Cairn Capital believed was not capable of cure.  The Debtor disputes that any default occurred on or around February 14, 2019.  The scheduled maturity date of the Loan was December 15, 2019.  In light of what Cairn Capital believed was the Debtor's continuing default under its guaranty of the Loan, Cairn Capital initiated a non-judicial foreclosure sale, with a sale of the Property by a trustee scheduled for June 2, 2020.

7.    On June 19, 2020, Cairn Capital filed a motion for the appointment of a trustee or alternatively for relief from stay to foreclose, which was heard on July 21, 2020 and denied without prejudice by order entered August 11, 2020.

8.    The Debtor filed a chapter 11 plan on July 21, 2020, an amended chapter 11 plan and disclosure statement on August 11, 2020, and a second amended plan and disclosure statement on September 15, 2020.  On September 25, 2020, Cairn Capital renewed its motion for relief from stay.  Cairn Capital contended that there was cause of stay relief because, among other things, the Debtor had failed to provide adequate protection of Cairn Capitals' interest in the collateral owned by the Debtor and that this Chapter 11 case had been filed in bad faith.  Cairn Capital also alleges that there is a lack of equity in the collateral and that the collateral is

28

1   not necessary to an effective reorganization.  The Debtor disputed these allegations, contending

2   that Cairn Capital had wrongfully declared defaults under the Loan and that the value of the

3   collateral exceeds the disputed balance of the loan.  Even if Cairn Capital obtained relief from

4   stay, the Debtor could seek an injunction against any foreclosure sale based on the wrongful

5   notice of default and actions that prevented the Debtor and other credit parties to the Loan from

6   servicing and refinancing the debt.  Cairn Capital strenuously disputes these arguments.

7         9.    The Court conducted hearings on the Debtor's disclosure statement and Cairn

8   Capital's stay-relief motion on October 27, 2020, in which the Court scheduled an evidentiary

9   hearing on the stay-relief motion and a status conference on the disclosure statement.

10         10.    About the same time, in November 2020, the United States Department of Justice

11   applied ex parte and obtained a restraining order against any transfer of the Beverly Hills

12   Property by the Debtor, in *United States v. William Sadleir*, Case No. 20 Cr. 320 (PAE)

13   (S.D.N.Y.) (the "**Asset Forfeiture Action**").  Before then, the request for relief in the Asset

14   Forfeiture Action was limited to seeking to forfeit any interests in the Beverly Hills Property

15   held by William Sadleir, who held no such interest.  The Debtor disputes that the Beverly Hills

16   Property is subject to forfeiture.

17         11.    During the following year, the stay-relief evidentiary hearing was converted to a

18   status conference and the Debtor and Cairn Capital entered into a series of stipulated requests for

19   continuances of the status conferences on the stay-relief motion and the disclosure statement to

20   permit settlement discussions between the parties and with third parties, including the

21   Department of Justice.

22         12.    The discussions with Cairn Capital resulted in the settlement with Cairn Capital

23   under which the Beverly Hills Property would be marketed and listed for sale to fund payments

24   to Cairn Capital and the Debtor's other creditors.  The *Settlement Agreement and General*

25   *Release* (attached as **Exhibit 1**[9]; the "**Settlement Agreement**") between the Debtor, myself,

26   ---

27   [9]  The Debtor is filing a copy of the Settlement Agreement that does not include its Exhibit 1.
That exhibit contains sensitive information that could adversely affect the marketing, bidding,
and sale of the Debtor's residential real property if the proposed sale described below does not

28   close for any reason.

Sadleir, and Cairn Capital provides for the following, among other things:

1.    The sale of the Beverly Hills Property, with the proceeds applied (a) first, to pay outstanding real property taxes, (b) second, to pay customary and usual real estate costs of sale, (c) third, to pay the Cairn Capital loan, and (d) fourth, to the extent funds remain, to constitute a substitute res in the Asset Forfeiture Action.

2.    Cairn Capital will pay, from the sale proceeds of the Beverly Hills Property, up to $400,000 to fund payment of administrative expenses and creditor claims (excluding claims of insiders) for the Debtor's Chapter 11 case, provided that the Beverly Hills Property is sold or if Cairn Capital acquires the property through a credit bid in which certain conditions set forth in an exhibit to be filed under seal are satisfied.  If those conditions are not satisfied, then Cairn Capital will fund up to $150,000 in Chapter 11 administrative expense claims (other than those held by any insider).

3.    If certain conditions are met, Cairn Capital will either share the proceeds of the *Serenity* film with the Debtor or allow the Debtor to acquire all of the proceeds, as follows:

a.    If a sale of the Beverly Hills Property closes for a price at or above $14,125,000 (the "**Reserve Price**") on or before 150 days after the sale period begins, 100% of the film revenue will go to the Debtor or its designee and (i) Cairn Capital will no longer have any right to the film revenue, (ii) Cairn Capital will assign its claim and security interest in the film revenue to the Debtor or its designee, and (iii) the Debtor or its designee will be subrogated to Cairn Capital's rights and interests under its claim and security interest in the film revenue.

b.    If a sale closes at or above the Reserve Price 151 to 211 days after the sale period begins, then 75% of the film revenue will go to the Debtor or its designee and 25% to Cairn Capital until Cairn Capital receives the lesser of (i) $250,000 and (ii) 98% of the Cairn Claim from all sources (the "**Minimum Amount**").

c.      If a sale closes below the Reserve Price within 210 days after the

sale period begins, 25% to the Debtor or its designee and 75% to Cairn Capital

until it receives the Minimum Amount.

d.      100% to Cairn Capital otherwise, including if Cairn Capital

acquires the Beverly Hills Property through a credit bid.

4.      In consideration of my and Sadleir's execution of the Settlement

Agreement and their consent to the Bidding Procedures Order, Cairn Capital will pay up

to $15,000 in moving expenses to me.

5.      Cairn Capital will not oppose any motion of the Debtor to dismiss this

Chapter 11 case that expressly confirms and preserves the validity, enforceability, and

effect of the Settlement Agreement, the SDNY Consent Order (as defined below), and

any order approving the sale of the Beverly Hills Property in accordance with those

documents.

6.      The parties will exchange mutual releases.

7.      The parties consent to the Bidding Procedures Order.

13.      The Debtor believes that the Settlement Agreement is in the best interest of the

estate.

14.      The Motion also seeks approval of the Debtor's entry into a compromise in the

form of a proposed *Consent Order of Interlocutory Sale of Real Property* (the "**SDNY Consent**

**Order**," attached as **Exhibit 2**) for Case No. 20 Cr. 320 (PAE) in the United States District

Court for the Southern District of New York, consented to by the Debtor, Sadleir, Cairn Capital,

and the United States Department of Justice.  The SDNY Consent Order will provide for:

1.      Authority from the Court presiding over the Asset Forfeiture Action for

the Debtor's sale of the Beverly Hills Property including through any credit bid by Cairn

Capital otherwise allowed by the Bidding Procedures Order.

2.      Cooperation from the Department of Justice by providing assurances to

this Court and other parties that the Beverly Hills Property may be sold, free and clear of

any forfeiture claim, and by terminating a lis pendens recorded against the property.

31

3.      Marketing of the property by the Altman Brothers or comparable licensed real estate agency specializing in high-end Beverly Hills real estate, subject to this Court's approval and approval by Cairn Capital.

4.      A sale period and minimum bid to be set by this Court unless a private sale is appropriate.

5.      A bid deposit into escrow of at least 5% of the bid amount.

6.      An auction if two or more qualifying bids are received or a private sale if a qualifying bid with terms satisfactory to both the Debtor and Cairn Capital in their sole discretion, subject to this Court's approval.

15.     The Debtor believes that the SDNY Consent Order is also in the best interest of the estate.

16.     During the past year, the Debtor has received three offers for Beverly Hills Property.  Beginning in 2020, the Debtor and Cairn Capital began identifying and interviewing potential realtors qualified to market and sell residential property like the Beverly Hills Property. The natural consequence of those activities was the realtor community learning that the Beverly Hills Property would likely be available for sale at some point.  Various realtors contacted the Debtor to request an opportunity to show the property to potential buyers, notwithstanding that the property was not yet available for sale and that the Debtor had not yet retained a real estate agent or broker to represent it.  The Debtor allowed the showings to occur and 24 interested buyers viewed the property during the past year.  Notwithstanding that the buyers knew that the property was not yet for sale, the Debtor received three purchase offers.  One potential buyer has emerged after offering what the Debtor, its broker (Douglas Elliman of California, Inc., "**Douglas Elliman**" or the "**Broker**"), and Cairn Capital believe is a preemptively high bid of $14,150,000 to be paid in cash at closing, as set forth in the attached purchase agreement annexed as **Exhibit 3**[10] (the "**Purchase Agreement**").  The proposed sale under the Purchase

---

[10]  The "Buyer" under the Purchase Agreement are the (a) owner(s) of the Proposed Buyer and (b) their "designee."  The owner(s) have designated the Proposed Buyer as the entity who will take title to the Beverly Hills Property at the closing of the purchase under the Purchase Agreement.  The Debtor has redacted the identity(ies) of the owner(s) of the Proposed Buyer

1    Agreement is without overbidding and not subject to higher and better bids.

2        17.    The proposed buyer is 9135 Hazen Drive LLC (the "**Proposed Buyer**").  The

3    Debtor has investigated the financial wherewithal of the Proposed Buyer and its owner(s) and

4    have determined that they have the ability to close the purchase.  The Debtor and its Broker

5    believe that the Sale Price provides fair value for the Beverly Hills Property.  The Proposed

6    Buyer is not an insider of the Debtor or associated with any insider of the Debtor.  The Debtor

7    negotiated the Proposed Sale at arm's length with the assistance of the Broker and the advice and

8    consent of Cairn Capital.  The negotiation and execution of the Purchase Agreement were

9    conducted in good faith, without any fraud or collusion.  The Debtor also believes that the

10    Proposed Buyer has acted in good faith throughout this process.  The Debtor is not aware of any

11    fraud or collusion by the Proposed Buyer or any attempt by the Proposed Buyer to take unfair

12    advantage of any other bidders.  The Proposed Sale provides no consideration to an insider of the

13    Debtor other than a modest reimbursement of up to $15,000 for moving expenses of my family

14    (and other than the Cairn Capital personal property collateral that will be released to the Debtor

15    or a designee of the Debtor under the Settlement Agreement and which may be sufficient to

16    provide some distribution on account of my membership interest in the Debtor, after payment of

17    allowed claims in full).  Accordingly, the Debtor also seeks a finding that the Proposed Buyer is

18    a good-faith purchaser entitled to all of the protections afforded by Section 363(m) of the

19    Bankruptcy Code.

20        18.    The Debtor, my family, and the Proposed Buyer have disclosed the separate

21    transaction by which the Proposed Buyer intends to acquire some of my family's personal

22    property (which is not estate property) and to lease the property to my family for up to 30 days

23    after closing for $20,000, as further discussed below.  The Debtor and the Proposed Buyer have

24    engaged in arm's-length negotiations and have negotiated the Proposed Sale in good faith.

25    _____

26    from the Purchase Agreement attached to this Motion.  As is common with buyers of residences
such as the Beverly Hills Property, the owner(s) of the Proposed Buyer have asked the Debtor,
its professionals, and lender (Cairn Capital) to sign non-disclosure agreements with respect to

27    their identity(ies).  If the Court determines that it needs to review the identity(ies) of the owner(s)
to rule on the Motion, the Debtor will seek permission to present that information for an *in*

28    *camera* review by the Court.

19.    The Debtor, in the exercise of its business judgment and with Cairn Capital's consent, therefore believes that consummating a sale transaction without conducting a public sale process to the Proposed Buyer is in the best interest of the estate.  After discussions with the Broker, Cairn Capital agrees with the Debtor that – in light of the expressions of interest and purchase offers received by the Debtor thus far – it is highly unlikely that the Debtor can secure a bid for the Beverly Hills Property that would pay the Cairn Claim (as defined in the Settlement Agreement) in full.  More importantly, the structure of the Settlement Agreement would not provide any additional value to the Debtor or its estate, as the Proposed Sale triggers all of the potential benefits set forth in the Settlement Agreement.  As such, the Debtor's creditors would not benefit from pursuing a public sale process even assuming such a process *might* obtain a higher price.  In light of the foregoing, Cairn Capital has informed the Debtor that it wishes for the Debtor to consummate the Proposed Buyer's bid in accordance with the Settlement Agreement, as soon as possible and subject to the Court's approval.  As for the reasons set forth above, the Court should approve the Proposed Sale.

20.    The Debtor also believes that the Proposed Buyer has acted in good faith throughout this process.  The Debtor is not aware of any fraud or collusion by the Proposed Buyer or any attempt by the Proposed Buyer to take unfair advantage of any other bidders.  The Proposed Buyer is not an insider of the Debtor and has no connection with any insider of the Debtor.  The Purchase Agreement was negotiated by the Debtor and the Proposed Buyer, both of whom are represented by independent real estate brokers/agents (and the Debtor was also represented by its bankruptcy counsel), in good faith and at arm's length.  Moreover, the Debtor has kept Cairn Capital apprised of all material developments.

21.    Based on the foregoing, the Debtor submits that the Court should find that the Proposed Buyer constitutes a good-faith purchaser entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

22.    Cairn Capital's collateral at the Beverly Hills Property includes, among other things, all real property, including fixtures.  The current occupants, my family, have valuable personal property located at the premises that is integrated into the style of the home.  The

1  Proposed Buyer has entered into an agreement to purchase certain personal property for a price
2  of $770,000 and to permit my family to lease the Beverly Hills Property for up to 30 days after
3  the closing of the sale for $20,000.

4      23.    If the sale to the Proposed Buyer does not close for any reason, I expect that other
5  potential buyers will also inquire about purchasing my family's personal property, to maintain
6  the look of the residence, as some have done during the past year. These potential buyers have
7  been interested in a "turnkey home" that requires no painting, construction, renovating, or
8  furnishings. If the sale to the Proposed Buyer does not closed for any reason, my family intends
9  to concurrently market and entertain offers for our personal property. The family will disclose
10  the details of any agreement to purchase their personal to Cairn Capital, the Department of
11  Justice, and this Court.

12      24.    For all of the reasons set forth above, the Debtor believes that closing on the
13  Proposed Sale no later than five days after this Court approves the sale, as set forth in the
14  Purchase Agreement, is in the best interests of the Debtor's estate and its creditors. Closing the
15  Debtor's sale of the Beverly Hills Property to the Proposed Buyer as soon as the Proposed Buyer
16  is able to close reduces the risk to this estate of the Debtor continuing in a bankruptcy case and
17  bearing all of the uncertainties associated therewith. In order to facilitate the most expeditious
18  sale closing possible, the Debtor requests that the Settlement and Sale Order be effective
19  immediately upon entry by providing that the 14-day waiting period of Bankruptcy Rule 6004(h)
20  is waived.

21      I declare and verify under penalty of perjury under the laws of the United States of
22  America that the foregoing is true and correct to the best of my knowledge. Executed on
23  January 21, 2022, at Los Angeles, California.

24
25  Hanan Kadada
26
27
28

**EXHIBIT "1"**

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE (the "**Agreement**") is made and entered into by and between Temerity Trust Management, LLC ("**Temerity**"), William K. Sadleir, Hanan Kadadu, and Cairn Capital Investment Funds, ICAV for its sub-fund Cairn Capstone Special Opportunities Fund ("**Cairn**"). Temerity, William K. Sadleir, Hanan Kadadu, and Cairn will collectively be referred to herein as the "**Parties**" and may individually be referred to as a "**Party**." This Agreement was fully executed by all Parties on December 17, 2021 (the "**Execution Date**").

## RECITALS

WHEREAS, on or about June 1, 2020, Temerity Trust filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**").

WHEREAS, Temerity represents that it is the holding company for ownership interests in the business generally known as Aviron Pictures. Temerity represents that Aviron Pictures is an American film production and distribution company. Specifically, Temerity represents and warrants that it has the following holdings in Aviron Pictures-related companies (the "**Subsidiaries**"):

    a. Temerity owns 100% of the membership interests of Aviron Finance, LLC, which owns 100% of Aviron 1703 (producer of the film *Serenity*), LLC, Aviron 1802, LLC, and Aviron 1803, LLC;

    b. Temerity owns 100% of the membership interests of Aviron Licensing, LLC;

    c. Temerity owns 100% of the membership interests of Aviron Development, LLC;

    d. Temerity owns 100% of the membership interests of GroupM Media Services, LLC; and

    e. Temerity owns 90% of the membership interests of Aviron Group, LLC, which owns interests in Aviron Pictures, LLC, Aviron Releasing, LLC, Aviron Capital, LLC, which itself owns interests in MAA Releasing, LLC, Aviron 1601, LLC Aviron 1701, LLC, Aviron 1702, LLC, Aviron 1704, LLC, Aviron 1705, LLC, Aviron 1706, LLC, and Aviron 1801, LLC. Aviron Pictures, LLC and Aviron Capital, LLC and its subsidiaries commenced chapter 7 cases. The Aviron 1601, LLC case has been dismissed but the cases of the other chapter 7 debtors (the "**Bankrupt Subsidiaries**") remain pending.

WHEREAS, in addition to the foregoing, Temerity owns that certain real property located at 9135 Hazen Drive, Beverly Hills, California (the "**Property**"), which Temerity acquired on or about August 28, 2017;

WHEREAS, the Property was thereafter encumbered by a Deed of Trust (the "**Cairn Trust Deed**") granted to Cairn, which extended a loan to Temerity for up to $22,400,000 (the "**Loan**");

WHEREAS, the Loan is also secured by a security interest (the "**Security Interest**") against collateral other than the Property ("**Other Collateral**"), including the *Collateral* as defined in the *Credit, Security, Guaranty and Pledge Agreement* (the "**Credit Agreement**") among Aviron 1703, LLC, "*the Other Credit Parties Referred to Herein as Credit Parties*," and Cairn dated as of October 1, 2018;

WHEREAS, Cairn entered into the Credit Agreement and a *Promissory Note*, dated October 1, 2018 (the "**Note**") with Aviron 1703, LLC (the "**Borrower**") and the other Credit Parties (as defined in the Credit Agreement), pursuant to which Lender agreed to loan $22,400,000 to Borrower (the "**Loan**"). The Credit Parties' obligations under the Credit Agreement and the Note are secured by the Pledged Collateral (as such term is defined in the Credit Agreement).

WHEREAS, Cairn entered into a *Guaranty Agreement,* dated October 1, 2018, with Temerity, pursuant to which Temerity irrevocably and unconditionally guaranteed the full and punctual payment of the Loan (the "**Guaranty**"). The Guaranty is secured by a *Deed of Trust and Assignment of Rents, Fixture Filing, Security Agreement and Environmental Indemnity*, dated as of October 8, 2018, which encumbers the Property (the "**Cairn Trust Deed**").

WHEREAS, Cairn alleges that Temerity subsequently defaulted on its obligations pursuant to the Guaranty, and currently owes Cairn $18,735,219.62 as of September 30, 2021 plus additional attorneys' fees, interest and other accruals and charges (the "**Cairn Claim**");

WHEREAS, Temerity disputes that it defaulted on its obligations pursuant to the Guaranty and disputes the amount of the Cairn Claim, but Temerity agrees (without any admission to any of the defaults alleged), for purposes of all matters relevant to or in connection with this Agreement, the Consent Order, and any and all transactions contemplated by either, that Temerity shall be deemed to owe Cairn not less than the Cairn Claim (without any alleged counterclaim or offset);

WHEREAS, on or about June 23, 2020, William Sadleir (the "**Defendant**"), was charged by the Department of Justice ("**DOJ**") in a three-count Indictment, 20 Cr. 320 (PAE) (the "**Indictment**"), with wire fraud in connection with a scheme referred to as the "Advertising Scheme" in violation of Title 18, United States Code, Section 1343 (Count One); wire fraud in connection with a scheme referred to as the "UCC Scheme," in violation of Title 18, United States Code, Section 1343 (Count Two); and aggravated identity theft in connection with the UCC Scheme, in violation of Title 18 United States Code, Section 1028A (Count Three);

WHEREAS, the Indictment included a forfeiture allegation with respect to Counts One and Two, seeking forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(l)(C) and Title 28 United States Code, Section 2461(c), of all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses charged in Counts One and Two of the Indictment, including but not limited to, a sum of money representing the amount of proceeds traceable to the commission of the offenses charged in Counts One and Two of the Indictment, and, inter alia, the Property;

WHEREAS, BlackRock Multi Sector Income Trust ("**BlackRock**") alleges it is the victim of the fraud schemes charged in Counts One through Three of the Indictment;

2

WHEREAS, on or about November 30, 2020, the United States District Court for the Southern District of New York (the "**District Court**") entered, *ex parte*, a Post Indictment Restraining Order (the "**Restraining Order**"), ordering that the Defendant, and all attorneys, agents, and employees, and anyone acting on his behalf, and all persons or entities in active concert or participation with any of the above, including but not limited to Temerity Trust and all persons or entities having actual knowledge of the Restraining Order must not, directly or indirectly, transfer, sell, assign, pledge, hypothecate, encumber, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, hypothecated, encumbered, disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of property or other interests belonging to, or owed to, or controlled in whole or in part by the Defendant, including but not limited to all of the Defendant's right, title, and interest in the Property;

WHEREAS, based on the Restraining Order, Temerity has been unable to market and sell the Property in the best interest of its estate and all creditors;

WHEREAS, in addition to the Restraining Order, Temerity and Cairn have engaged in protracted litigation pursuant to which, *inter alia*, Cairn sought to obtain relief from stay to foreclose on the Property and, otherwise, to dismiss Temerity's bankruptcy case;

WHEREAS, in order to effectuate a sale of the Property, the Parties have agreed to enter into that certain *Consent Order of Interlocutory Sale of Real Property* annexed hereto as **Exhibit A** (the "**Consent Order**"), which is acceptable to the Parties in form and substance and incorporated herein to the extent that it imposes obligations on or creates rights for the benefit of the parties hereto;

WHEREAS, Temerity and Cairn have engaged in good-faith settlement discussions to resolve their disputes with respect to the bankruptcy case, the Property and Cairn's claims against the Debtor; and

WHEREAS, based on such good-faith negotiations, Temerity and Cairn have reached an agreement that they seek to memorialize pursuant to this Agreement and seek approval from the Bankruptcy Court.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between (a) Temerity and its subsidiaries other than the Bankrupt Subsidiaries and (b) Cairn:

1.      <u>Recitals</u>:  The Parties acknowledge the "WHEREAS" clauses in the preceding paragraphs are incorporated herein as contractual terms to this Agreement.

2.      <u>Bankruptcy Court Approval; Effective Date; Termination</u>:  Temerity's entry into this Agreement is subject to, and becomes effective and binding on Temerity and Cairn upon, the Bankruptcy Court's approval of this Agreement, the Consent Order and an Order in the form annexed hereto as **Exhibit B** (the "**Sale Procedures Order**") governing the process governing the sale of the Property (the "**Effective Date**").  Temerity must use its best efforts to obtain approval

of this Agreement and must file a motion seeking the Bankruptcy Court's approval of this Agreement within five (5) days after the later of (a) its Execution Date and (b) the execution of the Consent Order. If the Effective Date does not occur within sixty (60) days after the execution hereof, then (x) this Agreement (other than this paragraph) terminates and is void; (y) all of the statements, concessions, consents, and agreements reflected in this Agreement (other than this paragraph) become void; and (z) the Parties may not use or rely on any such statement, concession, consent, or agreement reflected in this Agreement in any public statement or litigation.

3.    <u>Required Approvals</u>:  This agreement is subject in all respects to the approval of the Consent Order by (i) the DOJ (and Blackrock to the extent necessary) and (ii) the District Court no later than thirty (30) days after the DOJ has approved the Consent Order (the "**District Court Condition**").  If either of such approvals are not timely received, this agreement shall be null and void.  A breach of the Consent Order by a Party constitutes a breach of this Agreement by that Party and a breach of this Agreement by a Party constitutes a breach of that Party's obligations under the Consent Order.

4.    <u>Real Estate Broker</u>:  Upon execution of this Agreement and consent of the DOJ, Temerity, in accordance with the Consent Order, must promptly file (but in no event later than five (5) days hereafter) with the Bankruptcy Court an application to employ the Altman Brothers (www.thealtmanbrothers.com) to market and sell the Property.  Temerity, William K. Sadler, and Hanan Kadadu (the "**Temerity Parties**") represent and warrant that (a) except for information previously disclosed to Cairn, no real estate agent or broker has been retained to sell the Property, (2) except for information previously disclosed to Cairn, the Temerity Parties have no commercial arrangements with any brokers, agents, or representatives in relation to the renting, sale, or marketing of the Property, and (3) the Temerity Parties have no agreement, understanding, or any other kind of arrangement under which any real estate agent or broker will share any compensation or other consideration with one or more of the Temerity Parties.

5.    <u>Sale of Property</u>:  No later than five (5) days after execution of this Agreement and satisfaction of the District Court Condition, Temerity must file its motion, after consultation with the real estate brokers and Cairn, for approval of the Consent Order, this Agreement, and the Sale Procedures Order and for approval of the sale of the Property in accordance with the Consent Order and this Agreement (the "**Bankruptcy Sale Order**") under Section 363 of the Bankruptcy Code (the "**Section 363 Sale**").  The Temerity Parties each covenant that they will comply with the Sale Procedures Order.

6.    <u>Priority and Satisfaction of Cairn Trust Deed</u>:  The Cairn Deed of Trust remains senior in all respects to any distributions, obligations, and payments from the Property or proceeds of the Property under Section 7(b) and Section 8, until Cairn (or one or more of its assignees or designees) receives good and marketable title to the Property or the indefeasible payment of the proceeds of the sale of the Property in accordance with this Agreement and the Consent Order (the "**Closing Transfer/Payment**"), when the Cairn Trust Deed shall be deemed to be satisfied in full and of no further force or effect and the Cairn Trust Deed is, and is deemed to be, extinguished and satisfied, provided that Cairn shall retain its security interest in the Temerity Incentive Payment as proceeds of its collateral (the Property) until Temerity uses the Temerity Incentive Payment provided in Section 8 and any surplus is returned to Cairn in accordance with Section 8.

7.    <u>Distribution of Sale Proceeds</u>:  The proceeds of the Section 363 Sale (except as a result of a credit bid complying with the terms of the Consent Order) shall be deposited immediately into an interest-bearing escrow account acceptable to Temerity Trust, Cairn, and the USAO-SDNY, and shall be distributed within (3) business days of closing in the following priority: (a) first, to pay outstanding real property taxes; (b) second, to pay all reasonable and documented costs of escrow and sale, including real estate sales commissions authorized hereunder and applicable fees triggered by the sale of the Property, including any fees owed to a stalking horse, and any reasonable credits against the sale price requested by the buyer(s), in each case subject to Cairn's approval, which will not be unreasonably withheld; (c) third, to pay the Cairn Debt (the "**Cairn Payment**") as set forth below; and (d) fourth, to the extent funds remain after all amounts are paid in items (a)-(c) above, those funds shall be treated as substitute *res* for the Property (the "**Substitute Res**") in the pending criminal action and shall remain in escrow pending the resolution of the criminal matter and further order of the Bankruptcy Court, with all claims and defenses applicable to the Property, including any other action that may be brought by the Office for forfeiture of the Property or claims by third parties, to apply instead to the Substitute Res.

8.    <u>Payments</u>:

(a)    Temerity shall receive $400,000 (i) from the Cairn Payment in the event of a sale to a third party or (ii) from Cairn in the conditions set forth on **Exhibit C**, payable as set forth below (the "**Temerity Incentive Payment**")

(b)    All but the Temerity Incentive Payment must be paid directly to Cairn from the escrow.

(c)    The Temerity Incentive Payment shall be transferred directly from escrow to a trust account at Glenn, Agre, Bergman & Fuentes LLP ("**GABF**"). Upon receipt of a written direction by Temerity, GABF shall disburse such funds to Levene, Neale, Bender, Yoo & Golubchik L.L.P.'s ("**LNBYG**") trust account to be utilized for all allowed Chapter 11 administrative claims (anticipated to be claims of the bankruptcy clerk, the United States Trustee, and LNBYG), allowed priority tax claims, and allowed claims of general unsecured creditors, in each case other than any allowed claims held by any insiders, affiliates or their respective assignees or successors in interest, and the deemed allowed general unsecured claim of Jonathan & Beverly Neville in the amount of $90,000 ("**Allowed Claims and Expenses**"). After Temerity's payment of the Allowed Claims and Expenses, LNBYG must promptly return any remaining funds to Cairn.

(d)    Upon Cairn's receipt of the Closing Transfer/Payment (i.e., the Cairn Payment minus the Temerity Incentive Payment, if any, transferred to LNBYG's trust account for use by Temerity as set forth above), any revenue or other proceeds of any nature, including Collateral Proceeds (as defined in the Credit Agreement) generated by, derived from, or otherwise arising from the Other Collateral, including the film "Serenity" and all related film rights to whomever payable (collectively, the "**Serenity Revenue**"), but only to the extent that the Serenity Revenue becomes payable or is paid during the time period beginning on and after but not before the closing of the sale of the Property in accordance with

this Agreement and the Consent Order (the "**Sale Closing**"), shall be treated, paid and transferred as follows:

(i)        if a sale of the Property closes at a price at or above $14,125,000.00 (the "**Reserve Price**") on or before 150 days after the Sale Period commences, 100% to Temerity or its designee and (a) Cairn will no longer have any right to a share of the Serenity Revenue and will turn over any such Serenity Revenue payable or paid to Cairn on or after the Sale Closing to Temerity or its designee, (b) Cairn will assign, and by this Agreement is deemed to assign as of the Sale Closing, the Cairn Claim and Cairn Security Interest to Temerity or its designee (as is and where is, without representations or warranties, and at Temerity's sole cost and expense), and (c) Temerity or its designee will be subrogated to Cairn's rights and interests under the Cairn Claim and the Cairn Security Interest.

(ii)        if a sale of the Property closes at or above the Reserve Price during the period starting 151 days after the Sale Period commences and ending 60 days thereafter (both inclusive), 75% to Temerity or its designee free and clear of the Cairn Claim and the Cairn Security Interest and 25% to Cairn until Cairn receives in immediately available funds the lesser of (x) $250,000 and (y) 98% of the Cairn Claim from all sources (the "**Minimum Amount**").

(iii)        if a sale closes below the Reserve Price within 210 days after the Sale Period commences, 25% to Temerity or its designee and 75% to Cairn until Cairn receives the Minimum Amount in immediately available funds.

(iv)        100% to Cairn otherwise, including if Cairn acquires the Property through a credit bid.

(e)        With respect to subsection 8(d)(ii)-(iii) above, (i) Cairn will share the Serenity Revenue as so indicated with Temerity or its designee until Cairn receives in immediately available funds the Minimum Amount and until then Temerity or its designee shall be beneficiaries of the Cairn Claim and the Cairn Security Interest to the extent of its share and Cairn will have no right to the share of Temerity or its designee, and (ii) upon receipt of the Minimum Amount as so indicated, (A) Cairn will no longer have any right to a share of the Serenity Revenue and will turn over any such Serenity Revenue payable or paid to Cairn on or after the Sale Closing to Temerity or its designee, (B) Cairn will assign, and by this Agreement is deemed to assign as of the Sale Closing, the Cairn Claim and Cairn Security Interest to Temerity or its designee (as is and where is, without representations or warranties, and at Temerity's sole cost and expense), and (C) Temerity or its designee will be subrogated to Cairn's rights and interests under the Cairn Claim and the Cairn Security Interest.

(f)    If Cairn acquires the Property through a credit bid (and the conditions in Exhibit C do not occur), Cairn will fund payment of all allowed Chapter 11 administrative expense claims (other than those held by any insiders) up to $150,000.

(g)    In consideration of the execution of this Agreement by Hanan Kadadu and William Sadleir (the "**Residents**") and their consent to the Sale Procedures Order (including that they permanently vacate the Property and remove all of their personal property therefrom in accordance with the Sale Procedures Order), Cairn shall pay up to $15,000.00 in moving expenses to Hanan Kadadu within five (5) days after the Residents permanently vacate the Property (the "**Kadadu Payment**").

9.    Dismissal of Case:  Temerity may in its sole discretion seek, and Cairn must not oppose, a structured dismissal of the Bankruptcy Case or confirmation of a plan of reorganization that expressly confirms and preserves the validity, enforceability, and effect of this Agreement, the Consent Order, and any order approving the sale of the Property in accordance with those documents.

10.    Release of Cairn by Temerity:  Upon Cairn's receipt of the Closing Transfer/Payment, the Temerity Parties on behalf of themselves and their respective affiliates, related entities, successors, representatives, and assigns (collectively, the "**Temerity Releasors**"), completely release and forever discharge Cairn and all of its related business entities (including, but not limited to, its respective parent, member, investment manager, affiliated and subsidiary corporations, firms, partnerships, and joint ventures), and all of their respective officers, directors, trustees, members, boards, employees, servants, agents, attorneys, heirs, executors, beneficiaries, administrators, predecessors, successors, and assigns (collectively, the "**Cairn Releasees**"), whether acting as agents or in their individual capacities, from all past, present, and future claims, demands, obligations, actions, causes of action, wrongful death or bodily or personal injury claims, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, liens specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, costs, expenses, losses of services or compensation, judgments, extents, executions, and any other assertion of liability or request for relief of any kind whatsoever, whether known or unknown, based upon any legal or equitable theory, whether contractual, common-law, statutory (federal, state, or local), or otherwise, whether arising under domestic or foreign laws, and whether asserted in the United States of America or elsewhere, which any Temerity Releasor hereafter can, will, or may now have, or may hereafter accrue or otherwise be acquired, against any Cairn Releasee, upon, or by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter, cause, or thing whatsoever, from the beginning of the world to the Execution Date, subject to the occurrence of the Effective Date and the District Court Condition (the "**Temerity Released Claims**"), provided that, the Temerity Releasors expressly do not release the Cairn Releasees from any obligations arising under or preserved by this Agreement, including the Cairn Claim and Cairn Security Interest in accordance with and as modified by Section 8 above, or any claims that may arise by virtue of the breach of this Agreement (including the Cairn Claim and Cairn Security Interest in accordance with and as modified by Section 8 above), the Bankruptcy Sale Order, or the Consent Order.

11.    <u>Release of the Temerity Parties by Cairn</u>:  Upon Cairn's receipt of the Closing Transfer/Payment, Cairn, on behalf of itself, its affiliates, related entities, successors, representatives, and assigns (collectively, the "**Cairn Releasors**"), completely releases and forever discharges the Temerity Parties and all of their related business entities (including, but not limited to, their parent, member, affiliated and subsidiary corporations, firms, partnerships, and joint ventures), and all of their officers, directors, trustees, members, boards, employees, servants, agents, attorneys, heirs, executors, beneficiaries, administrators, predecessors, successors, and assigns (collectively, the "**Temerity Releasees**"), whether acting as agents or in their individual capacities, from all past, present, and future claims, demands, obligations, actions, causes of action, wrongful death or bodily or personal injury claims, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, liens specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, costs, expenses, losses of services or compensation, judgments, extents, executions, and any other assertion of liability or request for relief of any kind whatsoever, whether known or unknown, based upon any legal or equitable theory, whether contractual, common-law, statutory (federal, state or local), or otherwise, whether arising under domestic or foreign laws, and whether asserted in the United States of America or elsewhere, which any Cairn Releasor hereafter can, will, or may now have, or may hereafter accrue or otherwise be acquired, against any Temerity Releasee, upon, or by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter, cause, or thing whatsoever, from the beginning of the world to the Execution Date, subject to the occurrence of the Effective Date and the District Court Condition (the "**Cairn Released Claims**," and collectively with the Temerity Released Claims, the "**Released Claims**"), provided, however, that nothing in this Section 11 shall be construed to waive, release, or have any effect whatsoever on any claims that the Cairn Releasors may have: (i) under the Credit Agreement or other Fundamental Documents against any of the Credit Parties other than Temerity, including but not limited to the right to receive all or any portion of the Serenity Revenue as set forth in Section 8(d) herein, (ii) arising out of or relating to this Agreement or the enforcement of the Parties' obligations hereunder; (iii) arising after the date the Parties execute this Agreement; (iv) arising out of or relating to the Consent Order or any of the transactions contemplated thereby or actions necessary thereunder (v) arising under the Deed of Trust, or (vi) that Cairn may assert in the District Court asset forfeiture proceeding to the extent required to preserve and defend its interest in the Property or any proceeds thereof.

12.    <u>Unknown Claims</u>:  Unknown claims means any Released Claims pursuant to the above paragraphs of this Agreement, as defined herein, that the Parties do not know or suspect to exist in their favor at the time of giving the releases in this Agreement that if known by them, might have affected their settlement and release in this Agreement.  With respect to any and all Released Claims in the above paragraphs of this Agreement, the Parties expressly waive or are deemed to have waived, the provisions, rights and benefits of California Civil Code section 1542 (to the extent it applies herein), which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

8

The Parties expressly waive, and are deemed to have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code section 1542. The Parties may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Parties expressly have and are deemed to have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and are deemed to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

13.    No Admission of Liability: The Parties acknowledge that this Agreement has been executed in connection with the compromise and settlement of disputed claims. The Agreement and the actions taken pursuant thereto do not constitute an acknowledgement or admission on the part of any Party of liability for any matter or precedent upon which liability may assessed or the merits of any defenses asserted.

14.    No Transfer or Assignment: The Parties represent and warrant that each has not assigned, transferred, or purported to assign or transfer, to any person or entity, any claim referenced herein or any portion thereof or interest therein.

15.    Authority: Each Party to this Agreement represents and warrants that it has the power and authority, and the legal right, to make, deliver, and perform under this Agreement, and have taken all necessary actions to authorize execution, delivery, and performance under this Agreement, subject to approval of this Agreement by the Bankruptcy Court. This Agreement constitutes a legal, valid, and binding obligation of the Parties, enforceable against them in accordance with its terms.

16.    Advice of Counsel/No Reliance:   Each Party has carefully read and reviewed this Agreement and understands it fully. Each Party has made such investigation under law and facts pertaining to this Agreement, as it deems necessary. Each Party has been represented by competent counsel of its own choosing who has provided such party any and all advice on this settlement and this Agreement as it deems necessary. This Agreement has been freely signed by each Party. Each Party specifically confirms that it does not rely on any statement, representation, legal opinion, or promise of any other party or person, except as expressly stated in this Agreement.

17.    Binding Effect:  This Agreement is binding upon and inure to the benefit of the respective successors and assigns of the Parties.

18.    Third-Party Beneficiaries:  The only Parties with any rights to enforce the terms of this Agreement are those Parties specifically identified herein.   There are no third-party beneficiaries of this Agreement.

19.    <u>Attorneys' Fees</u>: Each Party must bear its own attorneys' fees and costs in connection with the preparation and execution of this Agreement and the transactions contemplated hereunder.

20.    <u>Modification</u>: This Agreement may not be amended or modified except by a writing signed by each of the Parties affected by such amendment or modification.

21.    <u>Applicable Law</u>: This Agreement is governed by and construed in accordance with the laws of the State of California, without regard to its conflict of laws provisions.

22.    <u>Exclusive Jurisdiction</u>: The Parties agree that the Bankruptcy Court has exclusive jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement, or any provision thereof, and the Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court for any such action. In the event the Bankruptcy Case is closed by a final decree and not reopened, the Parties agree that any dispute arising out of or relating to this Agreement, or any provision thereof, may be brought in the United States District Court for the Central District of California. Each Party hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out or relating to this Agreement, and as otherwise provided in the Fundamental Documents.

23.    <u>No Waiver</u>: The failure to strictly enforce any or all of the terms of this Agreement by any of the Parties may not be construed as and must not result in a waiver of that Party's right to strictly enforce any and all of the terms and conditions of this Agreement, despite that Party's prior failure to strictly enforce the terms and conditions of this Agreement.

24.    <u>Construction, Severability</u>: The language used in this Agreement will be deemed the language chosen by the Parties to express their mutual intent, and no rule of strict construction will be applied against any Party, nor will any rule of construction that favors a non-draftsman be applied. Unless specifically otherwise provided or the context otherwise requires, the singular includes the plural and the plural the singular; the word "or" is deemed to include "and/or"; the words "including", "includes", and "include" are deemed to be followed by the words "without limitation"; and references to sections are to those of this Agreement. If any provision of this Agreement is held to be void or unenforceable, in whole or in part, (a) such holding does not affect the validity and enforceability of the remainder of this Agreement, including any other provision or paragraph and (b) the Parties agree to attempt in good faith to reform such void or unenforceable provision to the extent necessary to render such provision enforceable and to carry out its original intent.

25.    <u>Headings</u>: The heading in each paragraph herein are for convenience of reference only and have no legal effect in the interpretation of the terms hereof.

26.    <u>Counterparts</u>: This Agreement may be executed simultaneously in two or more counterparts, each of which is deemed an original, but all of which together constitute one and the same instrument.

27.    <u>Full and Complete Agreement</u>: This Agreement contains the full and complete agreement of the parties hereto and all prior negotiations and agreements pertaining to the subject

hereof are merged into the Agreement.  Each party expressly disclaims reliance on any facts, promises, undertakings, or representations made by any other party or their agents or attorneys prior to the execution of this Agreement.

28.    Notices: All notices, consents, waivers, and other communications under this Agreement must be in writing and are deemed to have been duly given when: (a) delivered by hand (with written confirmation of receipt) or (b) received by the addressee, if sent by email, in each case as follows (subject to the right of each Party to change this notice designation by written notice to the other):

| | |
|---|---|
| *If to Temerity:* | *If to Cairn:* |
| Temerity Trust Management, LLC | Cairn Capital Investment Funds |
| 311 N. Robertson Blvd, Suite 811 | ICAV |
| Beverly Hills, CA  90211 | c/o Cairn Capital Limited |
| Attention:  Hanan Kadadu | 62Buckingham Gate |
| yarra26@aol.com | London SW1E 6AJ |
| | United Kingdom |
| | Attention: Cairn Legal Group / |
| | Private Credit |
| | |
| | Email: |
| | Cairn_Legal@cairncapital.com    and |
| | Private.Credit.Info@cairncapital.com |
| | |
| *with a copy to:* | *with a copy to:* |
| Kurt Ramlo | Andrew K. Glenn |
| Levene, Neale, Bender, Yoo & Golubchik L.L.P. | Glenn Agre Bergman & Fuentes LLP |
| 2818 La Cienega Avenue | 55 Hudson Yards |
| Los Angeles, CA  90034 | New York, New York 10001 |
| kr@lnbyg.com | aglenn@glennagre.com |

IN WITNESS WHEREOF, the Parties have executed this Agreement as of December 17, 2021.

TEMERITY TRUST MANAGEMENT, LLC

By *Hanan Kadadu Sadleir*
Name: Hanan Kadadu
Title:   Manager

11

For and on behalf of
CAIRN CAPITAL INVESTMENT FUNDS
ICAV acting solely in respect of its sub-fund,
CAIRN CAPSTONE SPECIAL
OPPORTUNITIES FUND by Cairn Capital
Limited as investment manager


By:_____

Name:

Title:
                    Shaun Wood
                    Chief Legal Officer

HANAN KADADU


_____


**As to Sections 2 through 28 only and excluding the Recitals and Section 1 only**:

WILLIAM K. SADLEIR



_____

12

For and on behalf of
CAIRN CAPITAL INVESTMENT FUNDS
ICAV acting solely in respect of its sub-fund,
CAIRN CAPSTONE SPECIAL
OPPORTUNITIES FUND by Cairn Capital
Limited as investment manager


By:_____
Name:
Title:


HANAN KADADU


*Hanan Kadadu Sadleir*


**As to Sections 2 through 28 only and excluding the Recitals and Section 1 only**:

WILLIAM K. SADLEIR


*William F. Sadleir*


12

# EXHIBIT A

(form of *Consent Order of Interlocutory Sale of Real Property*)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

UNITED STATES OF AMERICA

  -v.-

WILLIAM SADLEIR,

          Defendant.

CONSENT ORDER OF
INTERLOCUTORY
SALE OF REAL PROPERTY

20 Cr. 320 (PAE)

---------------------------------------------------------- x

       IT IS HEREBY STIPULATED AND AGREED THAT, by and between the United States, United States of America, by its attorney Damian Williams, United States Attorney, Assistant United States Attorney, Jared Lenow, of counsel; Kurt Ramlo, Esq., counsel for Temerity Trust Management, LLC ("Temerity"); Kyle R. Freeny, Esq., counsel for Cairn Capital Investment Funds ICAV, for its sub-fund Cairn Capstone Special Opportunities Fund ("Cairn"); the Defendant, WILLIAM SADLEIR and his counsel, Matthew Lane Schwartz, Esq., that:

       1.     The real property located at 9135 Hazen Drive, Beverly Hills, California (the "Subject Property"), shall be sold, subject to the approval of the Bankruptcy Court presiding over the chapter 11 case of *In re Temerity Trust Management LLC*, 20 bk. 15015 (Bankr. C.D. Cal), in a commercially reasonable manner and consistent with the terms detailed below.

       2.     Within five (5) business days after entry of this Consent Order, Temerity and Cairn will seek approval from the Bankruptcy Court, pursuant to Title 11, United States Code, Section 363 and Federal Rule of Bankruptcy Procedure 9019, for (i) a settlement ("9019 Settlement") and (ii) to market and sell the Subject Property pursuant to 11 U.S.C. § 363(b)(1), in accordance with the details below and subject to final approval by the Bankruptcy Court ("Section

1

363 Sale"). Cairn shall be provided with an allowed claim in the full amount of Temerity's debt to Cairn, which is secured by its first-priority liens on the property of the Debtor, including the Subject Property, set forth in the Deed of Trust (the "Cairn Allowed Claim"), which funds Cairn may dispose of as it sees fit. For purposes of this Order, Temerity's debt to Cairn shall be deemed to be not less than $17,724,407 as of June 23, 2021, plus fees and expenses, and any interest accruing thereafter (the "Cairn Debt"). The Cairn Allowed Claim shall be indefeasible and not be subject to challenge by the Debtor, the estate or any other party in interest on any grounds, including, but not limited to challenges related to the amount, validity and priority.

3.      If the Bankruptcy Court does not approve the 9019 Settlement or the Section 363 Sale, the Post Indictment Restraining Order entered November 30, 2020 (the "Restraining Order") shall not limit any right that Cairn may have to seek to foreclose on or otherwise enforce its rights as to the Subject Property, and for Cairn to subsequently sell the Subject Property in a commercially reasonable manner, including, but not limited to, a foreclosure trustee's sale pursuant to statutorily prescribed procedures. The Parties agree not to oppose the lifting of the automatic stay caused by the Bankruptcy Petition to permit Cairn (or any third party acting on its behalf) to sell the Subject Property in a judicial or non-judicial foreclosure proceeding.

4.      The United States Attorney's Office for the Southern District of New York ("USAO-SDNY") will provide written assurance, as necessary, to the Bankruptcy Court, seller's agent, the title company providing title insurance to a purchaser, or any lender providing financing to a purchaser, and any other person or entity that the Parties reasonably determine needs such assurance, that the Subject Property may be sold, in compliance with this Consent Order, free and clear of the USAO-SDNY's pending forfeiture claim, and will terminate the Lis Pendens, filed by the United States in Recorder's Office, Los Angeles County on October 15, 2020 (File No.

2

20201278959), upon approval by the Bankruptcy Court of the sales process.  Further, the Restraining Order is herewith modified to permit the sale of the Subject Property in conformity with this Consent Order.

5.    The marketing process for the Section 363 Sale shall consist of the terms and conditions set forth herein, subject to the approval of the Bankruptcy Court.  The Subject Property will be marketed by the Altman Brothers (www.thealtmanbrothers.com) or a comparable licensed real estate agent specializing in high-end Beverly Hills real estate, subject to the approval of such retention by the Bankruptcy Court and Cairn.  Total commission will be no more than 5%, to be allocated and paid to seller's agent and buyer's agent.

6.    The marketing of the Subject Property will begin on or before five (5) business days after the grant of Bankruptcy Court of approval pursuant to Paragraph 2 ("Start Date") and the Bankruptcy Court's approval of Temerity's retention of a real estate agent pursuant to Paragraph 5, and it will last for the period of time set by the Bankruptcy Court ("Sale Period").

7.    All bidders, in connection with delivery of a written bid in form and substance customary and appropriate for transactions of this type and delivered prior to the earlier of the expiry of the Sales Period and Temerity's acceptance of a purchase offer, which acceptance is subject to Cairn's approval, which will not be unreasonably withheld, must provide proof of immediately available funds to finance the purchase of the Subject Property and shall provide a deposit into an escrow (with the escrow company chosen in accordance with Paragraph 12 below) of at least 5% of the bid amount as a condition of being a qualifying bid.  Where doing so may maximize the expected sales price, a stalking horse bidder may be utilized.

8.    The minimum bid for the Subject Property (the "Reserve Price") shall be an amount less than the Cairn Debt, to be determined by the Bankruptcy Court.  If no qualifying bids

meeting the Reserve Price are received within the Sales Period pursuant to Paragraph 6 above, upon or after the expiry of the Sales Period, Cairn (or one or more of its designees) shall have the right to extend the Sales Period in a manner acceptable to the Bankruptcy Court, credit bid Cairn's debt for the Subject Property for an amount to be determined by the Bankruptcy Court, without the need for an auction, or to waive the Reserve Price and accept a bid below the amount of the Reserve Price. Cairn shall make its election between a credit bid and waiver of the Reserve Price as soon as practicable after expiry of the Sales Period. Cairn will not have the ability to credit bid if one or more qualifying bids meeting the Reserve Price are received within the Sales Period and the transaction contemplated by such bid is consummated in accordance with the terms of this Consent Order.

9.      If there are two or more qualifying bids submitted in accordance with Paragraphs 7 and 8, an auction shall be conducted for the sale of the Subject Property within 10 days of the close of the Sales Period (the "Auction Date").

10.     If during the Sales Period any prospective buyer presents a qualifying bid for a private sale otherwise on terms and conditions satisfactory to both Temerity and Cairn, then upon the consent of both Temerity and Cairn in each of its sole discretion, such sale shall be permitted (but subject to the approval of the Bankruptcy Court and otherwise complying with the terms hereof).

11.     As soon as possible following the selection of a buyer pursuant to the foregoing procedures, the parties will seek a Bankruptcy Court order approving the sale of the Subject Property free and clear of all liens, claims, interests, and encumbrances, including any rights of tenancy or occupancy pursuant to 11 U.S.C. § 363(b)(1). The closing shall take place as soon as practicable, within the time period set by the Bankruptcy Court.

4

12.     The proceeds of the Section 363 Sale (except as a result of a credit bid complying with the terms of this Consent Order) shall be deposited into an interest-bearing escrow account acceptable to Temerity, Cairn and the USAO-SDNY, and shall be distributed within (3) business days of closing in the following priority: (1) first, to pay outstanding real property taxes; (2) second, to pay all reasonable and documented costs of escrow and sale, including real estate sales commissions authorized hereunder and applicable fees triggered by the sale of the Subject Property, including any fees owed to a stalking horse, and any reasonable credits against the sale price requested by the buyer(s), in each case subject to Cairn's approval, which will not be unreasonably withheld; (3) third, to pay the Cairn Debt; and (4) fourth, to the extent funds remain after all amounts are paid in items (1)-(3) above, those funds shall be treated as substitute *res* for the Subject Property (the "Substitute Res") in the pending criminal action and shall remain in escrow pending the resolution of the criminal matter and further order of the Bankruptcy Court, with all claims and defenses applicable to the Subject Property, including any other action that may be brought by the Office for forfeiture of the Subject Property or claims by third parties, to apply instead to the Substitute Res.

13.     Upon such occasion that Cairn (and/or any of its designees or affiliates) shall take title to the property as permitted by this Consent Order (by credit bid or otherwise), Cairn (or its relevant designee(s) and/or affiliate(s)) shall have no continuing obligations pursuant to this Consent Order.

14.     Nothing in this Consent Order is intended to alter or otherwise affect any of the rights of Cairn, under the Deed of Trust, the Temerity Guaranty (as defined in the Deed of Trust), or related credit documents.

5

15.     This Consent Order may be executed in counterparts, each of which shall be deemed an original, and all of which, when taken together, shall be deemed the complete Consent Order.  Signature pages may be by fax or transmitted electronically, and such signatures shall be deemed to be valid originals.

16.     This Consent Order constitutes the complete agreement between the parties hereto concerning the Subject Property and may not be amended except by written consent thereof.

17.     The parties hereby waive all rights to appeal or to otherwise challenge or contest the validity of this Consent Order.

18.     Each party agrees to bear its costs and attorneys' fees, provided, however, that nothing herein shall affect, limit, or abrogate Temerity's or Cairn's rights to attorneys' fees under the loan Cairn extended for up to $22,400,000, guaranteed by Temerity, the associated Deed of Trust, and related credit documents.

19.     The Court shall retain jurisdiction in this matter to take additional action and enter further orders as necessary to implement and enforce this Consent Order authorizing the interlocutory sale of the Subject Property.

STIPULATED TO:

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
United States of America

By:   _____          _____

       Jared Lenow                                                      DATE
       Assistant United States Attorney
       One Saint Andrews Plaza
       New York, New York 10007
       (212) 637-1068

6

Temerity Trust Management, LLC

By: _____          1/10/22
     Kurt Ramlo                                 ‾‾‾‾‾‾‾‾‾‾‾
     Levene, Neale, Bender, Yoo & Golubchik L.L.P.      DATE
     2818 La Cienega Avenue
     Los Angeles, CA | 90034
     Tel: 310-229-1234
     *Attorney for Temerity Trust Management, LLC*

Cairn Capital Investment Funds ICAV, for its sub fund
Cairn Capstone Special Opportunities Fund

By: _____          _____
     Kyle R. Freeny, Esq.                            DATE
     Greenberg Traurig, LLP
     2101 L Street NW
     Washington, D.C. 20037
     Tel: (202) 331-3118
     *Attorney for Cairn Capital Investment Funds, ICAV*

WILLIAM SADLEIR
Defendant

By: _____          _____
     WILLIAM SADLEIR                                 DATE

By: _____          _____
     Matthew Lane Schwartz, Esq.                     DATE
     Boies Schiller, Flexner, LLP
     55 Hudson Yards
     New York, NY 10001
     Tel: (212) 446-2300
     mlschwartz@bsfllp.com
     *Attorney for Defendant*

So Ordered:

_____          _____
HONORABLE PAUL A. ENGELMAYER                       DATE
UNITED STATES DISTRICT JUDGE

7

Temerity Trust Management, LLC

By: _____              _____
    Kurt Ramlo                                                        DATE
    Levene, Neale, Bender, Yoo & Golubchik L.L.P.
    2818 La Cienega Avenue
    Los Angeles, CA | 90034
    Tel: 310-229-1234
    *Attorney for Temerity Trust Management, LLC*

Cairn Capital Investment Funds ICAV, for its sub fund
Cairn Capstone Special Opportunities Fund

By: _____              1/11/22
    Kyle R. Freeny, Esq.                                   DATE
    Greenberg Traurig, LLP
    2101 L Street NW
    Washington, D.C. 20037
    Tel: (202) 331-3118
    *Attorney for Cairn Capital Investment Funds, ICAV*

WILLIAM SADLEIR
Defendant

By: _____              _____
    WILLIAM SADLEIR                                 DATE

By: _____              _____
    Matthew Lane Schwartz, Esq.                   DATE
    Boies Schiller, Flexner, LLP
    55 Hudson Yards
    New York, NY 10001
    Tel: (212) 446-2300
    mlschwartz@bsfllp.com
    *Attorney for Defendant*

So Ordered:

_____              _____
HONORABLE PAUL A. ENGELMAYER                DATE
UNITED STATES DISTRICT JUDGE

Temerity Trust Management, LLC

By: _____          _____
     Kurt Ramlo                                                                      DATE
     Levene, Neale, Bender, Yoo & Golubchik L.L.P.
     2818 La Cienega Avenue
     Los Angeles, CA | 90034
     Tel: 310-229-1234
     *Attorney for Temerity Trust Management, LLC*

Cairn Capital Investment Funds ICAV, for its sub fund
Cairn Capstone Special Opportunities Fund

By: _____          _____
     Kyle R. Freeny, Esq.                                                         DATE
     Greenberg Traurig, LLP
     2101 L Street NW
     Washington, D.C. 20037
     Tel: (202) 331-3118
     *Attorney for Cairn Capital Investment Funds, ICAV*

     WILLIAM SADLEIR
     Defendant

By: _____          January 12, 2022
     WILLIAM SADLEIR                                                      DATE

By: _____          1/12/22
     Matthew Lane Schwartz, Esq.                                    DATE
     Boies Schiller, Flexner, LLP
     55 Hudson Yards
     New York, NY 10001
     Tel: (212) 446-2300
     mlschwartz@bsfllp.com
     *Attorney for Defendant*

So Ordered:

_____          _____
HONORABLE PAUL A. ENGELMAYER                DATE
UNITED STATES DISTRICT JUDGE

**EXHIBIT B**

(form of Sale Procedures Order)

David B. Golubchik (State Bar No. 185520)
Kurt Ramlo (State Bar No. 166856)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: KR@LNBYG.com

Attorneys for Temerity Trust Management, LLC,
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## (LOS ANGELES DIVISION)

| | |
|---|---|
| In re:<br><br>TEMERITY TRUST MANAGEMENT,<br>LLC, aka Temerity Management, LLC,<br><br>Debtor and Debtor in Possession. | Case No. 2:20-bk-15015-BR<br><br>Chapter 11<br><br>**Order Granting Debtor's Motion for Order:**<br><br>**(1) Approving Compromise with Cairn Capital;**<br>**(2) Approving Compromise with United States of America, BlackRock Multi-Section Fund, and Cairn Capital;**<br>**(3) Approving Related Marketing, Bidding, and Sale Procedures;**<br>**(4) Waiving 14-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and**<br>**(5) Providing Related Relief**<br><br>Date: _____,2021<br>Time: _____<br>Place: Courtroom 1668<br>         255 East Temple Street<br>         Los Angeles, California 9001 |

A hearing was held at the above-referenced date, time, and location for the Court to

consider the *Motion for Order (1) Approving Compromise with Cairn Capital; (2) Approving*

*Compromise with United States of America, BlackRock Multi-Sector Trust, and Cairn Capital;*

1

*(3) Approving Related Marketing, Bidding, and Sale Procedures; (4) Waiving 14-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (4) Providing Related Relief* (ECF ___, the "**Motion**") filed by Temerity Trust Management, LLC, aka Temerity Management, LLC, chapter 11 debtor and debtor in possession in the above-entitled bankruptcy case ("**Temerity**" and/or the "**Debtor**"), under to 11 U.S.C. §§ 105(a), 363(b), (f), and (m) of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "**FRBP**"), and any applicable Local Bankruptcy Rules (the "**LBR**").  Appearances were made as set forth on the record of the Court.

Upon consideration of (1) the Notice of Motion (ECF ___), (2) the Motion and the memorandum of points and authorities, declarations, and exhibits attached to, and in support of, the Motion (together, the "**Memorandum, Declarations, and Exhibits**"), (3) any oppositions to the Motion, (4) all other evidence duly admitted by the Court in connection with consideration of the foregoing, (5) the entire record in this case, and (6) the arguments and statements of counsel made at the hearing on the Motion,

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**[1]

A.      The findings and conclusions set forth in this order (the "**Order**") constitute the Court's findings of fact and conclusions of law pursuant to FRBP 7052, made applicable to this proceeding pursuant to FRBP 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      Under 28 U.S.C. §§ 157 and 1334, the Court has jurisdiction over (1) this matter, (2) the property of the Debtor's estate, including the residence and fixtures (including, but not limited to, the chandeliers) owned by the Debtor and located at 9135 Hazen Drive, Beverly Hills,

---

[1]  All findings of fact and conclusions of law announced by the Court at the hearing relating to the Motion and the matters addressed by this Order are hereby incorporated herein to the extent not inconsistent with this Order.

CA 90210 (the "**Real Property**"), (3) the Debtor's proposed entry into and performance of the (i) the *Consent Order of Interlocutory Sale of Real Property* (the "**Consent Order**") among the Debtor, the United States of America, BlackRock Multi-Sector Income Trust, and Cairn Capital Investment Funds ICAV, for its sub fund Cairn Capstone Special Opportunities Fund ("**Cairn**"), entered, or to be entered, in *United States v. Sadleir*, Case No. 20 Cr. 320, pending in the United States District Court for the Southern District of New York (the "**District Court**") and (ii) the *Settlement Agreement and General Release* (the "**Settlement Agreement**") between the Debtor and Cairn, and (4) the proposed marketing, bidding, and sale procedures set forth below (the "**Sale Procedures**").

D.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

E.    Venue of the Debtor's chapter 11 case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

F.    The statutory and other predicates for the relief sought in the Motion are (1) 11 U.S.C. §§ 105 and 363, (2) FRBP 2002, 6004, 9006, 9007, 9014, and 9019, and (3) any applicable LBRs.

G.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

H.    Notwithstanding FRBP 6004(h), and to any extent necessary under FRBP 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by FRBP 7054 and 9014, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and this Order shall be effective immediately upon entry.

I.    Notice of the Motion was provided, and a reasonable opportunity to object or be heard regarding relief requested by the Motion, was afforded to all interested persons and entities, including, without limitation: (1) the Office of the United States Trustee, (2) all of the Debtor's known creditors, and (3) all parties requesting special notice.

J.    As evidenced by the proofs of service filed with the Court, proper, timely, adequate, and sufficient notice of the Motion was provided in accordance with Sections 102(1),

3

105(a), and 363(b), FRBP 2002, 6004, 9006, 9007, and 9014, the applicable LBRs, and the procedural due process requirements of the United States Constitution.

1.    The Debtor's notice of the Motion was reasonably calculated to provide all interested parties with timely and proper notice of (1) the proposed compromises set forth in the Consent Order and the Settlement Agreement, (2) the proposed Sale Procedures, and (3) the hearing for the Court to approve the Consent Order, the Settlement Agreement, and the proposed Sale Procedures.

2.    The disclosures made by the Debtor concerning the Motion, the Consent Order, the Settlement Agreement, proposed Sale Procedures, and the concurrent marketing and sale of personal property (but excluding fixtures) located at the Real Property by the Debtor's principal and her spouse were sufficient, complete, and adequate.

3.    The following Sale Procedures are approved:

a.    The Debtor may market the Real Property for sale in accordance with the Consent Order and Settlement Agreement.

b.    The Real Property will be marketed by the Altman Brothers (www.thealtmanbrothers.com), subject to the approval of the terms of such retention by the Bankruptcy Court and Cairn (the "**Broker**").  Total commission will be no more than 5%, to be allocated and paid to the Broker and buyer's agent, provided, however, that no commission shall be payable if the Real Property is transferred to Cairn or one or more of its assignees or designees through a credit bid made in accordance with the Settlement Agreement.

c.    The marketing of the Real Property will begin as soon as practicable, but no later than the later of (i) five (5) business days after the entry of this Order and (ii) this Court's approval of the Debtor's retention of the Broker (the "**Start Deadline**"), and will last up to the later of (i) one hundred fifty (150) days after the Start Deadline and June 15, 2022 (the "**Sale Period**") except to the extent otherwise provided herein.  The Broker shall provide Cairn with (i) a list of all parties inquiring about the Real Property on a weekly

basis, (ii) copies of all proposals, indications of interest, offers and bids and (iii) a weekly telephonic update concerning the Broker's marketing efforts.

d.      William K. Sadleir and Hanan Kadadu (the "**Residents**") shall cooperate with the marketing of the Real Property.  Such cooperation shall include, but not be limited to, allowing showings during normal business hours and vacating the Real Property during all such showings, including any open house showings.  The Broker shall give the Residents reasonable notice of all such showings.  The Residents shall permanently vacate the Real Property and remove all of their personal property therefrom no later than the earlier of (i) five (5) days before the closing of the sale of the Real Property in conformance herewith (including a credit bid) and (ii) the first day upon which no qualifying bid meeting the Reserve Price is pending beginning June 15, 2022.

e.      All bidders, in connection with delivery of a written bid in form and substance customary and appropriate for transactions of this type and delivered prior to the earlier of the expiry of the Sale Period and the Debtor's acceptance of a purchase offer, which acceptance is subject to Cairn's approval, which will not be unreasonably withheld, must provide (i) proof of immediately available funds to finance the purchase of the Real Property and (ii) a deposit into an escrow account, with an escrow company acceptable to the Debtor, Cairn, and the United States (the "**Escrow Account**"), of at least 5% of the bid amount as a condition of being a qualifying bid.  Where doing so may maximize the expected sales price, a stalking horse bidder may be utilized.

f.      The minimum bid for the Real Property (the "**Reserve Price**") shall be the amount listed on **Exhibit 1** that has been filed under seal.  If no qualifying bids meeting the Reserve Price are received within the Sale Period pursuant to Subparagraph 4(d) above, upon or after the expiry of the Sale Period, Cairn (or one or more of its assignees or designees) shall have the right to (i) credit bid Cairn's debt without the need for an auction for the fair market value of the Real Property to be determined by the Court unless the Debtor and Cairn agree on the fair market value, (ii) waive the Reserve Price and accept a

bid below the Reserve Price or (iii) extend the Sale Period (and all applicable deadlines, including Cairn's right to credit bid) for up to one year without further order of the Court. Cairn shall make its election between options (i)-(iii) in this subparagraph as soon as practicable after expiry of the Sale Period.  Cairn will not have the ability to credit bid, if one or more qualifying bids meeting the Reserve Price are received within the Sale Period and the transaction contemplated by such bid is consummated in accordance with the terms of the Consent Order, the Settlement Agreement, and this Order.

g.      If there are two or more qualifying bids submitted in accordance with Subparagraphs 4(d)-(e), an auction shall be conducted for the sale of the Real Property within ten (10) days of the close of the Sale Period, subject to Subparagraph 5(g) below. In this instance, the Debtor must provide notice to the qualifying bidders and all parties in interest of the date, time, and location of the auction immediately after the expiry of the Sale Period, which notice must include the Initial Overbid Amount that is calculated by adding $100,000 to the purchase price stated in the highest qualifying bid received during the Sale Period.  The auction shall be conducted by the Court unless the Debtor and Cairn agree that the Debtor shall conduct the auction.

h.      To participate in any auction of the Real Property, each prospective buyer who did not submit a qualifying bid during the Sale Period (an "**Overbidder**") must at least three (3) calendar days before the auction provide a written overbid ("**Overbid**") that (i) constitutes a qualifying bid under Subparagraph 4(d), (ii) is at least equal to the Initial Overbid Amount, and (iii) agrees that the Overbidder's deposit will be non-refundable and will be paid to Cairn from the Escrow Account if the prospective Overbidder is the winning bidder at the Auction and fails to close the purchase of the Real Property within thirty days following the date of entry of the Sale Order – regardless of whether an appeal has been filed from the Sale Order, provided there is no entered stay pending appeal of the Sale Order (i.e., there is no final order condition on the duty to close the purchase).  If Cairn acquires the Property with a credit bid, then the Debtor will retain up to $400,000 of

the forfeited deposit for the Temerity Incentive Payment (as defined in the Settlement Agreement) and the remainder will be paid to Cairn (including, but not limited to, any remaining amounts from the Temerity Incentive Payment after creditors are paid). If the Property is sold to another bidder, the Debtor will retain $400,000 of the forfeited deposit as the Temerity Incentive Payment and the remainder will be paid to Cairn (including, but not limited to, any remaining amounts from the Temerity Incentive Payment after creditors are paid).

i.      **The terms of Subparagraph 4(h)(iii) above will be deemed to apply upon submission of a written Overbid whether or not the Overbid states the terms**.

j.      Subsequent overbids at the auction ("**Auction Overbids**") must be in increments of $100,000 or amounts that are wholly divisible by $100,000, provided, however, that Cairn may waive this minimum amount if necessary in its sole discretion to obtain a higher and better bid. The Debtor, in consultation with its professionals and Cairn, will select the highest and best offer and recommend Court approval of the sale of the Real Property to the qualified Overbidder that, in the opinion of the Debtor, in consultation with its professionals and Cairn, has made the highest and best offer for the Real Property.

k.      If the Debtor concludes, with Cairn's written consent to be given or withheld in its sole discretion, that (1) the Real Property has been adequately marketed in a fair, proper, and reasonably calculated manner that will result in the best value for the Real Property, and (2) a qualified bid constitutes a higher and better bid than likely could be obtained through the overbid and auction process described below, then the Debtor may bring a motion for approval of a sale of the Real Property to such a bidder.

l.      Notwithstanding anything to the contrary in this Order, the Debtor must accept an offer for the Real Property and promptly seek Court approval of such offer without the need for an auction even if the Sale Period has not concluded if (i) the offer is approved by Cairn and (ii) the Broker informs the Debtor that there is no realistic

probability that the Debtor will receive an offer exceeding the amount of the Cairn Claim as defined in the Settlement Agreement.  Cairn shall have the immediate right to seek specific performance in this Court to consummate such a sale if the Debtor refuses.  The terms of this paragraph do not constitute pre-approval of any such sale, which will remain subject to all applicable standards otherwise governing a private sale of the Real Property in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law or procedure.  Otherwise, the marketing and sale of the Real Property is subject to the Overbid Procedures.

4.    As soon as possible following the selection of a buyer pursuant to the foregoing procedures, the parties will seek a Court order approving the sale of the Real Property.

5.    The Sale Procedures are reasonable and intended to ensure that the highest and best price for the Real Property will be obtained by the estate, while still protecting the estate from parties who may wish to bid on the Real Property but who are ultimately unable to consummate a purchase of the Real Property.

6.    Approval of the Motion, the Consent Order, the Settlement Agreement, and the consummation of the transactions contemplated thereby are in the best interests of the Debtor, its bankruptcy estate, creditors, and stakeholders, and other parties in interest.

7.    The Consent Order and Settlement Agreement were negotiated and entered into in good faith, based upon arm's-length bargaining and negotiation, and without collusion or fraud of any kind.

8.    Upon entry of this Order, the Debtor's execution of the Consent Order and the Settlement Agreement is approved, and the Debtor is authorized to consummate the transactions contemplated by the Consent Order and Settlement Agreement and to sign any and all documents necessary to enable the Debtor to consummate the transactions contemplated by the Consent Order and Settlement Agreement.

9.    To the extent FBBP 6004(h) applies, cause has been shown as to why this Order should not be subject to the stay provided by FRBP 6004(h).

1                                    # # #
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**

(FILED UNDER SEAL)

# EXHIBIT "2"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x
                                       :

UNITED STATES OF AMERICA
                                        :

     -v.-                            :     CONSENT ORDER OF
                                        INTERLOCUTORY
WILLIAM SADLEIR,           :     SALE OF REAL PROPERTY

         Defendant.       :     20 Cr. 320 (PAE)

                                          :

------------------------------------------------- x

       IT IS HEREBY STIPULATED AND AGREED THAT, by and between the United

States, United States of America, by its attorney Damian Williams, United States Attorney,

Assistant United States Attorney, Jared Lenow, of counsel; Kurt Ramlo, Esq., counsel for Temerity

Trust Management, LLC ("Temerity"); Kyle R. Freeny, Esq., counsel for Cairn Capital Investment

Funds ICAV, for its sub-fund Cairn Capstone Special Opportunities Fund ("Cairn"); the

Defendant, WILLIAM SADLEIR and his counsel, Matthew Lane Schwartz, Esq., that:

          1.     The real property located at 9135 Hazen Drive, Beverly Hills, California

(the "Subject Property"), shall be sold, subject to the approval of the Bankruptcy Court presiding

over the chapter 11 case of *In re Temerity Trust Management LLC*, 20 bk. 15015 (Bankr. C.D.

Cal), in a commercially reasonable manner and consistent with the terms detailed below.

          2.     Within five (5) business days after entry of this Consent Order, Temerity

and Cairn will seek approval from the Bankruptcy Court, pursuant to Title 11, United States Code,

Section 363 and Federal Rule of Bankruptcy Procedure 9019, for (i) a settlement ("9019

Settlement") and (ii) to market and sell the Subject Property pursuant to 11 U.S.C. § 363(b)(1), in

accordance with the details below and subject to final approval by the Bankruptcy Court ("Section

1

Case 2:20-bk-15015-BR    Doc 170    Filed 01/21/22    Entered 01/21/22 15:20:47    Desc
Main Document    Page 74 of 130

Case 1:20-cr-00320-PAE   Document 74   Filed 01/21/22   Page 2 of 9
Case 1:20-cr-00320-PAE   Document 73-1   Filed 01/21/22   Page 2 of 9

363 Sale"). Cairn shall be provided with an allowed claim in the full amount of Temerity's debt to Cairn, which is secured by its first-priority liens on the property of the Debtor, including the Subject Property, set forth in the Deed of Trust (the "Cairn Allowed Claim"), which funds Cairn may dispose of as it sees fit. For purposes of this Order, Temerity's debt to Cairn shall be deemed to be not less than $17,724,407 as of June 23, 2021, plus fees and expenses, and any interest accruing thereafter (the "Cairn Debt"). The Cairn Allowed Claim shall be indefeasible and not be subject to challenge by the Debtor, the estate or any other party in interest on any grounds, including, but not limited to challenges related to the amount, validity and priority.

3.      If the Bankruptcy Court does not approve the 9019 Settlement or the Section 363 Sale, the Post Indictment Restraining Order entered November 30, 2020 (the "Restraining Order") shall not limit any right that Cairn may have to seek to foreclose on or otherwise enforce its rights as to the Subject Property, and for Cairn to subsequently sell the Subject Property in a commercially reasonable manner, including, but not limited to, a foreclosure trustee's sale pursuant to statutorily prescribed procedures. The Parties agree not to oppose the lifting of the automatic stay caused by the Bankruptcy Petition to permit Cairn (or any third party acting on its behalf) to sell the Subject Property in a judicial or non-judicial foreclosure proceeding.

4.      The United States Attorney's Office for the Southern District of New York ("USAO-SDNY") will provide written assurance, as necessary, to the Bankruptcy Court, seller's agent, the title company providing title insurance to a purchaser, or any lender providing financing to a purchaser, and any other person or entity that the Parties reasonably determine needs such assurance, that the Subject Property may be sold, in compliance with this Consent Order, free and clear of the USAO-SDNY's pending forfeiture claim, and will terminate the Lis Pendens, filed by the United States in Recorder's Office, Los Angeles County on October 15, 2020 (File No.

2

Case 2:20-bk-15015-BR    Doc 170    Filed 01/21/22    Entered 01/21/22 15:20:47    Desc
Main Document    Page 75 of 130

Case 1:20-cr-00320-PAE   Document 74   Filed 01/21/22   Page 3 of 9
Case 1:20-cr-00320-PAE   Document 73-1   Filed 01/21/22   Page 3 of 9

20201278959), upon approval by the Bankruptcy Court of the sales process. Further, the Restraining Order is herewith modified to permit the sale of the Subject Property in conformity with this Consent Order.

5.    The marketing process for the Section 363 Sale shall consist of the terms and conditions set forth herein, subject to the approval of the Bankruptcy Court. The Subject Property will be marketed by the Altman Brothers (www.thealtmanbrothers.com) or a comparable licensed real estate agent specializing in high-end Beverly Hills real estate, subject to the approval of such retention by the Bankruptcy Court and Cairn. Total commission will be no more than 5%, to be allocated and paid to seller's agent and buyer's agent.

6.    The marketing of the Subject Property will begin on or before five (5) business days after the grant of Bankruptcy Court of approval pursuant to Paragraph 2 ("Start Date") and the Bankruptcy Court's approval of Temerity's retention of a real estate agent pursuant to Paragraph 5, and it will last for the period of time set by the Bankruptcy Court ("Sale Period").

7.    All bidders, in connection with delivery of a written bid in form and substance customary and appropriate for transactions of this type and delivered prior to the earlier of the expiry of the Sales Period and Temerity's acceptance of a purchase offer, which acceptance is subject to Cairn's approval, which will not be unreasonably withheld, must provide proof of immediately available funds to finance the purchase of the Subject Property and shall provide a deposit into an escrow (with the escrow company chosen in accordance with Paragraph 12 below) of at least 5% of the bid amount as a condition of being a qualifying bid. Where doing so may maximize the expected sales price, a stalking horse bidder may be utilized.

8.    The minimum bid for the Subject Property (the "Reserve Price") shall be an amount less than the Cairn Debt, to be determined by the Bankruptcy Court. If no qualifying bids

3

Case 2:20-bk-15015-BR    Doc 170    Filed 01/21/22    Entered 01/21/22 15:20:47    Desc
Main Document    Page 76 of 130

Case 1:20-cr-00320-PAE   Document 74   Filed 01/21/22   Page 4 of 9
Case 1:20-cr-00320-PAE   Document 73-1   Filed 01/21/22   Page 4 of 9

meeting the Reserve Price are received within the Sales Period pursuant to Paragraph 6 above, upon or after the expiry of the Sales Period, Cairn (or one or more of its designees) shall have the right to extend the Sales Period in a manner acceptable to the Bankruptcy Court, credit bid Cairn's debt for the Subject Property for an amount to be determined by the Bankruptcy Court, without the need for an auction, or to waive the Reserve Price and accept a bid below the amount of the Reserve Price. Cairn shall make its election between a credit bid and waiver of the Reserve Price as soon as practicable after expiry of the Sales Period. Cairn will not have the ability to credit bid if one or more qualifying bids meeting the Reserve Price are received within the Sales Period and the transaction contemplated by such bid is consummated in accordance with the terms of this Consent Order.

9.      If there are two or more qualifying bids submitted in accordance with Paragraphs 7 and 8, an auction shall be conducted for the sale of the Subject Property within 10 days of the close of the Sales Period (the "Auction Date").

10.     If during the Sales Period any prospective buyer presents a qualifying bid for a private sale otherwise on terms and conditions satisfactory to both Temerity and Cairn, then upon the consent of both Temerity and Cairn in each of its sole discretion, such sale shall be permitted (but subject to the approval of the Bankruptcy Court and otherwise complying with the terms hereof).

11.     As soon as possible following the selection of a buyer pursuant to the foregoing procedures, the parties will seek a Bankruptcy Court order approving the sale of the Subject Property free and clear of all liens, claims, interests, and encumbrances, including any rights of tenancy or occupancy pursuant to 11 U.S.C. § 363(b)(1). The closing shall take place as soon as practicable, within the time period set by the Bankruptcy Court.

4

12.    The proceeds of the Section 363 Sale (except as a result of a credit bid complying with the terms of this Consent Order) shall be deposited into an interest-bearing escrow account acceptable to Temerity, Cairn and the USAO-SDNY, and shall be distributed within (3) business days of closing in the following priority: (1) first, to pay outstanding real property taxes; (2) second, to pay all reasonable and documented costs of escrow and sale, including real estate sales commissions authorized hereunder and applicable fees triggered by the sale of the Subject Property, including any fees owed to a stalking horse, and any reasonable credits against the sale price requested by the buyer(s), in each case subject to Cairn's approval, which will not be unreasonably withheld; (3) third, to pay the Cairn Debt; and (4) fourth, to the extent funds remain after all amounts are paid in items (1)-(3) above, those funds shall be treated as substitute *res* for the Subject Property (the "Substitute Res") in the pending criminal action and shall remain in escrow pending the resolution of the criminal matter and further order of the Bankruptcy Court, with all claims and defenses applicable to the Subject Property, including any other action that may be brought by the Office for forfeiture of the Subject Property or claims by third parties, to apply instead to the Substitute Res.

13.    Upon such occasion that Cairn (and/or any of its designees or affiliates) shall take title to the property as permitted by this Consent Order (by credit bid or otherwise), Cairn (or its relevant designee(s) and/or affiliate(s)) shall have no continuing obligations pursuant to this Consent Order.

14.    Nothing in this Consent Order is intended to alter or otherwise affect any of the rights of Cairn, under the Deed of Trust, the Temerity Guaranty (as defined in the Deed of Trust), or related credit documents.

5

Case 2:20-bk-15015-BR    Doc 170    Filed 01/21/22    Entered 01/21/22 15:20:47    Desc
Main Document      Page 78 of 130

Case 1:20-cr-00320-PAE   Document 74   Filed 01/21/22   Page 6 of 9
Case 1:20-cr-00320-PAE   Document 73-1   Filed 01/21/22   Page 6 of 9

15.     This Consent Order may be executed in counterparts, each of which shall be deemed an original, and all of which, when taken together, shall be deemed the complete Consent Order. Signature pages may be by fax or transmitted electronically, and such signatures shall be deemed to be valid originals.

16.     This Consent Order constitutes the complete agreement between the parties hereto concerning the Subject Property and may not be amended except by written consent thereof.

17.     The parties hereby waive all rights to appeal or to otherwise challenge or contest the validity of this Consent Order.

18.     Each party agrees to bear its costs and attorneys' fees, provided, however, that nothing herein shall affect, limit, or abrogate Temerity's or Cairn's rights to attorneys' fees under the loan Cairn extended for up to $22,400,000, guaranteed by Temerity, the associated Deed of Trust, and related credit documents.

19.     The Court shall retain jurisdiction in this matter to take additional action and enter further orders as necessary to implement and enforce this Consent Order authorizing the interlocutory sale of the Subject Property.

STIPULATED TO:

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
United States of America

By:  _____                    1/21/2022
                                                 _____
     Jared Lenow                                       DATE
     Assistant United States Attorney
     One Saint Andrews Plaza
     New York, New York 10007
     (212) 637-1068

6

Case 2:20-bk-15015-BR   Doc 170   Filed 01/21/22   Entered 01/21/22 15:20:47   Desc
Main Document      Page 79 of 130

Case 1:20-cr-00320-PAE   Document 74   Filed 01/21/22   Page 7 of 9
Case 1:20-cr-00320-PAE   Document 73-1   Filed 01/21/22   Page 7 of 9

Temerity Trust Management, LLC

By: _____                    _____
    Kurt Ramlo                                                  DATE
    Levene, Neale, Bender, Yoo & Golubchik L.L.P.
    2818 La Cienega Avenue
    Los Angeles, CA | 90034
    Tel: 310-229-1234
    *Attorney for Temerity Trust Management, LLC*

Cairn Capital Investment Funds ICAV, for its sub fund
Cairn Capstone Special Opportunities Fund

By: _____                    1/11/22
    Kyle R. Freeny, Esq.                                 DATE
    Greenberg Traurig, LLP
    2101 L Street NW
    Washington, D.C. 20037
    Tel: (202) 331-3118
    *Attorney for Cairn Capital Investment Funds, ICAV*


WILLIAM SADLEIR
Defendant

By: _____                    _____
    WILLIAM SADLEIR                                     DATE

By: _____                    _____
    Matthew Lane Schwartz, Esq.                          DATE
    Boies Schiller, Flexner, LLP
    55 Hudson Yards
    New York, NY 10001
    Tel: (212) 446-2300
    mlschwartz@bsfllp.com
    *Attorney for Defendant*


So Ordered:


_____                        _____
HONORABLE PAUL A. ENGELMAYER                     DATE
UNITED STATES DISTRICT JUDGE

7

Case 2:20-bk-15015-BR    Doc 170    Filed 01/21/22    Entered 01/21/22 15:20:47    Desc
Main Document    Page 80 of 130

Case 1:20-cr-00320-PAE   Document 74   Filed 01/21/22   Page 8 of 9
Case 1:20-cr-00320-PAE   Document 73-1   Filed 01/21/22   Page 8 of 9

Temerity Trust Management, LLC

By: _____
Kurt Ramlo
Levene, Neale, Bender, Yoo & Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, CA | 90034
Tel: 310-229-1234
*Attorney for Temerity Trust Management, LLC*

1/10/22
DATE

Cairn Capital Investment Funds ICAV, for its sub fund
Cairn Capstone Special Opportunities Fund

By: _____
Kyle R. Freeny, Esq.
Greenberg Traurig, LLP
2101 L Street NW
Washington, D.C. 20037
Tel: (202) 331-3118
*Attorney for Cairn Capital Investment Funds, ICAV*

_____
DATE

WILLIAM SADLEIR
Defendant

By: _____
WILLIAM SADLEIR

_____
DATE

By: _____
Matthew Lane Schwartz, Esq.
Boies Schiller, Flexner, LLP
55 Hudson Yards
New York, NY 10001
Tel: (212) 446-2300
mlschwartz@bsfllp.com
*Attorney for Defendant*

_____
DATE

So Ordered:

_____
HONORABLE PAUL A. ENGELMAYER
UNITED STATES DISTRICT JUDGE

_____
DATE

7

Case 2:20-bk-15015-BR    Doc 170    Filed 01/21/22    Entered 01/21/22 15:20:47    Desc
Main Document    Page 81 of 130

Case 1:20-cr-00320-PAE    Document 74    Filed 01/21/22    Page 9 of 9
Case 1:20-cr-00320-PAE    Document 73-1    Filed 01/21/22    Page 9 of 9

Temerity Trust Management, LLC

By:    _____                    _____
       Kurt Ramlo                                              DATE
       Levene, Neale, Bender, Yoo & Golubchik L.L.P.
       2818 La Cienega Avenue
       Los Angeles, CA | 90034
       Tel: 310-229-1234
       *Attorney for Temerity Trust Management, LLC*

Cairn Capital Investment Funds ICAV, for its sub fund
Cairn Capstone Special Opportunities Fund

By:    _____                    _____
       Kyle R. Freeny, Esq.                                    DATE
       Greenberg Traurig, LLP
       2101 L Street NW
       Washington, D.C. 20037
       Tel: (202) 331-3118
       *Attorney for Cairn Capital Investment Funds, ICAV*


WILLIAM SADLEIR
Defendant

By:    _____                    January 12, 2022
       WILLIAM SADLEIR                                         DATE

By:    _____                    1/12/22
       Matthew Lane Schwartz, Esq.                            DATE
       Boies Schiller, Flexner, LLP
       55 Hudson Yards
       New York, NY 10001
       Tel: (212) 446-2300
       mlschwartz@bsfllp.com
       *Attorney for Defendant*


So Ordered:

_____                          1/21/22
HONORABLE PAUL A. ENGELMAYER                                 DATE
UNITED STATES DISTRICT JUDGE

                              7

**EXHIBIT "3"**





# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (Buyer's Brokerage Firm to Buyer)
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/18)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant ███redacted███      Date 12/02/2021

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant ███redacted███ *ssignee*      Date _____

Agent _____ *The Agency*      DRE Lic. # *01904054*
                             Real Estate Broker (Firm)
By ___ *James Harris*     DRE Lic. # *01905862/01909801*     Date 12/02/2021   12/02/2021
      (Salesperson or Broker-Associate, if any) *David Parnes/James Harris*

© 1991-2018, California Association of REALTORS®, Inc.

**AD REVISED 12/18 (PAGE 1 OF 2)**
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.
2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
2079.16 Reproduced on Page 1 of this AD form.
2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm    DO NOT COMPLETE. SAMPLE ONLY       License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the seller and buyer. (dual agent)
Seller's Agent    DO NOT COMPLETE. SAMPLE ONLY       License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm    DO NOT COMPLETE. SAMPLE ONLY       License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent    DO NOT COMPLETE. SAMPLE ONLY       License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 **(a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**AD REVISED 12/18 (PAGE 2 OF 2)**
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

DocuSign Envelope ID: 83A979AD-4480-4877-859E-BFDA76A871B2

# FAIR HOUSING & DISCRIMINATION ADVISORY

**(C.A.R. Form FHDA, 10/20)**

ASSOCIATION
OF REALTORS®

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§12900-12996,12955; 2 California Code of Regulations ("CCR") §§12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") §51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: Section 504 of Rehabilitation Act of 1973 29 U.S.C. §794; Ralph Civil Rights Act CC §51.7.; California Disabled Persons Act; CC §§54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership to, any of the following classes or categories is prohibited.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Sex | Sexual Orientation | Gender | Gender Identity | Gender Expression |
| Marital Status | Familial Status (family with a child or children under 18) | Source of Income (e.g., Section 8 Voucher) | Disability (Mental & Physical) | Medical Condition |
| Citizenship | Primary Language | Immigration Status | Military/Veteran Status | Age |
| Criminal History (non-relevant convictions) | | | Any arbitrary characteristic | |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") §10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation §2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(I)(1); 10 CCR §2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent **(i)** an upper level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2020, California Association of REALTORS®, Inc.

**FHDA 10/20 (PAGE 1 OF 2)**

EQUAL HOUSING
OPPORTUNITY

The Agency - Beverly Hills, 331 Foothill Road, Suite 100 Beverly Hills CA 90210        Phone: 424.400.5916        Fax: 424.230.3720        9135 Hazen Dr -
David Parnes        Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

E.  Inquiring about protected characteristics when asking tenant or buyer if they are married, or prospective purchasers if they have children or are planning to start a family);

F.  Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G.  Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H.  Denying a home loan or homeowner's insurance;

I.  Offering inferior terms, conditions, privileges, facilities or services;

J.  Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K.  Harassing a person;

L.  Taking an adverse action based on protected characteristics;

M.  Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheel chair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);

N.  Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):

    **(i)**  Failing to allow that person to keep the service animal or emotional support animal in rental property,

    **(ii)**  Charging that person higher rent or increased security deposit, or

    **(iii)**  Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O.  Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

A.  Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

B.  Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

C.  Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

D.  Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

E.  Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES**: If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A.  Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

B.  State: **https://www.dfeh.ca.gov/housing/**

C.  Local: local Fair Housing Council office (non-profit, free service)

D.  DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

E.  Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**

F.  Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

A.  Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

B.  An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

C.  An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

D.  An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

E.  Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).

F.  Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

Buyer/Tenant _____ redacted _____   _____ redacted _____ *and/or Assignee* Date 12/02/2021

Buyer/Tenant _____   _____ Date _____

Seller/Landlord _____ *Hannah kadadu Sadleir* _____   _____ Date 12/24/2021
               2F4EF1AAD8454EE...

Seller/Landlord _____   _____ Date _____

© 2020, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify he user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of he NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**FHDA 10/20 (PAGE 2 OF 2)**

**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller _Hannah kadadu Sadleir_ | Date | 12/24/2021 |
| 2F4EF1AAD8454EE... | | |
| Seller | Date | |
| Buyer redacted  redacted *and/or Assignee* | Date | 12/02/2021 |
| Buyer | Date | |

Buyer's Brokerage Firm **The Agency**        DRE Lic # *01904054*  Date
By _James Harris_                    DRE Lic # *01905862/01909*  Date 12/02/2021
*David Parnes/James Harris*                           01909801
Seller's Brokerage Firm *_was advised separately by the Seller_*  Douglas Elliman                         12/02/2021
                                    DRE Lic #  01947727  Date  12/24/2021
By _Josh Altman Matthew Altman_                DRE Lic #  01764587  Date
9312EAEA728E4B3...

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids he unau horized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/18 (PAGE 1 OF 1)**



## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)



# CALIFORNIA ASSOCIATION OF REALTORS®

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
### (C.A.R. Form WFA, Revised 12/17)



Property Address: **9135 Hazen Dr, Beverly Hills, CA  90210-1825** _____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

Buyer/Tenant ___[redacted]___ ___[redacted]___ _and/or Assignee_ Date 12/02/2021

Buyer/Tenant _____ Date _____

Seller/Landlord _Hannah kadadu Sadleir_ Date 12/24/2021
2F4EF1AAD8454EE...

Seller/Landlord _____ Date _____

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
_a subsidiary of the California Association of REALTORS®_
525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/17 (PAGE 1 OF 1)**

EQUAL HOUSING OPPORTUNITY

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**



**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

# CALIFORNIA
## RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. Form RPA-CA, Revised 12/18)

Date Prepared: *12/01/2021*

**1. OFFER:**
  **A. THIS IS AN OFFER FROM** <span style="background:black;color:white">redacted</span> *and/or Assignee* ("Buyer").
  **B. THE REAL PROPERTY** to be acquired is <span style="background:black;color:white">9135 Hazen Dr, Beverly Hills, CA  90210-1825</span> , situated in
    *Beverly Hills* (City), *Los Angeles* (County), California, *90210-1825* (Zip Code), Assessor's Parcel No. *4388-020-009* ("Property").
  **C. THE PURCHASE PRICE** offered is *Fourteen Million, One Hundred Fifty Thousand*
    Dollars $ *14,150,000.00* .
  **D. CLOSE OF ESCROW** shall occur on _____ (date) or [X] *25* **Days** After Acceptance).
  **E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**
  **A. DISCLOSURE:** The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
  **B. CONFIRMATION:** The following agency relationships are confirmed for this transaction:
    **Seller's Brokerage Firm** *As advised separately by the Seller* License Number _____
    Is the broker of (check one): [ ] the seller; or [ ] both the buyer and seller. (dual agent)
    Seller's Agent _____ License Number _____
    Is (check one): [ ] the Seller's Agent. (salesperson or broker associate) [ ] both the Buyer's and Seller's Agent. (dual agent)
    **Buyer's Brokerage Firm** *The Agency* License Number *01904054*
    Is the broker of (check one): [X] the buyer; or [ ] both the buyer and seller. (dual agent)
    Buyer's Agent *David Parnes/James Harris* License Number *01905862/01909801*
    Is (check one): [X] the Buyer's Agent. (salesperson or broker associate) [ ] both the Buyer's and Seller's Agent. (dual agent)
  **C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
  **A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ *707,500.00*
    **(1)** Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, [ ] cashier's check, [ ] personal check, [ ] other _____ within 3 business days after Acceptance (or _____ );
    OR **(2)** [ ] Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ ) to the agent submitting the offer (or to _____ ), made payable to _____ . The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within **3** business days after Acceptance (or _____ ).
    Deposit checks given to agent shall be an original signed check and not a copy.
    (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
  **B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . . $ _____
    within _____ **Days** After Acceptance (or _____ ).
    If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.
  **C.** [X] **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or [ ] Buyer shall, within **3 (or _____ ) Days** After Acceptance, Deliver to Seller such verification.
  **D. LOAN(S):**
    **(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
    This loan will be conventional financing **OR** [ ] FHA, [ ] VA, [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, [ ] an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
    **(2)** [ ] **SECOND LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
    This loan will be conventional financing **OR** [ ] Seller financing (C.A.R. Form SFA), [ ] assumed financing (C.A.R. Form AFA), [ ] Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, [ ] an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
    **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or _____ ) Days** After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this Agreement.
  **E. ADDITIONAL FINANCING TERMS:** _____

  **F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . $ *13,442,500.00*
    to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
  **G. PURCH**<span style="background:black;color:white">redacted</span> . . . . . . . . . . . . . . . . . . . . . . $ *14,150,000.00*

Buyer's Initials <span style="background:black;color:white">redacted</span>      Seller's Initials ( *HES* ) ( _____ )

© 1991-2018, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/18 (PAGE 1 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

DocuSign Envelope ID: 83A939AD-44B0-4827-859E-BED476A871B2

Property Address: **9135 Hazen Dr, Beverly Hills, CA 90210-1825**  Date: **December 1, 2021**

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or _____) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is **(or [X] is NOT)** contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or _____) Days** After Acceptance.

**J. LOAN TERMS:**
**(1) LOAN APPLICATIONS:** Within **3 (or _____) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)
**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.
**(3) LOAN CONTINGENCY REMOVAL:**
Within **21 (or _____) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
**(4)** ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.
**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing.  Buyer shall pursue the financing specified in this Agreement.  Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**
**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**
A. ADDENDA:    [X] Addendum #  *1*  (C.A.R. Form ADM)
☐ Back Up Offer Addendum (C.A.R. Form BUO)    ☐ Court Confirmation Addendum (C.A.R. Form CCA)
☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI)
☐ Short Sale Addendum (C.A.R. Form SSA)    ☐ Other

B. BUYER AND SELLER ADVISORIES:    [X] Buyer's Inspection Advisory (C.A.R. Form BIA)
☐ Probate Advisory (C.A.R. Form PA)    ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
☐ Trust Advisory (C.A.R. Form TA)    ☐ REO Advisory (C.A.R. Form REO)
☐ Short Sale Information and Advisory (C.A.R. Form SSIA)    ☐ Other

**6. OTHER TERMS:** _____
_____
_____
_____

**7. ALLOCATION OF COSTS**
**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**
**(1)** ☐ Buyer [X] Seller shall pay for a natural hazard zone disclosure report, including tax [X] environmental ☐ Other: _____
prepared by *Seller's Choice*
**(2)** ☐ Buyer [X] Seller shall pay for the following Report  *City 9A report if required*
prepared by _____ .
**(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____
prepared by _____ .
**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
**(1)** ☐ Buyer [X] Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and _____ pt.

Buyer's Initials [redacted]    Seller's Initials ( H.S. ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 2 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 2 OF 10)**

Property Address: *9135 Hazen Dr, Beverly Hills, CA, 90210-1825*  Date: *December 1, 2021*

**(2) (i)** ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

**(ii)** ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

**(iii)** Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
**(1)** (a) ☒ Buyer ☒ Seller shall pay escrow fee *Each side to pay their own respective costs and fees*        .
(b) Escrow Holder shall be *Buyer's Choice*        .
(c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.
**(2)** (a) ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E        .
(b) Owner's title policy to be issued by *Buyer's Choice*        .
(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
**(1)** ☐ Buyer ☒ Seller shall pay County transfer tax or fee        .
**(2)** ☐ Buyer ☒ Seller shall pay City transfer tax or fee        .
**(3)** ☐ Buyer ☒ Seller shall pay Homeowners' Association ("HOA") transfer fee *if any*        .
**(4)** Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
**(5)** ☐ Buyer ☒ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
**(6)** Buyer to pay for any HOA certification fee.
**(7)** ☐ Buyer ☒ Seller shall pay for any private transfer fee *if any*        .
**(8)** ☐ Buyer ☐ Seller shall pay for        .
**(9)** ☐ Buyer ☐ Seller shall pay for        .
**(10)** ☐ Buyer ☒ Seller shall pay for the cost, not to exceed $ *2,000.00*        , of a standard (or ☒ upgraded) one-year home warranty plan, issued by *First American Home Warranty*        , with the following optional coverages: ☒ Air Conditioner ☒ Pool/Spa ☒ Other: *Buyer selects additional upgrades*        . Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
OR ☐ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
**(1)** All EXISTING fixtures and fittings that are attached to the Property;
**(2)** EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except _____ ; ☒ all refrigerator(s) except _____ ; ☒ all washer(s) and dryer(s), except _____ ;
**(3)** The following additional items: *See Addendum '1'*
**(4)** Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( ☐ are NOT) included in the sale.
**(5) LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
**(6)** Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and ____ _____ , and (ii) are transferred without Seller warranty regardless of value.
**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____
_____ . **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☒ will be removed and holes or other damage shall be repaired, but not painted).**

**9. CLOSING AND POSSESSION:**
**A.** Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
**B. Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( ☐ ☐ AM/ ☐ PM) on the date of Close Of Escrow; ____ days after Close Of Escrow; or (iii) ☒ at ____ AM/ ☐ PM on *Upon Recording*        .

Buyer's Initials ( [redacted] )        Seller's Initials ( *HcS* ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 3 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 3 OF 10)**
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com   9135 Hazen Dr -

**C. Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**D. Tenant-occupied property: Property shall be vacant at least 5 (or ____ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**

OR ☐ **Tenant to remain in possession** (C.A.R. Form TIP).

**E.** At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

**F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A. (1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

**(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.

**(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

**(4)** Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

**(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

**(6)** In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

**(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

**B. NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**C. WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

**D. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

**E. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

**F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

**(1) SELLER HAS: 7 (or ____ ) Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials redacted

Seller's Initials (  ) ( )



**RPA-CA REVISED 12/18 (PAGE 4 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5 www.lwolf.com

9135 Hazen Dr -

DocuSign Envelope ID: 93A929AD-4480-4B57-855E-BFDA76A821B2

Case 2:20-R-1505-BR-DVC 170  Filed 01/21/22  Entered 01/21/22 15:20:47  Desc
Property Address: *9135 Hazen Dr, Beverly Hills, CA, 90210-1825*  Main Document  Page 93 of 130  Date: *December 1, 2021*

**(2)** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

**A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

**B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

**C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

**A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

**B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

**C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

**D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

**A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

**C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**E.** Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any i____

Buyer's Initials ( redacted )

Seller's Initials ( *HtS* ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 5 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com    **9135 Hazen Dr -**

Property Address: **9135 Hazen Dr, Beverly Hills, CA, 90210-1825**      Date: **December 1, 2021**

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

    **A. SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

    **B. (1) BUYER HAS: 17 (or _21_ ) Days** After Acceptance, unless otherwise agreed in writing, to:

        **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

        **(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

        **(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

        **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

        **(5) Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or _25_ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

    **C.** ☐ **REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

    **D. SELLER RIGHT TO CANCEL:**

        **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

        **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

    **E. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

    **F. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

    **G. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or _____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

    **H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials    [redacted]        Seller's Initials    ( _HES_ )   ( _____ )

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com     **9135 Hazen Dr -**

Property Address: *9135 Hazen Dr, Beverly Hills, CA 90210-1825*                              Date: *December 1, 2021*

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ____ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**

   **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

   **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

   **A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ____ ) Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.

   **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ▬▬▬▬▬▬▬▬▬▬                          Seller's Initials ( *H&S* ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 7 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

9135 Hazen Dr -

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3** Days after mutual execution of the amendment.

## 21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:

**A.** **Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

**B.** **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID)**

Buyer's Initials ▮redacted▮     Seller's Initials _H&S_ / _____

## 22. DISPUTE RESOLUTION:

**A.** **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

**B.** **ARBITRATION OF DISPUTES:**

**The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials ▮redacted▮     Seller's Initials _H&S_ / _____

**C.** ADDITIONAL MEDIATION AND ARBITRATION TERMS:

(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or

Buyer's ▮redacted▮     Seller's Initials ( _H&S_ ) ( _____ )

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 10)**

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com          **9135 Hazen Dr -**

(2) **PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.**

(3) **BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

30. **DEFINITIONS:** As used in this Agreement:

A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

I. **"Deliver"**, **"Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by *David Parnes/James Harris* , who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by [X]  12:00  AM/[X] PM, on *December 3, 2021* (date)).

[ ] One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date 12/02/2021    BUYER redacted
_____

**(Print name)** redacted    *and* ███████    _____

Date _____    BUYER _____

**(Print name)** _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( HtS ) ( _____ )

**RPA-CA REVISED 12/18 (PAGE 9 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**

Property Address: **9135 Hazen Dr, Beverly Hills, CA, 90210-1825** Date: **December 1, 2021**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☒ (If checked:) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:**
12/23/21 .

☒ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date 12/24/2021 SELLER _Hannah kadadu Sadleir_
─── 2F4EF1AAD8454EE...

**(Print name)** _____

Date _____ SELLER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials) personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

---

**REAL ESTATE BROKERS:**
**A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.**
**B. Agency relationships are confirmed as stated in paragraph 2.**
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D. COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
**E. PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

Buyer's Brokerage Firm **The Agency** DRE Lic. # **01904054**
By _James Harris_ **David Parnes/James Harris** DRE Lic. # **01905862/01909801** Date 12/02/2021 12/02/2021
By _____ DRE Lic. # _____ Date _____
Address **331 Foothill Rd. Suite 100** City **Beverly Hills** State **CA** Zip **90210**
Telephone **(310)894-3435** Fax _____ E-mail **Dparnes@theagencyre.com**
Seller's Brokerage Firm **As advised separately by the Seller** Douglas Elliman DRE Lic. # 01947727
By _Josh Altman Matthew Altman_ DRE Lic. # 01764587 Date 12/24/2021
By _____ DRE Lic. # _____ Date _____
─── 93A84F6EA238E133
Address 150 S El Camino Dr Suite 150 City BEverly Hills State _____ Zip _____
Telephone _____ Fax _____ E-mail josh@thealtmanbrothers.com

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and
_____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER: (** _____ **)** Seller's Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

---

**REJECTION OF OFFER: (** _____ **) (** _____ **)** No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

---

©1991- 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of his form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

R E B S / L L C Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Buyer Acknowledges that page 10 is part of this Agreement

redacted
Buyer's Initials



**RPA-CA REVISED 12/18 (PAGE 10 of 10)**

DocuSign Envelope ID: 83A978AD-4480-4827-859E-BED476A871B2



**BUYER'S INSPECTION ADVISORY**
(C.A.R. Form BIA, Revised 11/14)

Property Address **9135 Hazen Dr, Beverly Hills, CA  90210-1825**

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

    **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

    **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

    **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

    **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

    **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

    **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

    **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

    **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

    **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

    **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

    **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

    **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory.**
**Buyer** ~~is encouraged~~ to read it carefully.

Buyer   [redacted]      12/02/2021      Buyer _____

[redacted] *or Assignee*

©1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**BIA REVISED 11/14 (PAGE 1 OF 1)**



**BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)**



# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY

CALIFORNIA CONSUMER PRIVACY ACT ADVISORY
**(C.A.R. Form CCPA, 12/19)**

As of January 1, 2020, the California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information that is collected by companies with whom they do business. Under the CCPA, "personal information" is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, including, potentially, photographs of or sales information about your property. Some of your personal information will be collected and likely shared with others during the process of buying and selling real estate. Depending on the situation, you may have the right to "opt out" or stop the transfer of your personal information to others and request that certain businesses delete your personal information altogether. Not all businesses you interact with are required to comply with the law, primarily just those who meet the criteria of a covered "Business" as set forth in Section 1798.140 (c)]. For more information, you may ask your Broker for a copy of the C.A.R. Legal Q&A on the subject.

A real estate broker is likely to submit personal information to a Multiple Listing Service ("MLS") in order to help find a buyer for a seller's property. Through the MLS, the information is made available to real estate brokers and salespeople, and others. Even after a sale is complete, the MLS distributes sales information to the real estate community. Brokers, agents and MLSs may also share your personal information with others who post the personal information on websites or elsewhere, or otherwise use it. Thus, there are various service providers and companies in a real estate transaction who may be engaged in using or sharing data involving your personal information.

If your broker is a covered Business, it should have a privacy policy explaining your rights on its website and giving you an opportunity to request that personal information not be shared, used and even deleted. Even if your real estate brokerage is a covered Business, it needs, and is allowed, to keep your information to effectuate a sale and, by law, is required to maintain such information for three years to comply with regulatory requirements. Not all brokers are covered Businesses, however, and those that are not, do not have to comply with the CCPA.

Similarly, most MLSs will not be considered a covered Business. Instead, the MLS may be considered a Third Party in the event a covered Business (ex: brokerages, real estate listing aggregation or advertising internet sites or other outlets who meet the criteria of covered Businesses) exchanges personal information with the MLS. You do not have the right under the CCPA to require a Third Party to delete your personal information. And like real estate brokerages, even if an MLS is a covered Business, MLSs are also required by law to retain and make accessible in its computer system any and all listing and other information for three years.

Whether an MLS is a covered Business or a Third Party, you have a right to be notified about the sharing of your personal information and your right to contact a covered Business to opt out of your personal information being used, or shared with Third Parties. Since the MLSs and/or other entities receiving your personal information do not have direct contact with buyers and sellers and also may not be aware of which entities exchanging personal information are covered Businesses, this form is being used to notify you of your rights under the CCPA and your ability to direct requests to covered Businesses not to share personal information with Third Parties. One way to limit access to your personal information, is to inform your broker or salesperson you want to opt-out of the MLS, and if so, you will be asked to sign a document (Form SELM) confirming your request to keep your listing off the MLS. However, if you do so, it may be more difficult to sell your property or obtain the highest price for it because your property will not be exposed to the greatest number of real estate licensees and others.

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory.**

Buyer/Seller/Landlord/Tenant _redacted_ _____ Date 12/02/2021

Buyer/Seller/Landlord/Tenant _redacted_ _Hannah Kadadu Sadleir_ ___ Date 12/24/2021
2F4EF1AAD8454EE...

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**CCPA 12/19 (PAGE 1 OF 1)**

## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)





## ADDENDUM

**(C.A.R. Form ADM, Revised 12/15)**

No. _1_

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____ ,

dated _**December 1, 2021**_ , on property known as _**9135 Hazen Dr**_
_**Beverly Hills, CA  90210-1825**_

in which _____ redacted _____ _**and/or Assignee**_ _____ is referred to as ("Buyer/Tenant")

and _____ is referred to as ("Seller/Landlord").

_1) All times frames referenced in this Agreement, with the exception of the initial deposit, begin upon approval by the bankruptcy court instead of upon mutual acceptance._

_2) Ref Item 8B3 - The following items are included in the purchase of the property - All indoor/outdoor appliances, built-in or not (e.g. all refrigerators/wine refrigerators/all dishwashers/all washer/dryers, pizza ovens); audio/video equipment and components, all telephone equipment and components, all security system equipment and components, all potted plants, all fountains, all fire pits, all bathroom mirrors, all fireplace screens (freestanding and otherwise), gas cocks and andirons._

_3) Title - Title to be provided to Buyer hereunder shall be deemed not received unless and until Buyer has received the preliminary title report, along with a copy of all plotted easements and underlying documents/exceptions referenced on such report._

_4) Seller Materials - Upon acceptance, Seller shall deliver to Buyer any and all plans, permits, renderings, inspections, surveys, reports and other similar materials (collectively, "Seller Materials") regarding the Property which are in Seller's possession or control.  Upon close of escrow, all Seller Materials shall become Buyer's property._

_5) Sole Discretion - Buyer's approval of any items under Paragraph 14 shall be in Buyer's sole and unfettered discretion._

_6) If Seller enters into another agreement to sell/transfer the property to another party, Seller will pay Buyer a $250,000 penalty within 60 days of the date of this Agreement.  Said penalty will only be payable to the extent that the bankruptcy court and the DOJ approve this Agreement._

_7) Conflicts - To the extent the terms of this Addendum conflict with the terms of the remainder of this agreement, the terms of this Addendum shall control._

_____

_____

_____

_____

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date 12/02/2021                                     Date 12/24/2021

Buyer/Tenant __ redacted __                         Seller/Landlord _Hannah kadadu Sadleir_
                                                                    2F4EF1AAD8454EE...
__ redacted __ _**and/or Assignee**_

Buyer/Tenant _____      Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 12/15 (PAGE 1 OF 1)**

## ADDENDUM (ADM PAGE 1 OF 1)

## SELLER COUNTER OFFER No. 1

**May not be used as a multiple counter offer.**
(C.A.R. Form SCO, Revised 12/21)

Date _12/22/2021_

This is a counter offer to the Purchase Agreement, OR ☐ Buyer Counter Offer No.____, ☐ Other _____ ("Offer"),
dated _12/01/2021_ , on property known as _9135 Hazen Dr, Beverly Hills, CA  90210-1825_ ("Property"),
between _redacted and/or Assignee_ ("Buyer")
and _Temerity Trust Management LLC_ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **TERMS: The terms and conditions of the above referenced document are accepted subject to the following:**
   A. **The Liquidated Damages and Arbitration of Disputes paragraphs in the Offer each require initials by all Parties. If either of those paragraphs is not initialed by all Parties, that paragraph is excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.**
   B. **Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but initial and increased deposit amount(s) shall remain unchanged from the original Offer.**
   C. **OTHER TERMS:**

   _____
   _____
   _____
   _____
   _____

   D. The following attached documents are incorporated into this Seller Counter Offer when Signed and Delivered by both Parties (if both parties do not Sign and Deliver all attached addenda, then any acceptance of this Seller Counter Offer is not valid):
   [X] Addendum No. _1_ (C.A.R. Form ADM)
   ☐ Back Up Offer Addendum (C.A.R. Form BUO)
   ☐ Seller License to Remain in Possession Addendum (C.A.R. Form SIP) (occupancy up to 29 days)
   ☐ Seller Purchase of Replacement Property (C.A.R. Form SPRP)
   ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA)
   ☐ Residential Lease After Sale (C.A.R. Form RLAS) (occupancy for 30 or more days)
   ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
   [X] Other _Confirmation Real Estate Agency Relationship_    ☐ Other _____

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00 PM on the third Day after the date this Seller Counter Offer is signed in paragraph 4 (if more than one signature then, the last signature  date)(or by _____ ☐ AM/ ☐ PM on _____ (date)) **(i)** it is signed in paragraph 5 by Buyer and **(ii)** a copy of the Signed Seller Counter Offer is Delivered to Seller or Seller's Authorized Agent.
   B. OR If Seller withdraws this Seller Counter Offer anytime prior to Buyer's Acceptance by communicating withdrawal to Buyer or Buyer's Agent (C.A.R. Form WOO may be used).
   C. OR If Seller accepts another offer prior to Buyer's Acceptance of this Seller Counter Offer.

3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in 2A and 5. In such event, Seller is advised to withdraw this Seller Counter Offer before accepting another offer.

4. **OFFER: SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED. The terms and conditions of those documents are incorporated into this Seller Counter Offer unless Otherwise Agreed.**

   Seller _Hannah kadadu Sadleir_    _Temerity Trust Management LLC_ Date _12/22/2021_
   Seller _2F4EF1AAD8454EE..._    Date _____

5. **ACCEPTANCE: I/WE** accept the above Seller Counter Offer **(If checked [X] SUBJECT TO THE ATTACHED BUYER COUNTER OFFER)** _redacted_ receipt of a Copy.
   Buyer _redacted_    _and/or Assignee_ Date _12/23/2021_
   Buyer _____    Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Associa ion of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**SCO Revised 12/21 (PAGE 1 OF 1)**

## SELLER COUNTER OFFER (SCO PAGE 1 OF 1)

Douglas Elliman, 150 S El Camino Dr Ste 150 Beverly Hills CA 90212          Phone: 310.819.3250    Fax:          9135 Hazen Dr
Joshua Altman                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201    www.lwolf.com



CALIFORNIA
ASSOCIATION
OF REALTORS®

**BUYER COUNTER OFFER NO. 1**
(C.A.R. Form BCO, Revised 12/21)

Date  *December 23, 2021*

This is a counter offer to the Seller Counter Offer No.  _1_ , OR ☐ Seller Multiple Counter Offer No. ___, ☐ Other _____
("Offer"),
dated  *December 22, 2021* , on property known as  *9135 Hazen Dr, Beverly Hills, CA  90210-1825*  ("Property"),
between _____ redacted _____ *and/or Assignee* _____ ("Buyer")
and _____ *Temerity Trust Management LLC* _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1.  **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
    A. **The Liquidated Damages and Arbitration of Disputes Paragraphs in the Offer each require initials by all parties. If either of those paragraphs is not initialed by all parties, that paragraph is excluded from the final Agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.**
    B. **Unless Otherwise Agreed** in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but deposit amount(s) shall remain unchanged from the original Offer.
    C. **OTHER TERMS:**
       *See Addendum '1'*
       _____
       _____
       _____
       _____
       _____
       _____
       _____
    D. The following attached addenda are incorporated into this Buyer Counter Offer only when Signed by both Parties (if both Parties do not Sign and Deliver all attached addenda then any acceptance of this Buyer Counter Offer is not valid):
       ☒ Addendum No. *1*____  ☐ _____

2.  **EXPIRATION:** This Buyer Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
    A. Unless by 5:00 PM on the third Day after the date this Buyer Counter Offer is signed in paragraph 3 (if more than one signature then, the last signature date)(or ☐ by _____ ☐ AM/☐ PM on _____ (date)) **(i)** it is Signed in paragraph 4 by Seller and **(ii)** a copy of the Signed Buyer Counteroffer is Delivered to Buyer or Buyer's Authorized Agent.
    B. OR If Buyer withdraws this Buyer Counter Offer anytime prior to Seller's Acceptance by communicating withdrawal to Seller or Seller's Agent (C.A.R. Form WOO may be used).
3.  **OFFER: BUYER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED.**
    The terms ... of those documents are incorporated into this Buyer Counter Offer unless Otherwise Agreed.
    Buyer __ redacted __   redacted *and/or Assignee* Date 12/23/2021
    Buyer _____ Date _____
4.  **ACCEPTANCE: I/WE** accept the above Buyer Counter Offer and all Signed Addenda, if any, **(If checked** ☒ **SUBJECT TO THE ATTACHED SELLER COUNTER OFFER No.** _2_ **OR SELLER MULTIPLE COUNTER OFFER No.** _____ **)** and acknowledge receipt of a Copy.
    Seller *Hannah kadadu Sadleir*   *Temerity Trust Management LLC* Date 12/24/2021
    2F4EF1AAD8454EE...
    Seller _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Associa ion of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**BCO REVISED 12/21 (PAGE 1 OF 1)**

**BUYER COUNTER OFFER (BCO PAGE 1 OF 1)**



**ADDENDUM NO.** *1*
(C.A.R. Form ADM, Revised 12/21)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☒ Other *CAR Form BCO1* ,
dated _*December 23, 2021*_ , on property known as _*9135 Hazen Dr*_
_*Beverly Hills, CA 90210-1825*_ ("Property/Premises"),
in which [redacted] *and/or Assignee* is referred to as ("Buyer/Tenant")
and *Temerity Trust Management LLC* is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

*1) Ref Item 6 - Seller to be responsible*

*2) Ref Item 7 - Escrow to be Escrow of the West - Andrea Cross*

*3) Ref Item 9 - Seller to pay for one year home warranty plan*

*4) Ref Item 10 - The following items are included in the sale - All indoor/outdoor appliances, built-in or not (e.g. all refrigerators/wine refrigerators/all dishwashers/all washer/dryers, pizza ovens); audio/video equipment and components, all telephone equipment and components, all security system equipment and components, all potted plants, all fountains, all fire pits, all bathroom mirrors, all fireplace screens (freestanding and otherwise), gas cocks and andirons.*

*5) Ref Item 13 - Any assignee to be identified upon removal of all contingencies*

*6) Ref Item 14 - Any declaration/disclosure shall be provided to the Buyer within the time period delineated in Item 14A of the Purchase Agreement and to be approved by Buyer within the time period delineated in Item 14B1 of the Purchase Agreement.*

*7) If Seller enters into another agreement to sell/transfer the property to another party, Seller will pay Buyer a $250,000 penalty within 60 days of the date of this Agreement. Said penalty will only be payable to the extent that the bankruptcy court and the DOJ approve this Agreement.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant [redacted] _____ Date 12/23/2021

Buyer/Tenant [redacted] *and/or Assignee* _____ Date _____

Seller/Landlord *Hannah kadadu Sadleir* _____ Date 12/24/2021
*Temerity Trust Management LLC*

Seller/Landlord _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**ADM REVISED 12/21 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

# ADDENDUM NO. *1*

**(C.A.R. Form ADM, Revised 12/21)**

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may cause the Buyer a right to rescind), ☒ Other *Seller Counter Offer No. 1*                                                                                   , dated *December 22, 2021* , on property known as                          *9135 Hazen Dr*
                                   *Beverly Hills, CA  90210-1825*                                    ("Property/Premises"), in which _____redacted_____ *and/or Assignee*                               is referred to as ("Buyer/Tenant") and                          *Temerity Trust Management LLC*                          is referred to as ("Seller/Landlord"). Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

*1. The acceptance of this offer is subject to Bankruptcy and District Court approvals.*

*2. Addendum No. 1 to the RPA to be deleted in its entirety.*

*3. All time frames referenced in the Residential Purchase agreement dated December 1, 2021, with the exception of the initial deposit shall begin upon approval by both Bankruptcy and District Court approvals instead of mutual acceptance.*

*4. The Property is sold in its current AS-IS condition without further warranties.  There will be no credit given to Buyer in lieu of any repairs.*

*5. RPA Item 3.J (4): There is no loan contingency.*

*6. RPA Item 7.B: Buyer to be responsible for all government requirements and retrofit.*

*7. RPA Item 7.C- Escrow company to be Corner Escrow (Gracie Jaramillo) and Title to be Fidelity National (Brandon Miller).*

*8. RPA Item 7.D (3-7): Uncheck seller box. There is no HOA or private transfer fees.*

*9. RPA Item 7.D (10): Buyer waives the purchase of a home warranty plan.*

*10. RPA Item 8.B (items Included in Sale) includes only those items that constitute real estate or real estate fixtures.  To the extent any of those items constitute non-fixture personal property, those are not included in the sale under this Residential Purchase Agreement.  Any purchase of non-fixture personal property shall be done through a separate transaction between Buyer and Hannah Kadadu Sadleir concurrent with and conditioned on the close of escrow.*

*11. RPA Item 8.C: Uncheck box.  Seller will not remove holes from brackets attached to walls or artwork.*

*12. Seller, Temerity Trust Management LLC will use reasonable efforts to obtain bankruptcy court approval of the sale as a private sale.*

*13. If Buyer intends to close escrow under a corporation, LLC entity, or a trust, Buyer to identify the name prior to acceptance of this offer.*

*14. As part of obtaining bankruptcy court approval, Buyer to cooperate with the court that the purchase agreement has been negotiated in good faith, which may require signing of a declaration and/or providing disclosures.*

*15. Expiration of Residential Purchase Agreement dated 12/1/2021 is hereby extended to make this Seller Counter Offer No. 1 acceptance valid.*

_____

_____

**The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.**

Buyer/Tenant ___redacted_____ Date *12/23/2021*

Buyer/Tenant ___redacted___ *and/or Assignee*_____ Date _____

Seller/Landlord _*Hannah Kadadu Sadleir*_____ Date *12/22/2021*
              DocuSigned by:
              ⎣2F4EF1AAD8454EE...⎦
*Temerity Trust Management LLC*

Seller/Landlord _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 12/21 (PAGE 1 OF 1)**



**ADDENDUM (ADM PAGE 1 OF 1)**

DocuSign Envelope ID: A3893991-2873-4122-9D52-982F47D085B3



# CONFIRMATION OF REAL ESTATE AGENCY RELATIONSHIPS

CALIFORNIA
ASSOCIATION
OF REALTORS®

(As required by the Civil Code)
(C.A.R. Form AC, Revised 12/18)

Subject Property Address _____ *9135 Hazen Dr, Beverly Hills, CA  90210-1825* _____

This is (or ☐ is NOT) an amendment to, and supersedes, the agency confirmation in the purchase agreement.

**The following agency relationship(s) is/are hereby confirmed for this transaction:**

**CONFIRMATION:** The following agency relationships are confirmed for this transaction:
**Seller's Brokerage Firm** _____ *Douglas Elliman* _____ License Number  *01947727*
Is the broker of (check one) ☒ the seller/landlord; or  ☐ both the buyer/tenant and seller/landlord. (dual agent)
Seller's Agent _____ *Josh and Matthew Altman* _____ License Number  *01764587 &*
Is (check one) ☒ the Seller's/Landlord's Agent. (salesperson or broker associate)  ☐ both the Buyer's/Tenant's and
Seller's/Landlord's Agent (dual agent).

**Buyer's Brokerage Firm** _____ *The Agency* _____ License Number  *01904054*
Is the broker of (check one) ☒ the buyer/tenant; or  ☐ both the buyer/tenant and seller/landlord (dual agent)
Buyer's Agent _____ *David Parnes and James Harris* _____ License Number  *01905862 & 0190980*
Is (check one) ☒ the Buyer's/Tenant's Agent. (salesperson or broker associate)  ☐ both the Buyer's/Tenant's and
Seller's/Landlord's Agent (dual agent).

I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS CONFIRMATION.

Seller/Landlord _____ *Hannah Kadadu Sadleir* _____ Date 12/22/2021
*Temerity Trust Management LLC*

Seller/Landlord _____ Date _____

Buyer/Tenant [redacted] Date 12/23/2021

Buyer/Tenant [redacted] *and/or Assignee* Date _____

Seller's Brokerage Firm _____ *Douglas Elliman* _____

By _____ *Josh Altman Matthew Altman* _____ Date 12/22/2021
*Josh and Matthew Altman* 9312EAEA728E4B3...

Buyer's Brokerage Firm _____ *The Agency* _____

By _____ *James Harris* _____ Date 12/23/2021
*David Parnes and James Harris* 12/23/2021

**A REAL ESTATE BROKER IS QUALIFIED TO ADVISE ON REAL ESTATE. IF YOU DESIRE LEGAL ADVICE,
CONSULT YOUR ATTORNEY.**

© 2018, California Association of REALTORS®, Inc.  United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**AC REVISED 12/18 (PAGE 1 OF 1)**
**CONFIRMATION REAL ESTATE AGENCY RELATIONSHIPS (AC PAGE 1 OF 1)**

Douglas Elliman, 150 S El Camino Dr Ste 150 Beverly Hills CA 90212        Phone: 310.819.3250        Fax:                    9135 Hazen Dr
Joshua Altman                    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

DocuSign Envelope ID: 5E403A9E-96B6-4D49-9AFE-D3AE7299487E

# SELLER COUNTER OFFER No. 2

**May not be used as a multiple counter offer.**
(C.A.R. Form SCO, Revised 12/21)

Date _12/24/2021_

This is a counter offer to the Purchase Agreement, OR [X] Buyer Counter Offer No. _1_, [ ] Other _____ ("Offer"),
dated _12/23/2021_, on property known as _9135 Hazen Dr, Beverly Hills, CA  90210-1825_ ("Property"),
between ____redacted____ _and/or Assignee_ _____ ("Buyer")
and _Temerity Trust Management LLC_ _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **TERMS: The terms and conditions of the above referenced document are accepted subject to the following:**
   A. **The Liquidated Damages and Arbitration of Disputes paragraphs in the Offer each require initials by all Parties. If
   either of those paragraphs is not initialed by all Parties, that paragraph is excluded from the final agreement unless
   specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.**
   B. **Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in
   the original Offer, but initial and increased deposit amount(s) shall remain unchanged from the original Offer.**
   C. **OTHER TERMS:**
   _____
   _____
   _____
   _____
   _____
   _____

   D. The following attached documents are incorporated into this Seller Counter Offer when Signed and Delivered by both Parties
   (if both parties do not Sign and Deliver all attached addenda, then any acceptance of this Seller Counter Offer is not valid):
   [X] Addendum No. _1_ (C.A.R. Form ADM)
   [ ] Back Up Offer Addendum (C.A.R. Form BUO)
   [ ] Seller License to Remain in Possession Addendum (C.A.R. Form SIP) (occupancy up to 29 days)
   [ ] Seller Purchase of Replacement Property (C.A.R. Form SPRP)
   [ ] Tenant Occupied Property Addendum (C.A.R. Form TOPA)
   [ ] Residential Lease After Sale (C.A.R. Form RLAS) (occupancy for 30 or more days)
   [ ] Seller Intent to Exchange Addendum (C.A.R. Form SXA)
   [ ] Other _____  [ ] Other _____

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00 PM on the third Day after the date this Seller Counter Offer is signed in paragraph 4 (if more than one signature
   then, the last signature date)(or by _5_ [ ] AM/ [X] PM on _01/03/2022_ (date)) **(i)** it is signed in paragraph 5 by Buyer and
   **(ii)** a copy of the Signed Seller Counter Offer is Delivered to Seller or Seller's Authorized Agent.
   B. OR If Seller withdraws this Seller Counter Offer anytime prior to Buyer's Acceptance by communicating withdrawal to Buyer or
   Buyer's Agent (C.A.R. Form WOO may be used).
   C. OR If Seller accepts another offer prior to Buyer's Acceptance of this Seller Counter Offer.
3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to
   accept any other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in 2A and 5. In such event,
   Seller is advised to withdraw this Seller Counter Offer before accepting another offer.
4. **OFFER: SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED.**
   The terms and conditions of those documents are incorporated into this Seller Counter Offer unless Otherwise Agreed.
   Seller _Hannah kadadu Sadleir_ _Temerity Trust Management LLC_ Date _12/24/2021_
   2F4EE1AAD8454EE
   Seller _____ Date _____
5. **ACCEPTANCE: I/WE** accept the above Seller Counter Offer **(If checked [ ] SUBJECT TO THE ATTACHED BUYER COUNTER
   OFFER** ____redacted____) receipt of a Copy.
   Buyer _____ ____redacted____ _and/or Assignee_ Date _12/24/2021_
   Buyer _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this
form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE
CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC
TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE,
CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California
Associa ion of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by
members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**SCO Revised 12/21 (PAGE 1 OF 1)**

## SELLER COUNTER OFFER (SCO PAGE 1 OF 1)

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# ADDENDUM NO. _1_
**(C.A.R. Form ADM, Revised 12/21)**

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may cause the Buyer a right to rescind), ☒ Other *Seller Counter Offer No. 2* ,
dated *December 24, 2021* , on property known as *9135 Hazen Dr*
*Beverly Hills, CA  90210-1825* ("Property/Premises"),
in which ▉redacted▉ *and/or Assignee* is referred to as ("Buyer/Tenant")
and *Temerity Trust Management LLC* is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

*1. RPA Item 7.C: Escrow company to be Corner Escrow (Gracie Jaramillo), Escrow fees not to exceed $0.75 per $1,000. To the extent the District Court and/or Department of Justice objects to the nominated Escrow, the Buyer and Seller shall discuss in good faith moving to an alternative arrangement that satisfies the District Court's requirements.*

*2. RPA Item 7.D (10): Seller to pay for home warranty plan not to exceed $2,000 at the close of escrow.*

*3. RPA Item 8.B (items Included in Sale):  The following items are included in the sale to the extent they constitute real estate or real estate fixtures:  All indoor/outdoor major appliances, built-in or not (e.g., all refrigerators/wine refrigerators/all dishwaters/all washer/dryers, pizza ovens); built-in audio/video equipment and all related components, all telephone equipment and components, all security system equipment and components, all potted plants, all fire pits, all bathroom mirrors, all fireplace screens (freestanding and otherwise), gas cocks and andirons.  To the extent any of those items are not real estate or real estate fixtures, they are included in a separate sale transaction between Buyer and Hannah Kadadu Sadleir concurrent with and conditioned on the close of escrow under this Residential Purchase Agreement.*

*4. All time frames referenced in the Residential Purchase Agreement dated December 1, 2021 shall begin upon Acceptance of this agreement.  If Close of Escrow does not occur due to the fault of Seller, the Bankruptcy Court denies approval of this sale, or the District Court does not approve the stipulation to permit Cairn to assert its lien and Seller to sell the Property, Seller to reimburse buyer's inspection costs not to exceed $20,000 upon fully executed Cancellation of Escrow.  If Buyer fails to close escrow for any other reason, Buyer is solely responsible for any and all costs associated with Buyer's due diligence.*

*5. Close of Escrow to be 5 business days after the latest approval from Bankruptcy Court, District Court, and Title company but not prior to 25 days from acceptance.*

*6. Addendum #1 to BCO #1 (Item 7) to be deleted in its entirety.*
*7. If Buyer intends to close escrow under a corporation, LLC entity, or a trust, Buyer to identify the name within 5 business days of the offer being accepted.  Buyer approves the Seller filing this agreement (and any nominee or assignee subsequently notified by the Buyer) as part of the bankruptcy court motion, which is expected to be for public record.*

**The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.**

Buyer/Tenant ▉redacted▉ Date 12/24/2021

Buyer/Tenant ▉redacted▉ *and/or Assignee* Date _____

Seller/Landlord *Hannah Kadadu Sadleir* Date 12/24/2021
*Temerity Trust Management LLC*  DocuSigned by: ...0EF1AAD8454EE...

Seller/Landlord _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized display, distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**ADM REVISED 12/21 (PAGE 1 OF 1)**

## ADDENDUM (ADM PAGE 1 OF 1)

Douglas Elliman, 150 S El Camino Dr Ste 150 Beverly Hills CA 90212          Phone: 310.819.3250      Fax:          9135 Hazen Dr
Joshua Altman                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com

# EXHIBIT "4"

1  David B. Golubchik (State Bar No. 185520)
   Kurt Ramlo (State Bar No. 166856)
2  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Avenue
3  Los Angeles, California 90034
   Telephone:  (310) 229-1234
4  Facsimile:  (310) 229-1244
   Email: KR@LNBYG.com
5
   Attorneys for Temerity Trust Management, LLC,
6  Debtor and Debtor in Possession

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  (LOS ANGELES DIVISION)

11  In re:                              Case No. 2:20-bk-15015-BR

12  TEMERITY TRUST MANAGEMENT,          Chapter 11
    LLC, aka Temerity Management, LLC,
13
          Debtor and Debtor in Possession.   **Order Granting Debtor's Motion for Order:**
14
                                        **(1)  Approving Compromise with Cairn**
15                                      **      Capital;**
                                        **(2)  Approving Compromise with United**
16                                      **      States of America, and Cairn Capital;**
                                        **(3)  Approving Related Marketing, Bidding,**
17                                      **      and Sale Procedures;**
                                        **(4)  and**
18                                      **(5)  Providing Related Relief**

19                                      Date:   February 15, 2022
                                        Time:   2:00 p.m.
20                                      Place:  Courtroom 1668
                                                255 East Temple Street
21                                              Los Angeles, California 9001

22

23

24         A hearing was held at the above-referenced date, time, and location for the Court to

25  consider the *Motion for Order: (1) Approving Compromise with Cairn Capital; (2) Approving*

26  *Compromise with United States of America and Cairn Capital; (3) Approving Private Sale of*

27  *Real Property; (4) Approving Backup Marketing, Bidding, and Sale Procedures; (5) Waiving 14-*

28

                                        1

*Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (6) Providing Related Relief* (ECF ___, the "**Motion**") filed by Temerity Trust Management, LLC, aka Temerity Management, LLC, chapter 11 debtor and debtor in possession in the above-entitled bankruptcy case ("**Temerity**" and/or the "**Debtor**"), under to 11 U.S.C. §§ 105(a), 363(b), (f), and (m) of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "**FRBP**"), and any applicable Local Bankruptcy Rules (the "**LBR**").  Appearances were made as set forth on the record of the Court.

Upon consideration of (1) the Notice of Motion (ECF ___), (2) the Motion and the memorandum of points and authorities, declarations, and exhibits attached to, and in support of, the Motion (together, the "**Memorandum, Declarations, and Exhibits**"), (3) any oppositions to the Motion, (4) all other evidence duly admitted by the Court in connection with consideration of the foregoing, (5) the entire record in this case, and (6) the arguments and statements of counsel made at the hearing on the Motion.  Any capitalized terms not defined herein have the meanings given them in the Motion.

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**[1]

1.      The findings and conclusions set forth in this order (the "**Order**") constitute the Court's findings of fact and conclusions of law pursuant to FRBP 7052, made applicable to this proceeding pursuant to FRBP 9014.

2.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3.      Under 28 U.S.C. §§ 157 and 1334, the Court has jurisdiction over (1) this matter, (2) the property of the Debtor's estate, including the residence and fixtures (including, but not limited to, the chandeliers) owned by the Debtor and located at 9135 Hazen Drive, Beverly Hills,

---

[1]  All findings of fact and conclusions of law announced by the Court at the hearing relating to the Motion and the matters addressed by this Order are hereby incorporated herein to the extent not inconsistent with this Order.

CA 90210 (the "**Real Property**"), (3) the Debtor's proposed entry into and performance of the (i) the *Consent Order of Interlocutory Sale of Real Property* (the "**Consent Order**") among the Debtor, the United States of America, and Cairn Capital Investment Funds ICAV, for its sub fund Cairn Capstone Special Opportunities Fund ("**Cairn**"), entered, or to be entered, in *United States v. Sadleir*, Case No. 20 Cr. 320, pending in the United States District Court for the Southern District of New York (the "**District Court**") and (ii) the *Settlement Agreement and General Release* (the "**Settlement Agreement**") between the Debtor and Cairn, and (4) the proposed marketing, bidding, and sale procedures set forth below (the "**Sale Procedures**").

4.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.    Venue of the Debtor's chapter 11 case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.    The statutory and other predicates for the relief sought in the Motion are (1) 11 U.S.C. §§ 105 and 363, (2) FRBP 2002, 6004, 9006, 9007, 9014, and 9019, and (3) any applicable LBRs.

7.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

8.    Notwithstanding FRBP 6004(h), and to any extent necessary under FRBP 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by FRBP 7054 and 9014, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and this Order shall be effective immediately upon entry.

9.    Notice of the Motion was provided, and a reasonable opportunity to object or be heard regarding relief requested by the Motion, was afforded to all interested persons and entities, including, without limitation: (1) the Office of the United States Trustee, (2) all of the Debtor's known creditors, and (3) all parties requesting special notice.

10.    As evidenced by the proofs of service filed with the Court, proper, timely, adequate, and sufficient notice of the Motion was provided in accordance with Sections 102(1),

105(a), and 363(b), FRBP 2002, 6004, 9006, 9007, and 9014, the applicable LBRs, and the procedural due process requirements of the United States Constitution.

11.     The Debtor's notice of the Motion was reasonably calculated to provide all interested parties with timely and proper notice of (1) the proposed compromises set forth in the Consent Order and the Settlement Agreement, (2) the proposed Sale Procedures, and (3) the hearing for the Court to approve the Consent Order, the Settlement Agreement, and the proposed Sale Procedures.

12.     The disclosures made by the Debtor concerning the Motion, the Consent Order, the Settlement Agreement, proposed Sale Procedures, and the concurrent marketing and sale of personal property (but excluding fixtures) located at the Real Property by the Debtor's principal and her spouse were sufficient, complete, and adequate.

13.     A proposed sale of the Real Property has been approved by separate order.  If that sale does not timely close, the Debtor is authorized to proceed with the Sale Procedures set forth below.

14.     The following Sale Procedures are approved:

a.     The Debtor may market the Real Property for sale in accordance with the Consent Order and Settlement Agreement.

b.     The Real Property will be marketed by the Altman Brothers (www.thealtmanbrothers.com), subject to the approval of the terms of such retention by the Bankruptcy Court and Cairn (the "**Broker**").  Total commission will be no more than 5%, to be allocated and paid to the Broker and buyer's agent, provided, however, that no commission shall be payable if the Real Property is transferred to Cairn or one or more of its assignees or designees through a credit bid made in accordance with the Settlement Agreement.

c.     The marketing of the Real Property will begin as soon as practicable, but no later than the later of (i) five (5) business days after the entry of this Order and (ii) this Court's approval of the Debtor's retention of the Broker (the "**Start Deadline**"), and will

4

last up to the later of (i) one hundred fifty (150) days after the Start Deadline and June 15, 2022 (the "**Sale Period**") except to the extent otherwise provided herein.  The Broker shall provide Cairn with (i) a list of all parties inquiring about the Real Property on a weekly basis, (ii) copies of all proposals, indications of interest, offers and bids and (iii) a weekly telephonic update concerning the Broker's marketing efforts.

d.    William K. Sadleir and Hanan Kadadu (the "**Residents**") shall cooperate with the marketing of the Real Property.  Such cooperation shall include, but not be limited to, allowing showings during normal business hours and vacating the Real Property during all such showings, including any open house showings.  The Broker shall give the Residents reasonable notice of all such showings.  The Residents shall permanently vacate the Real Property and remove all of their personal property therefrom no later than the earlier of (i) five (5) days before the closing of the sale of the Real Property in conformance herewith (including a credit bid) and (ii) the first day upon which no qualifying bid meeting the Reserve Price is pending beginning June 15, 2022.

e.    All bidders, in connection with delivery of a written bid in form and substance customary and appropriate for transactions of this type and delivered prior to the earlier of the expiry of the Sale Period and the Debtor's acceptance of a purchase offer, which acceptance is subject to Cairn's approval, which will not be unreasonably withheld, must provide (i) proof of immediately available funds to finance the purchase of the Real Property and (ii) a deposit into an escrow account, with an escrow company acceptable to the Debtor, Cairn, and the United States (the "**Escrow Account**"), of at least 5% of the bid amount as a condition of being a qualifying bid.  Where doing so may maximize the expected sales price, a stalking horse bidder may be utilized.

f.    The minimum bid for the Real Property (the "**Reserve Price**") shall be the amount listed on **Exhibit 1** that has been filed under seal.  If no qualifying bids meeting the Reserve Price are received within the Sale Period pursuant to Subparagraph 4(d) above, upon or after the expiry of the Sale Period, Cairn (or one or more of its assignees or

designees) shall have the right to (i) credit bid Cairn's debt without the need for an auction for the fair market value of the Real Property to be determined by the Court unless the Debtor and Cairn agree on the fair market value, (ii) waive the Reserve Price and accept a bid below the Reserve Price or (iii) extend the Sale Period (and all applicable deadlines, including Cairn's right to credit bid) for up to one year without further order of the Court. Cairn shall make its election between options (i)-(iii) in this subparagraph as soon as practicable after expiry of the Sale Period.  Cairn will not have the ability to credit bid, if one or more qualifying bids meeting the Reserve Price are received within the Sale Period and the transaction contemplated by such bid is consummated in accordance with the terms of the Consent Order, the Settlement Agreement, and this Order.

g.    If there are two or more qualifying bids submitted in accordance with Subparagraphs 4(d)-(e), an auction shall be conducted for the sale of the Real Property within ten (10) days of the close of the Sale Period, subject to Subparagraph 5(g) below. In this instance, the Debtor must provide notice to the qualifying bidders and all parties in interest of the date, time, and location of the auction immediately after the expiry of the Sale Period, which notice must include the Initial Overbid Amount that is calculated by adding $100,000 to the purchase price stated in the highest qualifying bid received during the Sale Period.  The auction shall be conducted by the Court unless the Debtor and Cairn agree that the Debtor shall conduct the auction.

h.    To participate in any auction of the Real Property, each prospective buyer who did not submit a qualifying bid during the Sale Period (an "**Overbidder**") must at least three (3) calendar days before the auction provide a written overbid ("**Overbid**") that (i) constitutes a qualifying bid under Subparagraph 4(d), (ii) is at least equal to the Initial Overbid Amount, and (iii) agrees that the Overbidder's deposit will be non-refundable and will be paid to Cairn from the Escrow Account if the prospective Overbidder is the winning bidder at the Auction and fails to close the purchase of the Real Property within thirty days following the date of entry of the Sale Order – regardless of whether an appeal

6

has been filed from the Sale Order, provided there is no entered stay pending appeal of the Sale Order (i.e., there is no final order condition on the duty to close the purchase). If Cairn acquires the Property with a credit bid, then the Debtor will retain up to $400,000 of the forfeited deposit for the Temerity Incentive Payment (as defined in the Settlement Agreement) and the remainder will be paid to Cairn (including, but not limited to, any remaining amounts from the Temerity Incentive Payment after creditors are paid). If the Property is sold to another bidder, the Debtor will retain $400,000 of the forfeited deposit as the Temerity Incentive Payment and the remainder will be paid to Cairn (including, but not limited to, any remaining amounts from the Temerity Incentive Payment after creditors are paid).

      i.     **The terms of Subparagraph 4(h)(iii) above will be deemed to apply upon submission of a written Overbid whether or not the Overbid states the terms**.

      j.     Subsequent overbids at the auction ("**Auction Overbids**") must be in increments of $100,000 or amounts that are wholly divisible by $100,000, provided, however, that Cairn may waive this minimum amount if necessary in its sole discretion to obtain a higher and better bid. The Debtor, in consultation with its professionals and Cairn, will select the highest and best offer and recommend Court approval of the sale of the Real Property to the qualified Overbidder that, in the opinion of the Debtor, in consultation with its professionals and Cairn, has made the highest and best offer for the Real Property.

      k.     If the Debtor concludes, with Cairn's written consent to be given or withheld in its sole discretion, that (1) the Real Property has been adequately marketed in a fair, proper, and reasonably calculated manner that will result in the best value for the Real Property, and (2) a qualified bid constitutes a higher and better bid than likely could be obtained through the overbid and auction process described below, then the Debtor may bring a motion for approval of a sale of the Real Property to such a bidder.

l.      Notwithstanding anything to the contrary in this Order, the Debtor must accept an offer for the Real Property and promptly seek Court approval of such offer without the need for an auction even if the Sale Period has not concluded if (i) the offer is approved by Cairn and (ii) the Broker informs the Debtor that there is no realistic probability that the Debtor will receive an offer exceeding the amount of the Cairn Claim as defined in the Settlement Agreement.  Cairn shall have the immediate right to seek specific performance in this Court to consummate such a sale if the Debtor refuses.  The terms of this paragraph do not constitute pre-approval of any such sale, which will remain subject to all applicable standards otherwise governing a private sale of the Real Property in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law or procedure.  Otherwise, the marketing and sale of the Real Property is subject to the Overbid Procedures.

15.     As soon as possible following the selection of a buyer pursuant to the foregoing procedures, the parties will seek a Court order approving the sale of the Real Property.

16.     The Sale Procedures are reasonable and intended to ensure that the highest and best price for the Real Property will be obtained by the estate, while still protecting the estate from parties who may wish to bid on the Real Property but who are ultimately unable to consummate a purchase of the Real Property.

17.     Approval of the Motion, the Consent Order, the Settlement Agreement, and the consummation of the transactions contemplated thereby are in the best interests of the Debtor, its bankruptcy estate, creditors, and stakeholders, and other parties in interest.

18.     The Consent Order and Settlement Agreement were negotiated and entered into in good faith, based upon arm's-length bargaining and negotiation, and without collusion or fraud of any kind.

19.     Upon entry of this Order, the Debtor's execution of the Consent Order and the Settlement Agreement is approved, and the Debtor is authorized to consummate the transactions contemplated by the Consent Order and Settlement Agreement and to sign any and all documents

1  necessary to enable the Debtor to consummate the transactions contemplated by the Consent

2  Order and Settlement Agreement.

3       20.    To the extent FBBP 6004(h) applies, cause has been shown as to why this Order

4  should not be subject to the stay provided by FRBP 6004(h), which is hereby waived.

5  # # #

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**

(FILED UNDER SEAL)

**EXHIBIT "5"**

1  Kurt Ramlo (State Bar No. 166856)
   LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
2  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
3  Telephone:  (310) 229-1234
   Facsimile:  (310) 229-1244
4  Email: KR@LNBYB.com

5  Attorneys for Debtor and Debtor in Possession

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                      **Los Angeles Division**

11  | In re:                                         | Case No. 2:20-bk-15015-BR |

12  TEMERITY TRUST MANAGEMENT,                        Chapter 11
    LLC, aka Temerity Management, LLC,
13
                                                      **Order Granting Debtor's Motion for Order:**
14        Debtor and Debtor in Possession.
                                                      **(1)  Approving Sale of Debtor's Real
15                                                          Property;**
                                                      **(2)  Finding That Buyer Is Good Faith
16                                                          Purchaser;**
                                                      **(3)  Authorizing and Approving Payment of
17                                                          Certain Claims and Disbursements from
                                                            Sale Proceeds;**
18                                                    **(4)  Waiving 14-Day Stay Period Set Forth in
                                                            Bankruptcy Rule 6004(h); and**
19                                                    **(5)  Providing Related Relief**

20
                                                      Date:    February 15, 2022
21                                                    Time:    2:00 p.m.
                                                      Place:   Courtroom 1668
22                                                             255 East Temple Street
                                                               Los Angeles, California 9001
23

24        A hearing was held at the above-referenced date, time, and location for the Court to

25  consider the *Motion for Order: (1) Approving Compromise with Cairn Capital; (2) Approving*

26  *Compromise with United States of America and Cairn Capital; (3) Approving Private Sale of*

27  *Real Property; (4) Approving Backup Marketing, Bidding, and Sale Procedures; (5) Waiving 14-*

28  *Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (6) Providing Related Relief* (ECF

1   ___, the "**Motion**") filed by Temerity Trust Management, LLC, aka Temerity Management,

2   LLC, chapter 11 debtor and debtor in possession in the above-entitled bankruptcy case

3   ("**Temerity**" and/or the "**Debtor**"), under to 11 U.S.C. §§ 105(a), 363(b), (f), and (m) of the

4   Bankruptcy Code, 11 U.S.C. §§ 101-1532, Rules 2002 and 6004 of the Federal Rules of

5   Bankruptcy Procedure (the "**FRBP**"), and any applicable Local Bankruptcy Rules (the "**LBR**").

6   Appearances were made as set forth on the record of the Court.

7         Upon consideration of (1) the Notice of Motion (ECF ___), (2) the Motion and the

8   memorandum of points and authorities, declarations, and exhibits attached to, and in support of,

9   the Motion (together, the "**Memorandum, Declarations, and Exhibits**"), (3) any oppositions to

10  the Motion, (4) all other evidence duly admitted by the Court in connection with consideration of

11  the foregoing, (5) the entire record in this case, and (6) the arguments and statements of counsel

12  made at the hearing on the Motion.  Any capitalized terms not defined herein have the meanings

13  given them in the Motion.

14        **IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**[1]

15        1.      The findings and conclusions set forth in this order (the "**Sale Order**") constitute

16  the Court's findings of fact and conclusions of law pursuant to FRBP 7052, made applicable to

17  this proceeding pursuant to FRBP 9014.

18        2.      To the extent any of the following findings of fact constitute conclusions of law,

19  they are adopted as such, and to the extent any of the following conclusions of law constitute

20  findings of fact, they are adopted as such.

21        3.      Under 28 U.S.C. §§ 157 and 1334, the Court has jurisdiction over this matter and

22  over the property of the Debtor's estate, including the residence owned by the Debtor and located

23  at 9135 Hazen Drive, Beverly Hills, CA 90210 (the "Real Property"), to be sold, transferred, and

24  conveyed to 9135 Hazen Drive, LLC ("**Buyer**") pursuant to (1) the *California Residential*

25

26

---

27  [1]  All findings of fact and conclusions of law announced by the Court at the hearing relating to
    the Motion and the matters addressed by this Sale Order are hereby incorporated herein to the
28  extent not inconsistent with this Sale Order.

*Purchase Agreement and Joint Escrow Instructions* (the "**Purchase Agreement**") between the Debtor and Buyer.

       4.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

       5.      Venue of the Debtor's chapter 11 case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

       6.      The statutory and other predicates for the relief sought in the Motion are (1) 11 U.S.C. §§ 105 and 363, (2) FRBP 2002, 6004, 9006, 9007, and 9014, and (3) any applicable LBRs.

       7.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

       8.      Notwithstanding FRBP 6004(h), and to any extent necessary under FRBP 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by FRBP 7054 and 9014, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and this Sale Order shall be effective immediately upon entry.

       9.      Notice of the Motion was provided, and a reasonable opportunity to object or be heard regarding relief requested by the Motion, was afforded to all interested persons and entities, including, without limitation: (1) the Office of the United States Trustee, (2) all of the Debtor's known creditors, including (a) all alleged creditors with claims purportedly secured by the Real Property, which, based on the Title Report attached hereto as **Exhibit A**, are limited to (i) Cairn Capital Investment Funds ICAV, for its sub fund Cairn Capstone Special Opportunities Fund ("**Cairn Capital**"), (ii) _____, and (3) all parties requesting special notice.

       10.     As evidenced by the proofs of service filed with the Court, proper, timely, adequate, and sufficient notice of the Motion was provided in accordance with Sections 102(1), 105(a) and 363(b), FRBP 2002, 6004, 9006, 9007, and 9014, the applicable LBRs, and the procedural due process requirements of the United States Constitution.

       11.     The Debtor's notice of the Motion was reasonably calculated to provide all interested parties with timely and proper notice of (1) the proposed sale of the 9135 Hazen Drive,

1   Beverly Hills, California  90210 (the "Beverly Hills Property") to the Buyer and (2) the hearing

2   for the Court to approve the Debtor's proposed sale of the Beverly Hills Property to the Buyer.

3          12.    The disclosures made by the Debtor concerning the Motion, the Purchase

4   Agreement, the proposed sale of the Beverly Hills Property to the Buyer, and the concurrent

5   marketing and sale of personal property (but excluding fixtures) located at the Beverly Hills

6   Property by the Debtor's principal and her spouse were sufficient, complete, and adequate.

7          13.    The Beverly Hills Property was sufficiently marketed by the Debtor and its

8   former prospective broker, The Agency, and its current broker, the Altman Brothers.

9          14.    The Debtor and its professionals conducted a sale process in good faith.

10          15.    The Debtor and its professionals marketed the Beverly Hills Property and

11   conducted a sale process in substantial compliance with the Bankruptcy Code and applicable

12   law.

13          16.    The sale process implemented by the Debtor under the facts and circumstances of

14   this case was conducted in a fair, proper, and reasonably calculated manner designed to result in

15   the best value received for the Beverly Hills Property.  The Debtor conducted the sale process in

16   good faith and without collusion.

17          17.    It was a reasonable exercise of the Debtor's business judgment to sell the Beverly

18   Hills Property to the Buyer pursuant to the Motion and the Purchase Agreement.

19          18.    The offer of the Buyer, upon the terms and conditions set forth in the Purchase

20   Agreement, including the total consideration to be realized by the Debtor pursuant to the

21   Purchase Agreement, specifically the purchase price of $14,150,000 (the "**Purchase Price**") for

22   the Beverly Hills Property (1) is fair and reasonable, (2) is in the best interests of the Debtor, its

23   bankruptcy estate, and the creditors and other stakeholders of the bankruptcy estate, and

24   (3) constitutes full and adequate consideration and reasonably equivalent value for the Beverly

25   Hills Property under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform

26   Fraudulent Conveyance Act, and any other applicable laws of the United States, any state,

27   territory or possession, or the District of Columbia.

28

19.     Approval of the Motion, the Purchase Agreement, and the consummation of the transactions contemplated thereby are in the best interests of the Debtor, its bankruptcy estate, creditors and stakeholders, and other parties in interest.

20.     The Buyer is not an "insider" of the Debtor, as that term is defined in Bankruptcy Code Section 101(31).  The Buyer is buying the Beverly Hills Property in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Section 363(m).  The Buyer has proceeded in good faith in all respects in connection with the Debtor's chapter 11 case in that, among other things: (1) the Purchase Agreement is the result of arm's-length bargaining and negotiations between the Buyer and the Debtor, (2) the Buyer in no way induced the chapter 11 filing by the Debtor, and (3) all payments to be made by the Buyer in connection with the purchase of the Beverly Hills Property have been disclosed.

21.     The Purchase Agreement was negotiated and entered into in good faith, based upon arm's-length bargaining and negotiation, and without collusion or fraud of any kind. Neither the Debtor nor the Buyer have engaged in any conduct that would cause or permit (1) the application of or implicate Section 363(n) with respect to the Purchase Agreement or to the consummation of the sale transaction and transfer of the Beverly Hills Property to the Buyer; or (2) costs or damages to be imposed under Section 363(n).  Specifically, the Buyer has not acted in a collusive manner with any person, and the Purchase Price for the Beverly Hills Property was not controlled by any agreement among other interested parties.

22.     Upon entry of this Sale Order, the Debtor's execution of the Purchase Agreement and any other documents contemplated thereby is approved, and the Debtor is authorized to consummate the transactions contemplated by the Purchase Agreement and to sign any and all documents necessary to enable the Debtor to consummate the transactions contemplated by the Purchase Agreement.

23.     Subject to the terms of the Purchase Agreement, the sale and transfer of the Beverly Hills Property is a legal, valid, and effective transfer of the Beverly Hills Property under all applicable provisions of the Bankruptcy Code, including, without limitation, Sections 105(a)

5

and 363, and all applicable requirements of such Sections have been complied with in respect

thereof.

24.    The Debtor is the sole and lawful owner of the Beverly Hills Property.  The

transfer of the Beverly Hills Property to the Buyer pursuant to the Purchase Agreement and this

Sale Order is a legal, valid, and effective transfer of the Beverly Hills Property and vests the

Buyer with all rights, title, and interest of the Debtor to the Beverly Hills Property.

25.    On the close of the sale of the Beverly Hills Property to the Buyer pursuant to the

Purchase Agreement (the "**Closing Date**"), the Purchase Price to be received by the Debtor from

the sale of the Beverly Hills Property (the "**Sale Proceeds**") shall be distributed and transferred

in accordance with the following paragraph..

26.    In accordance with Section 363(f)(2) and the *Consent Order of Interlocutory Sale

of Real Property* (the "**Consent Order**") entered in *United States v. Sadleir*, Case No. 20 Cr.

320, pending in the United States District Court for the Southern District of New York (the

"**District Court**"), the Debtor may sell the Beverly Hills Property free and clear of any and all

interests of United States of America, which has expressly consented in accordance with

Section 363(f)(2) and the Consent Order to the sale of the Beverly Hills Property free and clear

of its interest, if any, in accordance with and subject to the condition that the Sale Proceeds be

handled in accordance with the Consent Order.

27.    [Given that the Sale Price does not exceed the Cairn Debt, no portion of the sale

proceeds will constitute a substitute *res* as otherwise contemplated by the Consent Order under

certain conditions not present here.]

28.    The *Settlement Agreement and General Release* (the "**Settlement Agreement**")

and the Consent Order, approved by this Court (the "**Settlement Approval Order**"), provide

that the Sale Proceeds "shall be deposited into an interest-bearing escrow account acceptable to

Temerity, Cairn, and the USAO-SDNY, and shall be distributed within (3) business days of

closing in the following priority: (1) first, to pay outstanding real property taxes; (2) second, to

pay all reasonable and documented costs of escrow and sale, including real estate sales

commissions authorized hereunder and applicable fees triggered by the sale of the [Beverly

Hills] Property, including . . . any reasonable credits against the sale price requested by the buyer(s), in each case subject to Cairn's approval, which will not be unreasonably withheld; (3) third, to pay the Cairn Debt; and (4) fourth, to the extent funds remain after all amounts are paid in items (1)-(3) above, those funds shall be treated as substitute *res* for the Subject Property (the "Substitute Res") in the pending criminal action and shall remain in escrow pending the resolution of the criminal matter and further order of the Bankruptcy Court, with all claims and defenses applicable to the Subject Property, including any other action that may be brought by the Office for forfeiture of the Subject Property or claims by third parties, to apply instead to the Substitute Res."

29.    "**Cairn Debt**" in the Consent Order and this Order means "$17,724,407 as of June 23, 2021, plus fees and expenses, and any interest accruing thereafter." The Debtor and the escrow company administering the Escrow Account are authorized to disburse from the Sale Proceeds funds for items (1)-(4) immediately above on or after the Closing Date. The remaining funds, as described in item (5), if any, are hereby ordered to remain in escrow pending further order of the District Court and this Court.

30.    The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, his bankruptcy estate, and creditors and parties in interest, if either: (1) the sale of the Beverly Hills Property to the Buyer were not free and clear of the interests of the United States or (2) the Buyer would, or in the future could, be liable for any such interest or any claims against the Debtor based upon successor or vicarious liability or otherwise. The Buyer is not responsible for any interests of the United States or any such claims against the Debtor based upon successor or vicarious liability or otherwise.

31.    In the absence of a stay pending appeal of this Sale Order, the Buyer is acting in good faith, pursuant to Section 363(m), in closing the transactions contemplated by the Purchase Agreement at any time on or after the entry of this Sale Order and cause has been shown as to why this Sale Order should not be subject to the stay provided by FRBP 6004(h), which is hereby waived.

1

### #

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **Notice of Motion and Motion for Order: (1) Approving Compromise with Cairn Capital; (2) Approving Compromise with United States of America and Cairn Capital; (3) Approving Private Sale of Real Property; (4) Approving Backup Marketing, Bidding, and Sale Procedures; (5) Waiving 14-Day Stay Period Set Forth in Bankruptcy Rule 6004(h); and (6) Providing Related Relief** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 21, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Lyn Agre    lagre@glennagre.com, mao@glennagre.com**
- **David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com**
- **Ron Maroko    ron.maroko@usdoj.gov**
- **Andrew Muir    amuir@kasowitz.com, courtnotices@kasowitz.com**
- **Kurt Ramlo    kr@lnbyg.com, kr@ecf.inforuptcy.com**
- **Jeremy V Richards    jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

**2. SERVED BY UNITED STATES MAIL**: On **January 21, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Barry Russell
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☒ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 21, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 21, 2022 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-2
Case 2:20-bk-15015-BR
Central District of California
Los Angeles
Fri Jan 21 14:55:38 PST 2022

Temarity Trust Management, LLC
9135 Hazen Drive
Beverly Hills, CA 90210-1825

Andrew K. Glenn
Kasowitz Benson Torres & Friedman
1633 Broadway
New York, NY 10019-6708

Aviron 1703, LLC
9135 Hazen Dr
Beverly Hills, CA 90210-1825

Aviron Finance, LLC
9135 Hazen Dr
Beverly Hills, CA 90210-1825

Aviron Licensing, LLC
9135 Hazen Dr
Beverly Hills, CA 90210-1825

BlackRock Multi-Sector Income Trust
55 East 52nd Street
New York, NY 10055-0002

BlackRock, Inc.-Office General Cnsl
40 East 52nd Street
New York, NY 10022-5911

Cairn Capital Investment Funds ICAV
27 Knightsbridge
London SW1X 7LY, UK

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Franchise Tax Board
Bankr. Sect MS A 340
PO Box 2952
Sacramento CA 95812-2952

Gary B. Stern
Sidley Austin LLP
1 South Dearborn Street
Chicago, IL 60603-2323

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Jonathan & Beverly Neville
1255 Wolf Hollow LN #415
Salt Lake City UT 84117-5829

(p)LOS ANGELES COUNTY TREASURER AND TAX COLLE
ATTN BANKRUPTCY UNIT
PO BOX 54110
LOS ANGELES CA 90054-0110

Los Angeles Municipal Serv
PO Box 30808
Los Angeles CA 90030-0808

My Alarm Co
3803 W Chester Pike Ste 100
Newtown Sq PA 19073-2334

Nigel Pearson
Paul Hastings LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4605

Southern Calif Gas
PO Box C
Monterey Park CA 91754-0932

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Western Exterminator Co
3333 W Temple St
Los Angeles CA 90026-4540

Wiliam K. Sadleir
9135 Hazen Drive
Beverly Hills, CA 90210-1825

William K. Sadleir
9135 Hazen Drive
Beverly Hills, CA 90210-1825